

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Public Docket Report**

**1785CV00763 Smith, William Howard et al vs. HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E et al**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Equitable Remedies | **FILE DATE:** | 05/10/2017 |
| **ACTION CODE:** | D03 | **CASE TRACK:** | F - Fast Track |
| **DESCRIPTION:** | Injunction | | |
| **CASE DISPOSITION DATE** | | **CASE STATUS:** | Open |
| **CASE DISPOSITION:** | Pending | **STATUS DATE:** | 05/10/2017 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil B |

## LINKED CASE

## DCM TRACK

| Tickler Description | Due Date | Completion Date |
|---|---|---|
| Service | 08/08/2017 | |
| Rule 12/19/20 Served By | 09/07/2017 | |
| Rule 15 Served By | 09/07/2017 | |
| Answer | 09/07/2017 | |
| Rule 15 Filed By | 10/10/2017 | |
| Rule 12/19/20 Filed By | 10/10/2017 | |
| Rule 12/19/20 Heard By | 11/06/2017 | |
| Rule 15 Heard By | 11/06/2017 | |
| Discovery | 03/06/2018 | |
| Rule 56 Served By | 04/05/2018 | |
| Rule 56 Filed By | 05/07/2018 | |
| Final Pre-Trial Conference | 09/04/2018 | |
| Judgment | 05/10/2019 | |

## PARTIES

**652202**

**Plaintiff**
Smith, Laureen

Michele Unger Callahan
Massachusetts Bar
19 Pierce Ave
Ste. C PMB #19
Fitchburg, MA 01420
Work Phone (617) 417-7584
Added Date: 05/10/2017

Case 4:17-cv-40100-DHH Document 10 Filed 07/19/17 Page 2 of 182

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Public Docket Report**

| | |
|---|---|
| | 652202 |
| **Plaintiff**<br>Smith, William Howard | Michele Unger Callahan<br>Massachusetts Bar<br>19 Pierce Ave<br>Ste. C PMB #19<br>Fitchburg, MA 01420<br>Work Phone (617) 417-7584<br>Added Date: 05/10/2017 |
| **Defendant**<br>Fremont Investment & Loan | |
| **Defendant**<br>David Gallant, Jr. Also known as David W. Gallant, Jr. | |
| | 665755 |
| **Defendant**<br>HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E | Samuel C. Bodurtha<br>Hinshaw & Culberston LLP<br>Hinshaw & Culberston LLP<br>28 State St 24th Floor<br>Boston, MA 02109<br>Work Phone (617) 213-7000<br>Added Date: 07/10/2017 |
| | 678523 |
| | Matthew Ryan Shechtman<br>Hinshaw & Culbertson LLP<br>Hinshaw & Culbertson LLP<br>28 State St 24th Floor<br>Boston, MA 02109<br>Work Phone (617) 213-7000<br>Added Date: 07/10/2017 |
| **Defendant**<br>HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Home Loan Trust 2006-E | |
| **Defendant**<br>HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E | |

| Defendant |  |
|---|---|
| Mortgage Electronic Registration Systems, Inc. |  |

## PARTY CHARGES

| # | Offense Date/ Charge | Code | Town | Disposition | Disposition Date |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

## EVENTS

| Date | Session | Event | Result | Resulting Judge |
|---|---|---|---|---|
| 05/16/2017 | Civil B | Hearing on Preliminary Injunction | Rescheduled | Tucker |
| 05/25/2017 | Civil B | Hearing on Preliminary Injunction | Canceled | Tucker |

## FINANCIAL SUMMARY

|  | Fees/Fines/Costs | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| Total |  | 503.85 | 503.85 | 0.00 | 0.00 |

| Deposit Account(s) Summary | Received | Applied | Checks Paid | Balance |
|---|---|---|---|---|
| Total |  |  |  |  |



**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Public Docket Report**

## INFORMATIONAL DOCKET ENTRIES

| Date | Ref | Description | Judge |
|------|-----|-------------|-------|
| 05/10/2017 | | Attorney appearance<br>On this date Michele Unger Callahan, Esq. added for Plaintiff William Howard Smith | |
| 05/10/2017 | | Attorney appearance<br>On this date Michele Unger Callahan, Esq. added for Plaintiff Laureen Smith | |
| 05/10/2017 | | Case assigned to:<br>DCM Track F - Fast Track was added on 05/10/2017 | |
| 05/10/2017 | 1 | Original civil complaint filed. | |
| 05/10/2017 | 2 | Civil action cover sheet filed. | |
| 05/10/2017 | 3 | Plaintiffs William Howard Smith, Laureen Smith's EX PARTE Motion for Temporary Restraining Order | |
| 05/10/2017 | 4 | Affidavit of William Howard Smith and Laureen Smith | |
| 05/10/2017 | | Endorsement on Motion for Temporary Restraining Order (#3.0):<br>ALLOWED<br>Temporary Restraining Order allowed until May 16, 2017 parties to appear on that date for hearing. | Reardon |
| 05/15/2017 | | Event Result:<br>The following event: Hearing on Preliminary Injunction scheduled for 05/16/2017 02:00 PM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Request of Plaintiff | Tucker |
| 05/15/2017 | | The following form was generated:<br><br>Notice to Appear<br>Sent On: 05/15/2017 10:49:29 | |
| 05/15/2017 | 5 | Plaintiffs William Howard Smith, Laureen Smith's Motion for Continuance of May 16, 2017 Hearing | |
| 05/15/2017 | | Endorsement on Motion for Continuance of May 16, 2017 Hearing (#5.0):<br>ALLOWED<br>Notices mailed 5/15/17 | Tucker |
| 05/24/2017 | | Event Result:<br>The following event: Hearing on Preliminary Injunction scheduled for 05/25/2017 02:00 PM has been resulted as follows:<br>Result: Canceled<br>Reason: Request of Plaintiff | Tucker |
| 06/16/2017 | 6 | Plaintiffs William Howard Smith, Laureen Smith's Motion to File An Amended Complaint | |
| 06/16/2017 | 7 | Temporary Restraining Order, returned SERVED<br>Agent person in charge 6/8/17<br><br>Applies To: HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E (Defendant) | |

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Public Docket Report**

| | | | |
|---|---|---|---|
| 06/22/2017 | | Endorsement on Motion to File an Amended Complaint (#6.0): ALLOWED<br>As a matter of right prior to a responsive pleading being filed. Notices<br>mailed 6/23/17 | Tucker |
| 06/22/2017 | 8 | Amended: original complaint filed by William Howard Smith, Laureen<br>Smith | |
| 07/10/2017 | 9 | Notice of Removal to the United States District Court filed by<br><br>Applies To : HSBC Bank USA, National Association Trustee for Fremont<br>Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E<br>(Defendant) | |
| 07/10/2017 | | Attorney appearance<br>On this date Matthew Ryan Shechtman, Esq. added for Defendant HSBC<br>Bank USA, National Association Trustee for Fremont Home Loan Trust<br>2006-E Mortgage-Backed Certificates, Series 2006-E | |
| 07/10/2017 | | Attorney appearance<br>On this date Samuel C. Bodurtha, Esq. added for Defendant HSBC Bank<br>USA, National Association Trustee for Fremont Home Loan Trust 2006-E<br>Mortgage-Backed Certificates, Series 2006-E | |
| 07/14/2017 | | General correspondence regarding copies for removal ) mailed out<br>7-14-17 | |

A true copy by photostatic process
Attest: _O. J. Williams_
Dep Asst. Clerk

# HINSHAW
& CULBERTSON LLP

**ATTORNEYS AT LAW**

28 State Street
24th Floor
Boston, MA 02109

617-213-7000
617-213-7001 (fax)
www.hinshawlaw.com

July 12, 2017

*RECEIVED*
*JUL 14 2017*
*CLERK OF COURTS*
*WORCESTER COUNTY*

<u>**VIA FIRST CLASS MAIL**</u>

Civil Clerk's Office
Attention: Christine
Worcester Superior Court
225 Main Street
Worcester, MA  01608

Re:   *William Howard Smith and Laureen Smith*
      *vs. HSBC Bank USA, National Association, as Trustee*
      *Worcester Superior Court Civil Action No. 1785CV00763B*

Dear Christine

Pursuant to our telephone conversation, enclosed is a check in the amount of $133.85 in payment of a certified/attested copy of the Worcester Superior Court records and docket entries for purposes of removal of the action to the federal court.

Please call me with any questions.  Thank you for your courtesy in this matter.

Very truly yours,

HINSHAW & CULBERTSON LLP

Matthew R. Shechtman
mshechtman@hinshawlaw.com

MRS:lg
Enclosure

*Copies sent*
*7/14/17 · CC*

Arizona   California   Florida   Illinois   Indiana   Massachusetts   Minnesota   Missouri   New York   Rhode Island   Wisconsin   ♦   London

300174374v1 0998420



Retain for Proof of Payment
Worcester County
225 Main Street
Worcester MA          91608
       Receipt 14100              Date
07/14/2017
   Case Number 1785CV00763
   Description 1785CV00763 Smith, William
Howard et al vs. HSBC Bank USA, Nationa
l Association Trustee for Fremont Home L
oan Trust 2006-E Mortgage-Backed Certifi
cates, Series 2006-E et al
Received From Callahan, Esq., Michele Un
ger
   On Behalf Of Smith, William Howard
Payment Type      Amount      Reference
Check            133.85       3402903
Applied Type      Amount
Certificates/Copies/Summons   133.85

       Change    .00
    Balance Due .00
       Clerk CONNIEC    Trans Date 0
7/14/2017 01:24 PM
Comments

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                      SUPERIOR COURT

|  |  |
|---|---|
| WILLIAM HOWARD SMITH and<br>LAUREEN SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC Bank USA, National Association,<br>as trustee for Fremont Home Loan Trust<br>2006-E Mortgage-Backed Certificates,<br>Series 2006-E<br>Defendant(s) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION
NO.:  17-0763B

**FILED**
MAY 10 2017
ATTEST: _____ CLERK

## COMPLAINT

### Background

1.      Plaintiffs, William Howard Smith and Laureen Smith ("Plaintiffs") are residents and rightful owners of 3 Dresser Hill Road, Dudley, Worcester County, Massachusetts by deed from Elida Wood, as life tenant, and Charles K. Wood, a/k/a Charles Kenneth Wood to William Howard Smith dated September 26, 1980 and recorded on September 26, 1980 at the Worcester County Registry of Deeds, Book 7070, Page 73, and subsequently conveyed by deed from William Howard Smith to William Howard Smith and Laureen Smith dated June 1, 1981 and recorded on June 4, 1981 at the Worcester County Registry of Deeds, Book 7244, Page 293.

2.      Defendant, HSBC Bank USA, National Association, as trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E ("Defendant") is the mortgage lender foreclosing on the mortgage from Mortgage from David Gallant, Jr. to MERS as nominee

1

for Fremont Investment & Loan at Book 39759, Page 369 on 9/13/2006.  The auction date is scheduled for May 10, 2017 at 12:00 PM.

3.     Jurisdiction arises under M.G.L. c. 212 §3.

4.     Venue is proper in this Court under M.G.L. c. 212 §4 and M.G.L. c. 214 §5.

5.     Plaintiffs entered into a mortgage from William Howard Smith and Laureen Smith to GMAC Mortgage Corporation in the original principal amount of $26,750.00, dated March 22, 2000 and recorded on March 24, 2000 at the Worcester County Registry of Deeds, at Book 22423, Page 313.

6.     Plaintiffs entered into a Home Equity Line of Credit Mortgage from William Howard Smith and Laureen Smith to GMAC Mortgage Corporation in the original principal amount of $94,800.00, dated March 22, 2000 and recorded on March 24, 2000 at the Worcester County Registry of Deeds, at Book 22423, Page 320.

7.     On or around June/July 2006, Plaintiffs, William Howard Smith and Laureen Smith were struggling to make their mortgage payments.  Due to the Plaintiffs' difficulties in making their mortgage payments, Plaintiffs were sought out by Allen Seymour, and as was his modus operandi, he offered the Plaintiffs the possibility of a reverse mortgage. The Plaintiffs signed preliminary documents, but after a few conversations with Seymour, the Plaintiffs did not hear from Seymour again.

8.     Allen Seymour, by means of a false deed, misrepresentation and false power-of-attorney, defrauded the Plaintiffs and forged a deed to from Plaintiffs to David W. Gallant, Jr. (See Exhibits A, B, C)

9.     Allen Seymour used the signatures obtained from the preliminary documentation he had obtained from Plaintiffs and created a false power-of-attorney and forged deed.

2

10.     Allen Seymour also targeted hopeful investors.   The investors were told they would be helping homeowners who were in danger of losing their homes.  David W. Gallant, Jr. was the "investor" respecting the Smiths' property located at 3 Dresser Hill Road, Dudley, Massachusetts.

11.     Attorney Raymond Desautels, III conducted the real estate closings for Seymour.

12.     On July 25, 2006, a fraudulent closing was held and Seymour and his associates recorded a forged deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. (See Exhibit A)

13.     Judith Piette was an associate of Allen Seymour and acted as Notary Public at the closing.

14.     The Plaintiffs never attended a closing, and were not aware a closing had occurred until approached by the Attorney General's office with respect to its cases against Allen Seymour, Raymond Desautels, III and Judith Piette, notary public.

15.     The Plaintiffs never signed a deed to David W. Gallant, Jr.

16.     The forged deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. was dated July 25, 2006 and recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 366.  (See Exhibit A)

17.     A mortgage from David Gallant, Jr. to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan in the original principal amount of $285,000.00 was recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369.

18.     With respect to the mortgage from David Gallant, Jr. to MERS as nominee for Fremont Investment & Loan, the following documents have been recorded:

3

a.  Notice under the Servicemembers Civil Relief Act by Fremont Investment &
Loan, recorded on July 9, 2007 at Worcester County Registry of Deeds, Book
41457, Page 82.

b.  Assignment of mortgage from MERS to Fremont Investment & Loan,
recorded on October 20, 2008 at Worcester County Registry of Deeds, Book
43426, Page 201.

c.  Complaint to Foreclose Mortgage by Fremont Investment & Loan, recorded
on October 20, 2008 at Worcester County Registry of Deeds, Book 43428,
Page 202.

d.  Certificate of Entry by Fremont Investment & Loan, recorded on October 20,
2008 at Worcester County Registry of Deeds, Book 43426, Page 2008.

e.  Foreclosure Deed from Fremont Investment & Loan to HSBC Bank, USA,
National Association, as Trustee under the Pooling and Servicing Agreement
dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E
recorded on October 20, 2008 at Worcester County Registry of Deeds, Book
43426, Page 206.

f.  Assignment of mortgage by Fremont Investment & Loan to HSBC Bank
USA, National Association, as Trustee Under the Pooling and Servicing
Agreement dated as of December 1, 2006, Fremont Home Loan Trust 2006-E
recorded on August 13, 2009 at Worcester County Registry of Deeds, Book
44719, Page 125.

g.  Assignment by MERS, as nominee for Fremont Investment & Loan, its
successors and or assigns to HSBC Bank USA, National Association, as

Trustee for Fremont Home Loan Trust 2006-E, Mortgage Backed-Certificates, Series 2006-E at c/o Ocwen Loan Servicing, LLC recorded on October 23, 2015 at Worcester County Registry of Deeds, Book 54475, Page 395.

h. Notice under the Servicemembers Civil relief Act by HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E recorded on November 24, 2015 at Worcester County Registry of Deeds, Book 54615, Page 275.

i. Affidavit re. compliance with M.G.L. c. 244 § 35B by HSBC Bank USA, National Association as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E, recorded on January 20, 2017 at Worcester County Registry of Deeds, Book 56635, Page 391.

j. Affidavit re. note secured by mortgage to be foreclosed in compliance with M.G.L. c. 244, §35C by HSBC Bank USA, National Association as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E, recorded on January 20, 2017 at Worcester County Registry of Deeds, Book 56635, Page 394.

19.    On September 25, 2009 the Grand Jury brought the following criminal charges against Allen Seymour:  Uttering of False or Forged Power of Attorney, Forgery of Power of Attorney and Inducement to Part with Property by False Pretense. (See Exhibit C)

20.    On September 25, 2009, the Grand Jury brought the following criminal charge against Judith Piette:  False Written Report by a Public Officer. (See Exhibits D, E)

21.    On January 13, 2010 Judith Piette plead guilty to the charge against her.

22.     On November 15, 2010, Allen Seymour plead entered a guilty plea to the charges against him.

23.     On or around August 12, 2016 Plaintiffs received a letter from Hinshaw & Culbertson, LLP informing them of their right to appear at a future auction and bid to repurchase their property. This was the only notice the Plaintiffs had of the foreclosure until the Plaintiffs read about the foreclosure auction in the newspaper on April 6, 2017.

24.     Upon learning of the foreclosure, contact was made with the Defendant to discuss the options available to the Plaintiffs.  Pursuant to the communication with the Defendant and at the Defendant's request, Plaintiffs provided Identity Theft Affidavits to the Defendant on April 26, 2017.  Plaintiffs were told it would take approximately thirty days to review the forms. (See Exhibits F, G)

25.     On Friday afternoon, May 5, 2017, the Plaintiffs were informed that the Defendant did not intend to continue the auction and that the auction would still take place on May 10, 2017 at 12:00 PM.

26.     The Defendant's unwillingness to resolve this matter has caused the Plaintiffs physical and emotional distress.  Laureen Smith suffers from anxiety and has had to increase her medication. The stress has worsened her fibromyalgia, including limiting her ability to get around.  Both Plaintiffs have difficulty sleeping.

## COUNT I

### Invalid Chain of Title

27.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 26.

28.     Defendant's claim must be evidenced by proper succession in the chain of title.

29.     "The record of a deed . . . or other instrument, duly acknowledged or proved as provided in this chapter, and purporting to affect the title to land, shall be conclusive evidence of the delivery of such instrument, in favor of purchasers for value without notice claiming thereunder." M.G.L. c. 183, § 5.

30.     The mortgage from David Gallant, Jr. to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan in the original principal amount of $285,000.00 was recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369.

31.     Notice under the Servicemembers Civil Relief Act was given by Fremont Investment & Loan, recorded on July 9, 2007 at Worcester County Registry of Deeds, Book 41457, Page 82.

32.     Assignment of the mortgage from MERS to Fremont Investment & Loan, was not recorded until October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 201; therefore, the subsequent Foreclosure Deed from Fremont Investment & Loan to HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 206 is not valid as Notice under the Servicemembers Civil Relief Act was not effective.

33.     A subsequent Assignment of mortgage was recorded by Fremont Investment & Loan to HSBC Bank USA, National Association, as Trustee Under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Home Loan Trust 2006-E recorded on August 13, 2009 at Worcester County Registry of Deeds, Book 44719, Page 125.

34.    A further Assignment by MERS, as nominee for Fremont Investment & Loan, its successors and or assigns to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage Backed-Certificates, Series 2006-E at c/o Ocwen Loan Servicing, LLC (Defendant) was recorded on October 23, 2015 at Worcester County Registry of Deeds, Book 54475, Page 395.  MERS no longer held title pursuant to  the Assignment of the mortgage from MERS to Fremont Investment & Loan, recorded until October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 201; therefore, MERS was unable to assign the mortgage to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage Backed-Certificates, Series 2006-E at c/o Ocwen Loan Servicing, LLC, making invalid the Notice under the Servicemembers Civil Relief Act by HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E recorded on November 24, 2015 at Worcester County Registry of Deeds, Book 54615, page 275; the Affidavit re. compliance with M.G.L. c. 244 § 35B by HSBC Bank USA, National Association as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E, recorded on January 20, 2017 at Worcester County Registry of Deeds, Book 56635, Page 391; and the Affidavit re. note secured by mortgage to be foreclosed in compliance with M.G.L. c. 244, §35C by HSBC Bank USA, National Association as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E, recorded on January 20, 2017 at Worcester County Registry of Deeds, Book 56635, Page 394.

35.    Pursuant to the chain of title, the Foreclosure Deed from Fremont Investment & Loan to HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E recorded

on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 206 should be set aside and the foreclosure auction scheduled for May 10, 2017 at 12 PM should be stopped.

## COUNT II

### Forgery and Fraud

36.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 35.

37.     The deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. on July 25, 2006, recorded on September 13, 2006 in consideration of $300,000.00, recorded at Book 39769, Page 366 is null and void.  A forged instrument is void and has no effect even when recorded in seemingly regular fashion in the registry of deeds. *Countrywide Home Loans, Inc. v. Bruce*, 19 LCR207 "[N]either acknowledgment nor recording could confer validity upon an invalid instrument." *Strother v. Shain, 322 Mass. 435, 437, 78 N.E.2d 495 (1948)*

38.     Judith Piette's notarization of the deed was a false written report.  The notary's certificate is not fatal to a claim of fraud or forgery and may be overcome with an appropriate showing. *Keville v.McKeever*, 42 Mass. App. Ct. 140, 675 N.E.2d 417 (1997); *Hale v. Hale,* 332 Mass. 329, 125 N.E.2d 142 (1955).

39.     The mortgage from David Gallant, Jr. to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan in the original principal amount of $285,000.00, recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369 and any subsequent Assignments, Notices, Complaints or other documents of record thereto are invalid.  Any mortgage procured by presentation of a forged

deed is null and void. *Whittenberger v. Commercial* Credit Corporation, 37 Mass. App. Ct. 303, 305, 639 N.E.2d 737 (1994) Reliance of a void instrument by a third party does not confer vitality on the void instrument.   *Breed v. Gardner,* 187 Mass. At 304-305.   "[B]ona fide purchasers for value are not protected in the case of a forged deed. *Hobson v. Hobson,* 16 LCR 104 (2008).

## COUNT III

### Negligent Infliction of Emotional Distress

40.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 39.

41.     The Plaintiffs are a third party beneficiary of the mortgage contract between the Defendant and David W. Gallant, Jr., as the Defendant holds a mortgage against the Plaintiffs property located at 3 Dresser Hill Road, Dudley, Worcester County, Massachusetts, and is proceeding with a foreclosure auction against the Plaintiffs' home.  As such the Defendant has a duty to the Plaintiff.

42.     **Negligence.** See *Payton v. Abbott Labs,* 386 Mass. 540.  Upon learning of the foreclosure auction by means of the notice in the newspaper, the Plaintiffs contacted the Defendant to discuss a solution and to restore the Plaintiffs title.  At the Defendant's request, the Plaintiffs provided the Defendants with Identity Theft Affidavits and attachments, including, but not limited to copies of the Commonwealth's Statements of the Case respecting the cases against Allen Seymour and Judith Piette.  The Defendant was aware of the claim of forgery. The Defendant acted negligently as ordinary prudence would have required the Defendant to continue or stop the foreclosure auction and proceed with alternatives to restore the Plaintiffs to their rightful position.

43.    **Emotional Distress.  Causation.  Physical Harm**.  See *Payton v. Abbott Labs,*
386 Mass. 540.  Upon learning of the foreclosure auction, the Plaintiffs became seriously
distressed.  Both William and Laureen have been unable to get adequate sleep since learning of
the auction.  Laureen suffers from fibromyalgia and her symptoms have worsened.  Laureen now
needs to use a walker to get around.  Her doctor has increased her medication for stress.

44.    **Reasonable Person Would Have Suffered Emotional Distress**.  See *Payton v.
Abbott Labs,* 386 Mass. 540.  The Plaintiffs have nowhere to go should their home be foreclosed
upon and they are evicted.  They do not have the financial capability to start over some place
new.  If evicted, the Plaintiffs will be dependent upon family at best and face homelessness at
worst.  Any reasonable person would suffer emotional distress under these circumstances.


# COUNT IV

## Violation of the Massachusetts Consumer Protection Act and Applicable Regulations

45.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 44.

46.    Defendant owes a duty to the Plaintiffs as third party beneficiaries to the contract
between Defendant and David Gallant, Jr., and has violated and continues to violate the
Massachusetts Consumer Protection Act, M.G.L. c. 93A, §2 and applicable regulations
promulgated by the Massachusetts Attorney General pursuant to M.G.L. c. 93A, §2(c)
including, without limitation:

a.    940 C.M.R. § 3.16, in that its conduct was unfair, deceptive,
oppressive, unconscionable, and contrary to public policy and generally recognized standards
applicable to the consumer lending business;

b.    940 C.M.R. § 3.16, in that its conduct violated the requirement of good
faith and fair dealing applicable to contracts under M.G.L. c. 106, §1-203;

c.      940 C.M.R. § 3.16, in that its conduct violated existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare;

47.      The Plaintiffs have been injured by virtue of Defendant's violations. Said injuries include, but are not limited to:

a.      significant emotional distress;

b.      increased fees and other costs to avoid or attempt to avoid foreclosure of invalid mortgage; and,

c.      physical harm.

48.      Defendant's conduct was and is willful or knowing within the meaning of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §9.

49.      Defendant's refusal to grant relief upon demand was and is in bad faith, with knowledge or reason to know that the act or practice complained of violated M.G.L. c. 93A, §2.

Wherefore the Plaintiffs respectfully request the following relief:

## Injunctive Relief

50.      Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 49.

51.      Plaintiffs have been seriously injured and will suffer irreparable harm of a continuing nature that cannot be adequately calculated or compensated in money damages, unless the Defendants foreclosure and other activities complained of are preliminarily and permanently enjoined.

52.      Plaintiffs ask the Court to Grant a permanent or final injunction enjoining Defendant's agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiff,

12

specifically enjoining Defendant from proceeding with the foreclosure auction scheduled for May 10, 2017 at 12:00 PM.

### Set Aside Deeds and Subsequent Recordings

53.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 52.

54.     Plaintiffs move this Court to set aside the forged deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. was dated July 25, 2006 and recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 366, and any recorded documents pursuant thereto.

55.     Plaintiffs move this Court to set aside the invalid Foreclosure Deed from Fremont Investment & Loan to HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 206, and any recorded documents pursuant thereto.

56.     Plaintiffs move this Court to set aside or invalidate the mortgage from David Gallant, Jr. to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan in the original principal amount of $285,000.00 was recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369, and any recorded documents pursuant thereto.

### Additional Relief Requested

57.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 56.

a.      Award actual and/or statutory minimum damages pursuant to M.G.L. c. 93A § 9(3) to the Plaintiffs;

b.      Award multiple damages pursuant to M.G.L. c. 93A § 9(3) to the Plaintiffs;

13

c.      Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees pursuant to M.G.L. c. 93A § 9(3);

d.      Award Plaintiffs damages based on Defendant's Negligent Infliction of Emotional Distress; and

e.      Grant Plaintiffs such other and further relief, in law or in equity, as this Court deems just and proper.


Respectfully submitted,

William Howard Smith and Laureen Smith,
By their attorney,


Date:   5/10/2017

Michele Unger Callahan, Esq., (BBO #652202)
19 Pierce Avenue, Suite C
PMB #19
Fitchburg, MA  01420
mucallahanesq@gmail.com
(617) 417-7584

A true copy by photostatic process
Attest: _____ Williams
____ Asst. Clerk

14

# EXHIBIT A

# Forged Deed

Bk: 39759 Pg: 366



Bk: 39759 Pg: 366   Doc: DEED
Page: 1 of 3   09/13/2006 08:42 AM

MASSACHUSETTS EXCISE TAX
Worcester District ROD #20 001
Date: 09/13/2006 08:42 AM
Ctrl# 056388 08090 Doc# 00137452
Fee: $1,368.00 Cons: $300,000.00

## QUITCLAIM DEED

3 Dresser Hill Road, Dudley, Worcester County, Massachusetts

We, William Howard Smith and Laureen Smith, of Dudley, Worcester County, Massachusetts

For Consideration Paid in the amount of   $ 300,000.00

Grants with Quitclaim Covenants to:

David W Gallant Jr, of P.O. Box 432, Rochdale, Worcester County, Massachusetts

The property known as 3 Dresser Hill Road, Dudley, Worcester County, Massachusetts, being more particularly described as follows:

The land with all buildings and improvements thereon, known as 3 Dresser Hill Road, Dudley, Worcester County, Massachusetts, situated on the eastern side of Dresser Hill Road in the northern part of Dudley near Chariton line and bound and described as follows:

BEGINNING at a drill hole in a stone wall on the easterly side of the 1933 Worcester County highway layout of Dresser Hill Road, at the northerly corner of tract, said point being 149.35 feet northerly of a Worcester County Highway bound opposite station 137.15;

THENCE N. 72 degrees 50' 13" E. along said stone wall and land, now or formerly of Richard Lavigne, a distance of one hundred sixty-seven and two hundredths (167.02) feet to an iron pipe;

THENCE N. 72 degrees 31' 50" E. along said stone wall and land of Lavigne, a distance of one hundred eighty-six and eighty-seven hundredths (186.87) feet to an iron pipe in a corner of walls;

THENCE S. 26 degrees 00' 22" E. along a stone wall and land of Theresa Giroux, a distance of three hundred forty-two and ten hundredths (342.10) feet to an iron pipe;

THENCE S. 80 degrees 48' 19" W. along land of Charles K. Wood, now or formerly, a distance of two hundred eight and eight hundredths (208.08) feet to an

Return to: Raymond A Desautels III
466 Main St
Oxford, MA   01540

(3)

iron pipe;

THENCE S. 83 degrees 01' 45" W. along land of Charles K. Wood, now or formerly, a distance of two hundred three and forty-one hundredths (203.41) feet to a stake;

THENCE S. 81 degrees 59' 43" W. along land of Charles K. Wood, now or formerly, a distance of ninety-two and thirty-one hundredths (92.31) feet to an iron pipe on the easterly side of Dresser Hill Road;

THENCE running northerly along the easterly side of Dresser Hill Road , on a curve to the right, having a radius of nine hundred seventy and zero hundredths (970.00) feet and a length of one hundred twenty-three and ninety-three hundredths (123.93) feet to a Worcester County Highway Bound;

THENCE N. 3 degrees 56' 45" E. along the easterly side of Dresser Hill Road, a distance of one hundred forty-nine and thirty-five hundredths (149.35) feet to the drill hole at the point of beginning

BEING the same premises as shown on the plan of land in Dudley, Massachusetts, Surveyed for William Smith, Robert F. Para, Land Surveyor, dated June 23, 1981 and recorded in the Worcester South District Registry of Deeds in book 479, page 82.

SAID premises being about 2.962 acres of so much of the northerly portion of the farm of Charles K. Wood and is on the easterly side of Dresser Hill Road, otherwise known as Route 31.

There is mentioned a supposed right of cutting and drying peat, insofar as it is in force and effect, but the statement and recital, shall not be a renewal, thereof, in a deed from Charles S. Wood to Martin A. Obenawr dated March 10, 1891 and recorded in the Worcester District Registry of Deeds, Book 1345, Page 424. However, there is on record an affidavit which indicates a non-user and/or abandonment for at least 46 years with respect to such alleged right of cutting and drying peat executed by Elida Wood on September 7, 1978 and recorded in the Worcester District Registry of Deeds, which indicates no trace on the entire one hundred ten (110) acres where peat might have been cut and dried, and recorded in Book 6561, page 90.

Being the same premises as conveyed to the grantor by deed dated June 1st, 1981 and recorded with the Worcester District Registry of Deeds Book 7244 Page 293.

Executed as a sealed instrument this 25th day of July, 2006.

*William Howard Smith*
William Howard Smith

*Laureen Smith*
Laureen Smith


### THE COMMONWEALTH OF MASSACHUSETTS

Worcester  ss.                                                July 25, 2006

On this 25th day of July, 2006, before me, the undersigned Notary Public, personally appeared William Howard Smith & Laureen Smith, proved to me through satisfactory evidence of identification, which was photographic identification with signature issued by a federal or state governmental agency, oath or affirmation of a credible witness, personal knowledge of the undersigned, to be the person(s) whose name(s) is/are signed on the preceding or attached documents, and acknowledged to me that he signed it voluntarily for its stated purpose.

(*official seal*)

*Judith A. Piette*

Notary Public:

My Commission Expires:
March 5, 2010

JUDITH A. PIETTE
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 5, 2010


ATTEST: WORC. Anthony J. Vigliotti, Register

# EXHIBIT B

## Commonwealth's Statements of the Case-
## Allen Seymour

amount the homeowner was selling the property for, if in fact the homeowner knew they were selling the property at all.

Closing attorney and co-defendant Raymond Desautels III conducted each of the real estate closings for Seymour. The homeowners never attended these closings, as their documents were signed using a false Power of Attorney. After receiving the lender's money funding the transaction, Desautels issued a proceeds check payable to the homeowners and based on the fictitious purchase price. This check was given to Seymour. A chart illustrating the difference between what the homeowner understood regarding the transaction and what the investor's lender believed is attached hereto as Attachment "A"[3]. In sum, these twelve lenders lent nearly three million dollars based on the false statements created by Allen Seymour.

**D.  Cashing the "seller's" proceeds check**

Seymour, accompanied by co-defendant Jason Passell and, in one instance, Dennis Lucier, then took the "seller's" proceeds check to the Check Depot, a check cashing operation in Worcester. There, they cashed the following checks, each time offering as genuine a Power of Attorney known by Seymour to be false:

1.  A check payable to William H. Smith and Laureen Smith for their purported sale of 3 Dresser Hill Road, Dudley, Massachusetts, in the amount of $152,603.05. The Smiths' were unaware they had sold their home. They did not knowingly grant the Power of Attorney used to cash this check to Jason Passell or any other person.

2.  A check payable to Dennis and Susan Fountain for their purported sale of 20 Park Street, Oxford, Massachusetts in the amount of $72,572.36. Although the Fountains believed they were selling their property they specifically told Allen Seymour and Raymond Desautels they did not want to give Power of Attorney to anyone for the transaction. Seymour forged the Power of Attorney used to cash this check by replacing the functional pages of a document truly signed by the Fountains with a page purportedly granting Power of Attorney from the Fountains' to Jason Passell.

3.  A check payable to Paul O'Connor for his purported sale of 1111 Millbury Street, Worcester, Massachusetts in the amount of $155,317.56. O'Connor was unaware that he had sold his home. He had not knowingly granted a Power of Attorney to Dennis Lucier or any other

---

[3] The chart further describes the amount of funds sent by the lender to Desautels and the amount of the Seller's proceeds check issued by Desautels.

person, Seymour had earlier forged this Power of Attorney by replacing the functional pages of a document truly signed by O'Connor with a page purportedly granting Power of Attorney from O'Connor to Lucier.

4. A check payable to Dennis Martinez for his purported sale of 34 Birchwood Drive, Marlboro, Massachusetts in the amount of $94,237.57. Mr. Martinez did not knowingly give this Power of Attorney to Passell or any other person.

5. A check payable to Edward and Donna Ramstrom for their purported sale of 47 Campground Road, West Boylston, Massachusetts in the amount of $72,604.27, Mr. & Mrs. Ramstrom did not knowingly give this Power of Attorney to Passell or any other person.

6. A check payable to Penny L. Berry for her purported sale of 35 Field Street, Auburn, Massachusetts in the amount of $121,375.47. Ms. Berry believed that Allen Seymour was assisting her with a refinance of her existing mortgage and did not believe she was selling the property. Ms. Berry did not knowingly give this Power of Attorney to Passell or any other person. Seymour had earlier forged this Power of Attorney by replacing the functional pages of a document truly signed by Ms. Berry with a page purportedly granting Power of Attorney from Ms. Berry to Passell.

7. A check payable to Lynn A. Keefe for her purported sale of 262-264 Lovell Street, Worcester, Massachusetts in the amount of $219,787.55. Ms. Keefe did not knowingly give this Power of Attorney to Passell or any other person; and

8. A check payable to Thomas F. Carroll for his purported sale of 149 Main Street, Oxford, Massachusetts in the amount of $94,801.84. Mr. Carroll did not knowingly give this Power of Attorney to Passell or any other person.

The total dollar amount of the checks cashed using false powers of attorney by Seymour is $910,727.31.

E. Larceny

One homeowner, David Chubka, was aware that Seymour had arranged for the sale of Chubka's home and was aware of the purchase price. Seymour convinced this homeowner to invest thousands of dollars in proceeds from the sale of the property with Seymour's "real estate investment company". Rather than invest this money, Seymour simply cashed the check as he had the others. Despite the fact that Seymour had cashed Chubka's sixty-one thousand dollar proceeds check, Chubka only received a few hundred dollars in return for his "investment".

4

Although Seymour arranged for a few monthly payments towards some of the investor's new mortgages on these properties, Seymour eventually abandoned the investors[4]. Of the twelve lenders Seymour is charged with defrauding, nine have foreclosed on the properties, and the remaining three have filed complaints to foreclose. Most of the homeowners who trusted Allen Seymour are no longer in the homes they had tried to save. In connection with the facts described above, Seymour is charged with twelve counts of Inducing Another to Part with Property by False Pretense G.L. c. 266 § 34, eight counts of Uttering of a False Power of Attorney G.L. c. 267 § 5, four counts of Forgery of a Power of Attorney G.L. c. 267 § 1, and one count of Larceny over $250, G.L.c. 266 § 30.

Respectfully Submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

Andrew Doherty BBO# 654842
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 x 2564

Date: August 12, 2010

---

[4] It should be noted that Seymour abandoned several investors well before he was arrested attempting to flee the country with over one million dollars in embezzled funds unrelated to this scheme; a crime for which he has been in federal custody since February, 2008.

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.
                                    SUPERIOR COURT DEPARTMENT
                                    DOCKET 2009-1190

COMMONWEALTH

v.

ALLEN SEYMOUR

## COMMONWEALTH'S STATEMENT OF THE CASE

Now comes the Commonwealth, and respectfully submits this Statement of the Case. This document is not a full and complete recitation of the facts that support the indictments in the above-numbered case, and is not meant to be a Bill of Particulars. The purpose of this document is to aid the Court, defense counsel, and the probation department in assessing the general nature and circumstances of the crimes alleged.

Between April of 2006 and December of 2007, Allen Seymour orchestrated a collection of misrepresentations to homeowners, borrowers and lenders and utilized false deeds and powers of attorney in a scheme calculated to defraud lenders out of millions of dollars in loan proceeds. Seymour achieved this without any regard for the impact this fraud would have on the many victims of his crimes and the community at large.

Seymour targeted properties in danger of foreclosure. He personally approached the owners of these properties and presented a variety of rescue options. For those homeowners who merely wished to sell their properties to avoid foreclosure, Seymour offered to purchase the property for the amount owed to the foreclosing lenders. For the several homeowners who wanted to remain in their homes, Seymour presented rescue plans which ranged from "lifetime leases" and "reverse mortgages" to a simple refinance. Some of these homeowners were told they would need to transfer title to the property to an "investor", and some were not. Seymour had some of these homeowners sign innocuous documents to begin the process. The innocuous pages of the signed document were then discarded and substituted with pages purporting to grant Power of Attorney from the homeowner to associates of Seymour's.

Simultaneously, Seymour found individuals with good credit and in interest in investing in real estate. Many of these "investors" were told they would be helping homeowners in danger of losing their homes to foreclosure. Seymour told several of these investors that the purchase would only be temporary, and the homeowners would purchase the property back from them after Seymour repaired the homeowner's credit. Others were told that Seymour's company would repair and rehabilitate the properties, and then sell them at a profit, to be shared by Seymour and the investors. Seymour promised several investors that he would assist in making the mortgage payments for the loans used to purchase the properties.

None of the proposals made to these "investors" matched the transactions presented to the homeowners. The investors were not told of the "lifetime leases" and "reverse mortgages" Seymour had promised to the homeowners.

Nearly three million dollars in loans were obtained for these purchases. Loan documents indicate the lender believed the purchase price was far greater than the amount the homeowner was selling the property for, if in fact the homeowner knew they were selling the property at all.

Closing attorney and co-defendant Raymond Desautels III conducted each of the real estate closings for Seymour. The homeowners never attended these closings, as their documents were signed using a false Power of Attorney. After receiving the lender's money funding the transaction, Desautels issued a proceeds check payable to the homeowners and based on the fictitious purchase price. Seymour and his associate, with both the proceeds check and false Power of Attorney in hand, the cashed the check at a check cashing business in Worcester. Seymour cashed well over one million dollars in homeowner's proceeds check.

Several investors state that Seymour abandoned them to the mortgage payments after the closing. Without Seymour's promised assistance, the investors were unable to pay the loans, and these mortgages fell into foreclosure. Some homeowners, promised lifetime leases, have been evicted from the properties they had tried to save.

On one occasion Seymour, through misrepresentation, convinced homeowner David Chubka, who had just sold his home, to "invest" the entirety of his proceeds with Seymour,

2

roughly sixty thousand dollars. Seymour promised an extremely high rate of return on this "investment". Chubka received nothing in return for his trust.

In connection with these facts, Seymour is charged with twelve counts of inducing a lender to part with property G.L. c. 266 § 34; eight counts of uttering G.L. c. 267 § 5; four counts of forgery G.L. c. 267 § 1; and one count of larceny 266 § 30.

Respectfully Submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

Andrew Doherty BBO# 654842
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 x 2564

Date: _____

3

### Certificate of Service

I, Andrew Doherty hereby certify that I have, on _____, caused a copy of the
Commonwealth's Statement of the Case to be served on defendant by
_____ to defense counsel of record.

_____

Andrew Doherty

4

# EXHIBIT C

# Grand Jury Charges –

# Allen Seymour

09-1190

Uttering Of False Or Forged
Power Of Attorney
G.L., c. 267, § 5

# Commonwealth of Massachusetts

Worcester, To Wit:

At the SUPERIOR COURT, begun and holden at the CITY OF
WORCESTER, within and for the County of Worcester, on the First Monday of July in the year
two thousand and nine,

THE JURORS for the COMMONWEALTH OF MASSACHUSETTS on their oath present,

That   Allen Seymour

on or about September 13, 2006, within the county of Worcester aforesaid, with intent to
injure or defraud, did utter and publish as true a certain instrument purporting to be a
power of attorney from William H. Smith and Laureen Smith, well knowing the same to be
false, forged, or altered, in violation of G.L. c. 267, § 5.

Against the peace of said Commonwealth, and contrary to the form of the statute in such
case made and provided.

A true bill.

_Foreperson of the Grand Jury._

_Superior Court_

_Attorney General._

_day . Returned by the Grand Jury and filed in Court._

_District Clerk._

09-1190-7

Forgery Of Power Of Attorney
G.L. c. 267, § 1

*Commonwealth of Massachusetts*

Worcester, To Wit:

At the SUPERIOR COURT, begun and holden at the CITY OF

WORCESTER, within and for the County of Worcester, on the First Monday of July in the year

two thousand and nine,

THE JURORS for the COMMONWEALTH OF MASSACHUSETTS on their oath present,

That    Allen Seymour

between on or about June 28, 2006 and on or about September 13, 2006, within the county of
Worcester aforesaid, with intent to injure or defraud, did falsely make, alter, forge or
counterfeit a certain instrument purporting to be a power of attorney from William H.
Smith and Laureen Smith, in violation of G.L. c. 267, § 1.

Against the peace of said Commonwealth, and contrary to the form of the statute in such
case made and provided.

A true bill.

_____
Foreperson of the Grand Jury.

_____
Attorney of Grand.

*Superior Court*

_____ day  Returned by the Grand Jury and filed in Court.

_____
Assistant Clerk

09-1190

Inducement To Part With Property
By False Pretence
G.L. c. 266, § 34

## Commonwealth of Massachusetts

Worcester, To Wit:

At the SUPERIOR COURT, begun and holden at the CITY OF

WORCESTER, within and for the County of Worcester, on the First Monday of July in the year

two thousand and nine,

THE JURORS for the COMMONWEALTH OF MASSACHUSETTS on their oath present,

That    Allen Seymour

between on or about June 28, 2006 and on or about September 13, 2006, within the county of
Worcester aforesaid, with intent to defraud and by a false pretence, to wit: that William
Howard Smith and Laureen Smith were selling the property at 3 Dresser Hill Road,
Dudley, Massachusetts for the consideration of $300,000.00, did induce a mortgage lender
to part with property valued in excess of two hundred fifty dollars, in violation of G.L. c.
266, § 34.

Against the peace of said Commonwealth, and contrary to the form of the statute in such
case made and provided.

A true bill.

*Foreperson of the Grand Jury.*

*Assistant Attorney General*

*Superior Court*

*day - Returned by the Grand Jury and filed in Court.*

*Sept.* Term. *2009.*

*Assistant Clerk*

# EXHIBIT D

# Commonwealth's Statement of the Case –

# Judith Piette

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
DOCKET 2009-1192

COMMONWEALTH 20 09   Filed in Court  10/29

v.   Lemne

JUDITH PIETTE   Attest Kevin M. Gober

Assistant Clerk-Magistrate

## COMMONWEALTH'S STATEMENT OF THE CASE

Now comes the Commonwealth, and respectfully submits this Statement of the Case. This document is not a full and complete recitation of the facts that support the indictments in the above-numbered case, and is not meant to be a Bill of Particulars. The purpose of this document is to aid the Court, defense counsel, and the probation department in assessing the general nature and circumstances of the crimes alleged.

### I. Summary

On four occasions between June, 2006 and September, 2007 Judith Piette, a notary public, signed a statement indicating that an individual had personally appeared before her and acknowledged an instrument to be signed by them voluntarily for the document's intended purpose. In fact, the persons signing the document had not appeared before her, and Piette falsely notarized the documents. These falsely notarized documents were later used to cash homeowner's proceeds check in a large mortgage fraud scheme.

### II. The Mortgage Fraud Scheme.

#### A. Control of the Property

The mortgage fraud scheme may be described as follows: Co-defendant Allen Seymour targeted properties in danger of foreclosure. He personally approached the owners of these properties and presented a variety of rescue options. For those homeowners who merely wished to sell their properties to avoid foreclosure, Seymour offered to purchase the property for the amount owed to the foreclosing lenders. For the several homeowners who wanted to remain in their homes, Seymour presented rescue plans which ranged from "lifetime leases" and "reverse mortgages" to a simple refinance. Some of these homeowners were told they would need to transfer title to the property to an "investor", and some were not. Seymour had some of these homeowners sign innocuous documents to begin the process. The innocuous pages of the signed

1

document were then discarded and substituted with pages purporting to grant Power of Attorney from the homeowner to associates of Seymour's.

### B.  Control of the "Investor"

Simultaneously, Seymour found individuals with good credit and in interest in investing in real estate.  Many of these "investors" were told they would be helping homeowners in danger of losing their homes to foreclosure.  Seymour told several of these investors that the purchase would only be temporary, and the homeowners would purchase the property back from them after Seymour repaired the homeowner's credit.  Others were told that Seymour's company would repair and rehabilitate the properties, and then sell them at a profit, to be shared by Seymour and the investors.  Seymour promised several investors that he would assist in making the mortgage payments for the loans used to purchase the properties.

None of the proposals made to these "investors" matched the transactions presented to the homeowners.  The investors were not told of the "lifetime leases" and "reverse mortgages" Seymour had promised to the homeowners.

### C.  The Closing

Nearly three million dollars in loans were obtained for these purchases.  Loan documents indicate the lender believed the purchase price was far greater than the amount the homeowner was selling the property for, if in fact the homeowner knew they were selling the property at all.

Closing attorney and co-defendant Raymond Desautels III conducted each of the real estate closings for Seymour.  The homeowners never attended these closings, as their documents were signed using a false Power of Attorney.  After receiving the lender's money funding the transaction, Desautels issued a proceeds check payable to the homeowners and based on the fictitious purchase price.  These checks were then cashed.

### III.  Piette notarized documents without the presence of the signor

Seymour and, on one occasion, co-defendant Jason Passell, brought documents signed by the distressed homeowners to notary public Judith Piette.  The homeowners were not present at this time, nor were they known to Piette.  Nevertheless Piette signed the notary clause on these documents (also known as a "jurat"), stating that person who signed the document had personally appeared before her and acknowledge they had signed the document voluntarily and for its intended purpose.  This statement was false.  Documents falsely notarized by Piette were used as follows:

1. A Power of Attorney falsely notarized by Piette was used to cash a check payable to William & Laureen Smith in the amount of $152,603.05. This check was the proceeds of a "sale" of their home of 30 years. The Smiths were unaware they had sold their property and unaware of the Power of Attorney used in their names.

2. A Power of Attorney falsely notarized by Piette was used to cash a check payable to Dennis and Susan Fountain in the amount of $72,572.36. The Fountains were unaware of the Power of Attorney used in their names.

3. A Power of Attorney falsely notarized by Piette was used to cash a check payable to Thomas Carroll in the amount of $94,801.84. Mr. Carroll was unaware of the Power of Attorney used in his name.

4. A Power of Attorney falsely notarized by Piette was used to cash a check payable to Lyon Keefe in the amount of $219,787.55. Ms. Keefe was unaware of the Power of Attorney used in her name.

**IV. The Notary Public is an Officer of the Commonwealth**

A notary pubic is an officer of the Commonwealth empowered by G. L. c. 222 § 1 to take attestations and acknowledge deeds and other instruments. Central to the official duties of a notary public is the honest attestation to the identity, intent, and willingness of individuals signing deeds and other instruments. Piette, by notarizing documents without the presence of the signor, was acting in her official capacity regarding a material matter.

In an interview Piette admitted she had notarized documents without the presence of the person who signed the documents. Piette is charged with four counts of executing false written reports by a public officer, G.L. c. 268 § 6A.

Respectfully Submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

Andrew Doherty BBO# 654842
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 x 2564

Date: October 29, 2009

3

**Certificate of Service**

I, Andrew Doherty hereby certify that I have, on October 29, 2009, caused a copy of the Commonwealth's Statement of the Case to be served on defendant by hand delivery to defense counsel of record.

Andrew Doherty

# EXHIBIT E

## Grand Jury Charges –
## Judith Piette

09-1192

False Written Report By A
Public Officer
G.L. c. 268, § 6A

## Commonwealth of Massachusetts

Worcester, To Wit:

At the SUPERIOR COURT, begun and holden at the CITY OF

WORCESTER, within and for the County of Worcester, on the First Monday of July in the year

two thousand and nine,

THE JURORS for the COMMONWEALTH OF MASSACHUSETTS on their oath present,

That    Judith Piette

between on or about June 28, 2006 and on or about September 13, 2006, within the county of
Worcester aforesaid, being an officer of the commonwealth, to wit: a notary public, did in
the course of her official duties execute, file, or publish a false written statement, to wit:
that William H. Smith and Laureen Smith did personally appear before her and
acknowledge an instrument, knowing that written statement to be false in a material
matter, in violation of G.L. c. 268, § 6A.

Against the peace of said Commonwealth, and contrary to the form of the statute in such
case made and provided.

A true bill.

_Foreperson of the Grand Jury._

_Assistant Attorney General._

_Superior Court_

_25  day  Returned by the Grand Jury and filed in Court._                    Sept. term, 2009

_Assistant Clerk_

# EXHIBIT F

# Identity Theft Victim's Complaint and Affidavit –

# William Howard Smith

# Identity Theft Victim's Complaint and Affidavit

*A voluntary form for filing a report with law enforcement, and disputes with credit reporting agencies and creditors about identity theft-related problems. Visit ftc.gov/idtheft to use a secure online version that you can print for your records.*

---

**Before completing this form:**
1. Place a fraud alert on your credit reports, and review the reports for signs of fraud.
2. Close the accounts that you know, or believe, have been tampered with or opened fraudulently.

---

## About You *(the victim)*

### Now

(1) My full legal name: <u>William</u>   <u>Howard</u>   <u>Smith</u>
       First        Middle        Last        Suffix

(2) My date of birth: <u>02/05/1953</u>
       mm/dd/yyyy

(3) My Social Security number: <u>021- 42- 5149</u>

(4) My driver's license: <u>MA</u>       <u>S78852560</u>
       State        Number

(5) My current street address:
   <u>3 Dresser Hill Road</u>
   Number & Street Name        Apartment, Suite, etc.
   <u>Dudley</u>        <u>MA</u>        <u>01571</u>        <u>USA</u>
   City        State        Zip Code        Country

(6) I have lived at this address since <u>January, 1982</u>
       mm/yyyy

(7) My daytime phone: <u>(774) 312-5558</u>
   My evening phone: <u>(774) 312-5558</u>
   My email: <u>N/A</u>

> Leave (3) blank until you provide this form to someone with a legitimate business need, like when you are filing your report at the police station or sending the form to a credit reporting agency to correct your credit report.

### At the Time of the Fraud

(8) My full legal name was: <u>William</u>   <u>Howard</u>   <u>Smith</u>
       First        Middle        Last        Suffix

(9) My address was: <u>3 Dresser Hill Road</u>
       Number & Street Name        Apartment, Suite, etc.
   <u>Dudley</u>        <u>MA</u>        <u>01571</u>        <u>USA</u>
   City        State        Zip Code        Country

(10) My daytime phone: <u>(774) 312-5558</u>   My evening phone: <u>(774)312-5558</u>

   My email: <u>N/A</u>

> Skip (8) – (10) if your information has not changed since the fraud.

---

The Paperwork Reduction Act requires the FTC to display a valid control number (in this case, OMB control #3084-0047) before we can collect – or sponsor the collection of – your information, or require you to provide it.

*Victim's Name*_____*Phone number* (___)_____*Page 2*

## About You *(the victim) (Continued)*

### Declarations

(11)   I   ☐ did   OR   ☒ did not   authorize anyone to use my name or personal information to obtain money, credit, loans, goods, or services — or for any other purpose — as described in this report.

(12)   I   ☒ did   OR   ☐ did not   receive any money, goods, services, or other benefit as a result of the events described in this report.*
*We were completely unaware of the "closing" that took place. We did not sign a deed or any other closing documents. However, the perpetrator apparently paid off a mortgage loan in the approximate amount of $30,000.00 in order to proceed with his transaction.

(13)   I   ☒ am   OR   ☐ am not   willing to work with law enforcement if charges are brought against the person(s) who committed the fraud.**
**Charges have already been brought against several parties involved in the transaction and the perpetrators were convicted.

## About the Fraud

(14)   I believe the following person used my information or identification documents to open new accounts, use my existing accounts, or commit other fraud.

> (14):
> Enter what you know about anyone you believe was involved (even if you don't have complete information).

Name: **Allen**                           **Seymour**
First                Middle          Last                Suffix
       **Judith**                          **Piette**
Address:_____
       Number & Street Name              Apartment, Suite, etc.

_____
City                State        Zip Code      Country

Phone Numbers: (___)_____  (___)_____

Additional information about this person: **Please see attached documents**
respecting the prosecution of Allen Seymour, Commonwealth v. Allen Seymour, Worcester Superior Court, Docket No. 2009-1190. Also, see attached documents respecting the prosecution of Judith Piette, Commonwealth v. Judith Piette, Worcester Superior Court, Docket No. 2009-1192.

*Victim's Name*_____*Phone number (____)*_____*Page 3*

(15)   Additional information about the crime (for example, how the identity thief gained access to your information or which documents or information were used):

_____      For further information, please see attached documents respecting the prosecution of Allen Seymour, Commonwealth v. Allen Seymour, Worcester Superior Court, Docket No. 2009-1190.  Also, see attached documents respecting

the prosecution of Judith Piette, Commonwealth v. Judith Piette, Worcester Superior Court, Docket No. 2009-1192.

_____

_____

_____

_____

## Documentation

(16)   I can verify my identity with these documents:

**X**   A valid government-issued photo identification card (for example, my driver's    license, state-issued ID card, or my passport).
*If you are under 16 and don't have a photo-ID, a copy of your birth certificate or a copy of your official school record showing your enrollment and legal address is acceptable.\**
\*Driver's license attached.

**X**   Proof of residency during the time the disputed charges occurred, the loan was made, or the other event took place (for example, a copy of a rental/lease agreement in my name, a utility bill, or an insurance bill).\*\*

\*\*Deed attached.

> (16): Reminder: Attach copies of your identity documents when sending this form to creditors and credit reporting agencies.

## About the Information or Accounts

(17)   The following personal information (like my name, address, Social Security number, or date of birth) in my credit report is inaccurate as a result of this identity theft:

(A) N/A _____

(B) _____

(C) _____

(18)   Credit inquiries from these companies appear on my credit report as a result of this identity theft:

Company Name: N/A _____

Company Name: _____

Company Name: _____

*Victim's Name* ☐    ☐    ☐    *Phone number* (    )    *Page 4*

☐

(19)  ☐ Below are details about the different frauds committed using my personal information.

| Fremont Investment and Loan, its successors and assigns | Theft Department | 1-866-771-5152 (fax) | |
|---|---|---|---|
| Name of Institution | Contact Person | Phone | Extension |

Account Number  7090725552    Routing Number                 Affected  Check Number(s)
Account Type   ☐ Credit   ☐ Bank   ☐ Phone/Utilities   ☒ Loan
                ☐ Government Benefits   ☐ Internet or Email   ☐ Other

Select ONE:
  X This account was opened fraudulently.
     This was an existing account that someone tampered with.

| · 09/13/2006 | 04/ 2010 | $300,000.00 |
|---|---|---|
| Date Opened or Misused (mm/yyyy) | Date Discovered (mm/yyyy) | Total Amount Obtained ($) |

| Name of Institution | Contact Person | Phone | Extension |
|---|---|---|---|

Account Number                 Routing Number                 Affected  Check Number(s)

Account Type:   Credit    Bank    Phone/Utilities    Loan
                 , Government Benefits  Internet or Email    Other

Select ONE:
     This account was opened fraudulently.
     This was an existing account that someone tampered with.

| Date Opened or Misused (mm/yyyy) | Date Discovered (mm/yyyy) | Total Amount Obtained ($) |
|---|---|---|

| Name of Institution | Contact Person | Phone | Extension |
|---|---|---|---|

Account Number                 Routing Number                 Affected  Check Number(s)

Account Type:   Credit    Bank    Phone/Utilities    Loan
                 Government Benefits  Internet or Email    Other

Select ONE:
     This account was opened fraudulently.
     This was an existing account that someone tampered with.

| Date Opened or Misused (mm/yyyy) | Date Discovered (mm/yyyy) | Total Amount Obtained ($) |
|---|---|---|

[19]:
If there were more than three frauds, copy this page blank, and attach as many additional copies as necessary.

Enter any applicable information that you have, even if it is incomplete or an estimate.

If the thief committed two types of fraud at one company, list the company twice, giving the information about the two frauds separately.

*Contact Person*: Someone you dealt with, whom an investigator can call about this fraud.

*Account Number*: The number of the credit or debit card, bank account, loan, or other account that was misused.

*Dates*: Indicate when the thief began to misuse your information and when you discovered the problem.

*Amount Obtained*: For instance, the total amount purchased with the card or withdrawn from the account.

*Victim's Name*_____   *Phone number (___)*_____*Page 5*

## Your Law Enforcement Report

(20)   One way to get a credit reporting agency to quickly block identity theft-related information from appearing on your credit report is to submit a detailed law enforcement report ("Identity Theft Report"). You can obtain an Identity Theft Report by taking this form to your local law enforcement office, along with your supporting documentation. Ask an officer to witness your signature and complete the rest of the information in this section. It's important to get your report number, whether or not you are able to file in person or get a copy of the official law enforcement report. Attach a copy of any confirmation letter or official law enforcement report you receive when sending this form to credit reporting agencies.

Select ONE:

    X  I have not filed a law enforcement report.
       *This case has already gone to trial and the perpetrators have been convicted. See attached documents.*
    ☐ I was unable to file any law enforcement report.
    ☐ I filed an automated report with the law enforcement agency listed below.
    ☐ I filed my report in person with the law enforcement officer and agency listed below.

_____

Law Enforcement Department              State

**(20):**
Check "I have not..." if you have not yet filed a report with law enforcement or you have chosen not to. Check "I was unable..." if you tried to file a report but law enforcement refused to take it.

*Automated report:* A law enforcement report filed through an automated system, for example, by telephone, mail, or the Internet, instead of a face-to-face interview with a law enforcement officer.

_____    _____
Report Number               Filing Date (mm/dd/yyyy)

_____    _____
Officer's Name (please print)    Officer's Signature

_____    (___)_____
Badge Number             Phone Number

Did the victim receive a copy of the report from the law enforcement officer?   ☐ Yes   OR   ☐ No

Victim's FTC complaint number (if available): _____

*Victim's Name* _____ *Phone number* (___) _____ *Page 6*

## Signature

**As applicable, sign and date** *IN THE PRESENCE OF* **a law enforcement officer, a notary, or a witness.**

(21)   I certify that, to the best of my knowledge and belief, all of the information on and attached to this complaint is true, correct, and complete and made in good faith. I understand that this complaint or the information it contains may be made available to federal, state, and/or local law enforcement agencies for such action within their jurisdiction as they deem appropriate. I understand that knowingly making any false or fraudulent statement or representation to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.

_William H Smith_ _____          _04/26/2017_ _____
Signature                                                        Date Signed (mm/dd/yyyy)

## Your Affidavit

(22)   If you do not choose to file a report with law enforcement, you may use this form as an Identity Theft Affidavit to prove to each of the companies where the thief misused your information that you are not responsible for the fraud. While many companies accept this affidavit, others require that you submit different forms. Check with each company to see if it accepts this form. You should also check to see if it requires notarization. If so, sign in the presence of a notary. If it does not, please have one witness (non-relative) sign that you completed and signed this Affidavit.

Notary _____

**Witness:**

RODOLFO FIGUEROA
Notary Public
Commonwealth of Massachusetts
My Commission Expires
**August 5, 2022**

*Rodolfo Figueroa*
4/26/2017

Signature _____          Printed Name _____

Date _____          Telephone Number _____

# EXHIBIT G

Identity Theft Victim's Complaint and Affidavit –

Laureen Smith

# Identity Theft Victim's Complaint and Affidavit

*A voluntary form for filing a report with law enforcement, and disputes with credit reporting agencies and creditors about identity theft-related problems. Visit ftc.gov/idtheft to use a secure online version that you can print for your records.*

> **Before completing this form:**
> 1. Place a fraud alert on your credit reports, and review the reports for signs of fraud.
> 2. Close the accounts that you know, or believe, have been tampered with or opened fraudulently.

## About You *(the victim)*

### Now

| | | | | | |
|---|---|---|---|---|---|
| (1) | My full legal name: | Laureen | | Smith | |
| | | First | Middle | Last | Suffix |

(2) My date of birth: 04/14/1958
mm/dd/yyyy

(3) My Social Security number: 016- 50- 1218

(4) My driver's license: MA    S91624208
State    Number

(5) My current street address:
3 Dresser Hill Road
Number & Street Name    Apartment, Suite, etc.

Dudley    MA    01571    USA
City    State    Zip Code    Country

(6) I have lived at this address since January, 1982
mm/yyyy

(7) My daytime phone: ( 774 )312-5557

My evening phone: ( 774 ) 312-5557

My email: fibrogirl55@live.com

> Leave (3) blank until you provide this form to someone with a legitimate business need, like when you are filing your report at the police station or sending the form to a credit reporting agency to correct your credit report.

### At the Time of the Fraud

| | | | | | |
|---|---|---|---|---|---|
| (8) | My full legal name was: | Laureen | | Smith | |
| | | First | Middle | Last | Suffix |

(9) My address was: 3 Dresser Hill Road
Number & Street Name    Apartment, Suite, etc.

Dudley    MA    01571    USA

City    State    Zip Code    Country

(10) My daytime phone: ( 774 ) 312-5557    My evening phone: ( 774 )312-5557

My email: fibrogirl55@live.com

> Skip (8) - (10) if your information has not changed since the fraud.

The Paperwork Reduction Act requires the FTC to display a valid control number (in this case, OMB control #3084-0047) before we can collect – or sponsor the collection of – your information, or require you to provide it.

*Victim's Name*_____    *Phone number* (____)_____    *Page 2*

## About You *(the victim) (Continued)*

### Declarations

(11)  I  ☐ did  OR  ☒ did not    authorize anyone to use my name or personal information to obtain money, credit, loans, goods, or services — or for any other purpose — as described in this report.

(12)  I  ☒ did  OR  ☐ did not    receive any money, goods, services, or other benefit as a result of the events described in this report.*
*We were completely unaware of the "closing" that took place. We did not sign a deed or any other closing documents. However, the perpetrator apparently paid off a mortgage loan in the approximate amount of $30,000.00 in order to proceed with his transaction.

(13)  I  ☒ am  OR  ☐ am not    willing to work with law enforcement if charges are brought against the person(s) who committed the fraud.**
**Charges have already been brought against several parties involved in the transaction and the perpetrators were convicted.

## About the Fraud

(14)  I believe the following person used my information or identification documents to open new accounts, use my existing accounts, or commit other fraud.

[14]:
Enter what you know about anyone you believe was involved (even if you don't have complete information).

Name: _Allen_____    _Seymour_____
          First                    Middle        Last              Suffix
        _Judith_____    _Piette_____
Address: _____
          Number & Street Name              Apartment, Suite, etc.

_____
    City                State        Zip Code        Country

Phone Numbers: (____)_____  (____)_____

Additional information about this person:  _Please see attached documents_
_respecting the prosecution of Allen Seymour, Commonwealth v. Allen Seymour,_
_Worcester Superior Court, Docket No. 2009-1190.  Also, see attached_
_documents respecting the prosecution of Judith Piette,  Commonwealth v._
_Judith Piette,  Worcester Superior Court, Docket No. 2009-1192._
_____
_____
_____

*Victim's Name*_____ *Phone number (___)*_____ *Page 3*

(15)   Additional information about the crime (for example, how the identity thief gained access to your information or which documents or information were used):

_____For further information, please see attached documents respecting the prosecution of Allen Seymour, Commonwealth v. Allen Seymour, Worcester_ Superior Court, Docket No. 2009-1190.  Also, see attached documents respecting

the prosecution of Judith Piette, Commonwealth v. Judith Piette, Worcester Superior Court, Docket No. 2009-1192.

_____

_____

_____

## Documentation

(16)   I can verify my identity with these documents:

> **(16): Reminder:** Attach copies of your identity documents when sending this form to creditors and credit reporting agencies.

   **X**   A valid government-issued photo identification card (for example, my driver's   license, state-issued ID card, or my passport).
   *If you are under 16 and don't have a photo-ID, a copy of your birth certificate or a copy of your official school record showing your enrollment and legal address is acceptable.\**
   *\*Driver's license attached.*

   **X**   Proof of residency during the time the disputed charges occurred, the loan was made, or the other event took place (for example, a copy of a rental/lease agreement in my name, a utility bill, or an insurance bill).\*\*

      *\*\*Deed attached.*

## About the Information or Accounts

(17)   The following personal information (like my name, address, Social Security number, or date of birth) in my credit report is inaccurate as a result of this identity theft:

   (A) N/A _____

   (B) _____

   (C) _____

(18)   Credit inquiries from these companies appear on my credit report as a result of this identity theft:

   Company Name: N/A _____

   Company Name: _____

   Company Name: _____

*Victim's Name* ☐ ☐ ☐     *Phone number* ( ☐ ) _____    *Page 4*

(19) ☐ Below are details about the different frauds committed using my personal information.

| | | | |
|---|---|---|---|
| Fremont Investment and Loan, its successors and assigns | Theft Department | 1-866-771-5152 (fax) | |
| Name of Institution | Contact Person | Phone | Extension |

Account Number 7090725552    Routing Number      Affected Check Number(s)

Account Type ☐ Credit ☐ Bank ☐ Phone/Utilities ☒ Loan
              ☐ Government Benefits ☐ Internet or Email ☐ Other

Select ONE:
    X This account was opened fraudulently.
      This was an existing account that someone tampered with.

       09/13/2006          04/ 2010         $300,000.00

Date Opened or Misused (mm/yyyy)    Date Discovered (mm/yyyy)    Total Amount Obtained ($)

---

Name of Institution             Contact Person          Phone        Extension

Account Number          Routing Number        Affected Check Number(s)

Account Type:   Credit    Bank    Phone/Utilities    Loan
                 Government Benefits Internet or Email   Other

Select ONE:
      This account was opened fraudulently.
      This was an existing account that someone tampered with.

Date Opened or Misused (mm/yyyy)    Date Discovered (mm/yyyy)    Total Amount Obtained ($)

---

Name of Institution             Contact Person          Phone        Extension

Account Number          Routing Number        Affected Check Number(s)

Account Type:   Credit    Bank    Phone/Utilities    Loan
                 Government Benefits Internet or Email   Other

Select ONE:
      This account was opened fraudulently.
      This was an existing account that someone tampered with.

Date Opened or Misused (mm/yyyy)    Date Discovered (mm/yyyy)    Total Amount Obtained ($)

---

**(19):**
If there were more than three frauds, copy this page blank, and attach as many additional copies as necessary.

Enter any applicable information that you have, even if it is incomplete or an estimate.

If the thief committed two types of fraud at one company, list the company twice, giving the information about the two frauds separately.

*Contact Person:* Someone you dealt with, whom an investigator can call about this fraud.

*Account Number:* The number of the credit or debit card, bank account, loan, or other account that was misused.

*Dates:* Indicate when the thief began to misuse your information and when you discovered the problem.

*Amount Obtained:* For instance, the total amount purchased with the card or withdrawn from the account.

*Victim's Name*_____   *Phone number (___)*_____*Page 5*

## Your Law Enforcement Report

(20)  One way to get a credit reporting agency to quickly block identity theft-related information from appearing on your credit report is to submit a detailed law enforcement report ("Identity Theft Report"). You can obtain an Identity Theft Report by taking this form to your local law enforcement office, along with your supporting documentation. Ask an officer to witness your signature and complete the rest of the information in this section. It's important to get your report number, whether or not you are able to file in person or get a copy of the official law enforcement report. Attach a copy of any confirmation letter or official law enforcement report you receive when sending this form to credit reporting agencies.

Select ONE:

X  I have not filed a law enforcement report.
  *This case has already gone to trial and the perpetrators have been convicted. See attached documents.*
☐ I was unable to file any law enforcement report.
☐ I filed an automated report with the law enforcement agency listed below.
☐ I filed my report in person with the law enforcement officer and agency listed below.

_____
Law Enforcement Department                          State

**(20):**
Check "I have not..." if you have not yet filed a report with law enforcement or you have chosen not to. Check "I was unable..." if you tried to file a report but law enforcement refused to take it.

*Automated report:* A law enforcement report filed through an automated system, for example, by telephone, mail, or the Internet, instead of a face-to-face interview with a law enforcement officer.

_____
Report Number                          Filing Date (mm/dd/yyyy)

_____
Officer's Name (please print)            Officer's Signature

_____
Badge Number              (___)_____
                          Phone Number

Did the victim receive a copy of the report from the law enforcement officer?      ☐ Yes   OR   ☐ No

Victim's FTC complaint number (if available): _____

*Victim's Name* _____   *Phone number* ( ___ ) _____   *Page 6*

## Signature

**As applicable, sign and date *IN THE PRESENCE OF* a law enforcement officer, a notary, or a witness.**

(21)   I certify that, to the best of my knowledge and belief, all of the information on and attached to this complaint is true, correct, and complete and made in good faith. I understand that this complaint or the information it contains may be made available to federal, state, and/or local law enforcement agencies for such action within their jurisdiction as they deem appropriate. I understand that knowingly making any false or fraudulent statement or representation to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.

_Laureen Smith_ _____      _04/26/2017_ _____
Signature                                                          Date Signed (mm/dd/yyyy)

## Your Affidavit

(22)   If you do not choose to file a report with law enforcement, you may use this form as an Identity Theft Affidavit to prove to each of the companies where the thief misused your information that you are not responsible for the fraud. While many companies accept this affidavit, others require that you submit different forms. Check with each company to see if it accepts this form. You should also check to see if it requires notarization. If so, sign in the presence of a notary. If it does not, please have one witness (non-relative) sign that you completed and signed this Affidavit.

Notary _____

**RODOLFO FIGUEROA**
Notary Public
Commonwealth of Massachusetts
My Commission Expires
**August 5, 2022**

Witness: _____

_Rodolfo_ _____
4/26/2017

_____      _____
Signature                                     Printed Name

_____      _____
Date                                            Telephone Number

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>17-0763B | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | |
|---|---|---|
| **PLAINTIFF(S):** William Howard Smith and Laureen Smith | **COUNTY** Worcester | |
| **ADDRESS:** 3 Dresser Hill Road | | |
| Dudley, MA  01571 | **DEFENDANT(S):** HSBC Bank USA,  National Association, | |
| | as trustee for Fremont Home Loan Trust | |
| **ATTORNEY:** Michele Unger Callahan, Esq. | 2006-E Mortgage-Backed Certificates, Series 2006-E | |
| **ADDRESS:** 19 Pierce Avenue, Suite C | **ADDRESS:** c/o Korde and Associates, P.C. | |
| PMB #19 | 900 Chelmsford Street, Suite 3102 | |
| Fitchburg, MA  01420 | Lowell, MA  01851 | |
| **BBO:** 652202 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D03 | Injunction | (F) | ☐ YES   ☒ NO |

*If "Other" please describe:

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ........................................................................................ $ _____
    2. Total doctor expenses ........................................................................................ $ 1,000.00
    3. Total chiropractic expenses ............................................................................... $ _____
    4. Total physical therapy expenses ....................................................................... $ _____
    5. Total other expenses (describe below) .............................................................. $ _____
                                        Subtotal (A): $ _____

B. Documented lost wages and compensation to date ............................................... $ _____
C. Documented property damages to dated ............................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses .............................. $ 10,000.00
E. Reasonably anticipated lost wages ....................................................................... $ _____
F. Other documented items of damages (describe below) .......................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
  Plaintiff suffers from severe distress, loss of sleep, increased pain, and difficulty walking without assistance

                                          TOTAL (A-F):$ 11,000.00

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
  Violation of the MA Consumer Protection Act

                                  TOTAL: $ 10,000.00

**Signature of Attorney/Pro Se Plaintiff:** X _____      **Date:** 05/10/2017

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:** X _____      **Date:** 5/10/2017

*[Stamp: FILED MAY 10 2017 ATTEST: ___ CLERK]*

*A true copy by photostatic process*
*Attest: ___ Asst. Clerk*

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality \***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA, etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c.231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical / Wrongful Death | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death, G.L. c.229 §2A | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10 §28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c.249 §4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G. L. c. 93 §9 | (A) |
| E07 Mass Antitrust Act, G. L. c. 93 §8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149 §§29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12 §11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123 §9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c265 §56 | (X) |
| E95 Forfeiture, G.L. c.94C §47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231 §60B | (F) |
| Z02 Appeal Bond Denial | |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A §12 | (X) |
| E14 SDP Petition, G.L. c. 123A §9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c.6 §178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112 §12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.**

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                      SUPERIOR COURT

WILLIAM HOWARD SMITH and
LAUREEN SMITH,                    **FILED**

        Plaintiffs,          MAY 1 0 2017      CIVIL ACTION
                                                   NO.:   17-07630
                      ATTEST: _____
v.                                           CLERK

HSBC Bank USA, National Association,   )
as trustee for Fremont Home Loan Trust )
2006-E Mortgage-Backed Certificates,   )
Series 2006-E                          )
        Defendant(s).          )

## EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER

Now come the Plaintiffs, William Howard Smith and Laureen Smith, residents and rightful

owners of 3 Dresser Hill Road, Worcester County, Massachusetts by deed from William Howard

Smith to William Howard Smith and Laureen Smith on June 1, 1981, recorded on June 4, 1981

in consideration of less than $100.00, recorded at Book 7244, Page 293 and move this Honorable

Court pursuant to Mass. R. Civ. P. 65, and ex parte pursuant to Rule 9A of the Superior Court

Rules, for a temporary restraining order that the Defendant be enjoined from proceeding with the

foreclosure auction scheduled for May 10, 2017 at 12:00 PM respecting the Plaintiffs' residence

located at 3 Dresser Hill Road, Dudley, Worcester, Massachusetts  until the final disposition of

Plaintiffs' Complaint filed herewith

        As grounds therefore, the Plaintiffs say that as is detailed in the Plaintiffs' accompanying

Affidavit and the Complaint filed herewith.

*Temporary restraining order allowed until may 16, 2017*
*- Parties to appear on that date for hearing.*

*5/10/16*

1

Respectfully submitted,

William Howard Smith and Laureen Smith,
By their attorney,

Date:  05/10/2017

Michele Unger Callahan, Esq., (BBO #652202)
19 Pierce Avenue, Suite C
PMB #19
Fitchburg, MA  01420
mucallahanesq@gmail.com
(617) 417-7584

A true copy by photostatic process
Attest: _____ Williams
Dep/Asst. Clerk

2

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                            SUPERIOR COURT

---

WILLIAM HOWARD SMITH and )
LAUREEN SMITH,                     )
                                              )
                Plaintiffs,           )                    CIVIL ACTION
                                              )
v.                                           )                    NO.: 17-0763B
                                              )
HSBC Bank USA, National Association, )
as trustee for Fremont Home Loan Trust )
2006-E Mortgage-Backed Certificates, )
Series 2006-E                      )
                Defendant(s)       )
                                              )

---

**FILED**

MAY 10 2017

ATTEST: _____ CLERK



### <u>AFFIDAVIT</u>

    1.    We, William Howard Smith and Laureen Smith ("Plaintiffs") are residents and

rightful owners of 3 Dresser Hill Road, Dudley, Worcester County, Massachusetts by deed from

Elida Wood, as life tenant, and Charles K. Wood, a/k/a Charles Kenneth Wood to William

Howard Smith dated September 26, 1980 and recorded on September 26, 1980 at the Worcester

County Registry of Deeds, Book 7070, Page 73, and subsequently conveyed by deed from

William Howard Smith to William Howard Smith and Laureen Smith dated June 1, 1981 and

recorded on June 4, 1981 at the Worcester County Registry of Deeds, Book 7244, Page 293.

    2.    According to the notice in the newspaper, Defendant, HSBC Bank USA, National

Association, as trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates,

Series 2006-E is the mortgage lender foreclosing on the mortgage from Mortgage from David

Gallant, Jr. to MERS as nominee for Fremont Investment & Loan at Book 39759, Page 369 on

9/13/2006. The auction date is scheduled for May 10, 2017 at 12:00 PM.

3.    We, William Howard Smith and Laureen Smith, entered into a mortgage from

William Howard Smith and Laureen Smith to GMAC Mortgage Corporation in the original

principal amount of $26,750.00, dated March 22, 2000 and recorded on March 24, 2000 at the

Worcester County Registry of Deeds, at Book 22423, Page 313.

4.    We, William Howard Smith and Laureen Smith, also entered into a Home Equity

Line of Credit Mortgage from William Howard Smith and Laureen Smith to GMAC Mortgage

Corporation in the original principal amount of $94,800.00, dated March 22, 2000 and recorded

on March 24, 2000 at the Worcester County Registry of Deeds, at Book 22423, Page 320.

5.    On or around June/July 2006, we, William Howard Smith and Laureen Smith

were struggling to make our mortgage payments.  We were approached by Allen Seymour, who

was proposing we enter into a reverse mortgage. We signed some preliminary documents, but

after a few conversations with Mr. Seymour, we did not hear from him again.

6.    Allen Seymour, by means of a false deed, misrepresentation and false power-of-

attorney, defrauded us, and forged a deed to from us, William Howard Smith and Laureen Smith

to David W. Gallant, Jr.

7.    We never signed a deed or attended a closing.  According to the Commonwealth's

Statement of the Case, Allen Seymour used our signatures from the preliminary documentation

he had obtained from us and created a false power-of-attorney and forged deed.

8.     The forged deed is dated July 25, 2006, but we never signed a deed.  A fraudulent closing was held and Seymour and his associates recorded the forged deed from us, William Howard Smith and Laureen Smith to David W. Gallant, Jr

9.     We never attended a closing, and were not aware a closing had occurred until approached by the Attorney General's office with respect to its cases against Allen Seymour, Raymond Desautels, III and Judith Piette, notary public.

10.    The forged deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. was dated July 25, 2006 and recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 366.

11.    A mortgage from David Gallant, Jr. to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan in the original principal amount of $285,000.00 was recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369.

12.    We testified at the Grand Jury trials for Allen Seymour and Judith Piette.

13.    On September 25, 2009 the Grand Jury brought the following criminal charges against Allen Seymour:  Uttering of False or Forged Power of Attorney, Forgery of Power of Attorney and Inducement to Part with Property by False Pretense.

14.    On September 25, 2009, the Grand Jury brought the following criminal charge against Judith Piette:  False Written Report by a Public Officer. (See Exhibits D, E)

15.    On or around August 12, 2016 we received a letter from Hinshaw & Culbertson, LLP informing them of their right to appear at a future auction and bid to repurchase their property. There was no mention of a foreclosure date in the letter.  This was the only notice we

had of the foreclosure until we read about the foreclosure auction in the newspaper on April 6, 2017.

16.     Upon learning of the foreclosure, we contacted the Defendant to discuss our options.  Pursuant to the communication with the Defendant and at the Defendant's request, we provided Identity Theft Affidavits to the Defendant on April 26, 2017.  We were told it would take approximately thirty days to review the forms. We requested a continuance or cancellation of the auction date while the Defendant reviewed the Affidavits.

17.     On Friday afternoon, May 5, 2017, we were informed that the Defendant did not intend to continue or cancel the auction and that the auction would still take place on May 10, 2017 at 12:00 PM.

18.     The Defendant's unwillingness to resolve this matter has caused us significant physical and emotional distress.  I, Laureen, suffer from anxiety and have had to increase my medication. The stress has worsened my fibromyalgia, including limiting my ability to get around.  We both have difficulty sleeping.

Dated:  05/10/2017

_William Howard Smith_
William Howard Smith

_Laureen Smith_
Laureen Smith

**Commonwealth of Massachusetts**

Worcester, ss.                                              May 10, 2017

Then personally appeared the above named William Howard Smith and Laureen Smith, personally known to me (or proved to me on the basis of satisfactory evidence, being ____ _____DL_____) and being duly sworn, certified to the truth of the foregoing statements, before me



Michele Unger Callahan
**Notary Public**
My commission expires: June 15, 2023

A true copy by photostatic process
Attest: _____
Dep. Asst. Clerk

| SUMMONS AND TEMPORARY RESTRAINING ORDER | DOCKET NUMBER<br>1785CV00763 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>William H Smith et al vs. HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E | Dennis P. McManus, Clerk of Courts |
|---|---|
| TO:<br>**HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E** | COURT NAME & ADDRESS<br>Worcester County Superior Court<br>225 Main Street<br>Worcester, MA 01608 |

To the above named defendant(s):

You are hereby summoned and required to serve upon, plaintiff's attorney:

**Michele Unger Callahan, Esq.**
**19 Pierce Ave**
**Ste. C PMB #19**
**Fitchburg, MA 01420**

an answer to the complaint/3rd party complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint/3rd party complaint. You are also required to file your answer to the complaint/3rd party complaint in the office of Clerk of this Court at Worcester either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action for a Temporary Restraining Order. A hearing will be held at the court house on:

**Date: 05/16/2017**

**Time: 02:00 PM**

**Session: Civil B**

**Session Location: Worcester County Superior Court**

at which time you may appear and show cause why such application should not be granted. In the meantime, until such hearing, **WE COMMAND YOU**, HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E and your agents, attorneys and counselors, and each and every one of them:

**That the Defendant be enjoined from proceeding with the foreclosure auction scheduled for May 10, 2017 at 12:00 PM respecting the Plaintiffs' residence located at 3 Dresser Hill Road, Dudley, Worcester, Massachusetts until May 16, 2017 parties to appear on that date for a hearing.**

A true copy by photostatic process

Attest: _R.J. Williams_
Dep. Asst. Clerk

| DATE ISSUED<br>05/10/2017 | ASSOCIATE JUSTICE<br>Hon. James G Reardon, Jr. | ASSISTANT CLERK<br>X | SESSION PHONE#<br>(508)831-2364 |
|---|---|---|---|

Date/Time Printed: 05-10-2017 09:50:20

SCV020\ 11/2014

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>1785CV00763 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>William H Smith et al vs. HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E | Dennis P. McManus, Clerk of Courts |
|---|---|
| TO: File Copy<br><br>, | COURT NAME & ADDRESS<br>Worcester County Superior Court<br>225 Main Street<br>Worcester, MA 01608 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                                   **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 08/08/2017 | |
| Response to the complaint filed (also see MRCP 12) | | 09/07/2017 | |
| All motions under MRCP 12, 19, and 20 | 09/07/2017 | 10/10/2017 | 11/06/2017 |
| All motions under MRCP 15 | 09/07/2017 | 10/10/2017 | 11/06/2017 |
| All discovery requests **and depositions** served and non-expert despositions completed | 03/06/2018 | | |
| All motions under MRCP 56 | 04/05/2018 | 05/07/2018 | |
| Final pre-trial conference held and/or firm trial date set | | | 09/04/2018 |
| Case shall be resolved and judgment shall issue by | | | 05/10/2019 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>05/10/2017 | ASSISTANT CLERK<br>Gail Dempsey | PHONE<br>(508)831-2364 |
|---|---|---|

Date/Time Printed: 05-10-2017 09:17:27                                                                    SCV026\ 11/2014

| **NOTICE TO APPEAR FOR** Hearing on Preliminary Injunction | DOCKET NUMBER **1785CV00763** | **Trial Court of Massachusetts The Superior Court** |
|---|---|---|

CASE NAME:
**William H Smith et al vs. HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed**

Dennis P. McManus, Clerk of Courts

TO:

File Copy

,

COURT NAME & ADDRESS

Worcester County Superior Court
225 Main Street
Worcester, MA 01608

---

The Court will hear the following event:

### Hearing on Preliminary Injunction

Counsel should appear as follows:

**Date:** 05/25/2017

**Time:** 02:00 PM

**Session/ Courtroom Location:** Civil B / WOR-4th FL, CR19 (SC)

**FURTHER ORDER OF THE COURT:**

---

| DATE ISSUED 05/15/2017 | ASSOCIATE JUSTICE **Hon. Richard T Tucker** | **Dennis P. McManus, Clerk of Courts** |
|---|---|---|

Date/Time Printed: 05-15-2017 10:49:30

SCV012a\.06/2014

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

FILED

MAY 15 2017

ATTEST: _____ CLERK

SUPERIOR COURT

WILLIAM HOWARD SMITH and
LAUREEN SMITH,

      Plaintiffs,

v.

HSBC Bank USA, National Association,
as trustee for Fremont Home Loan Trust
2006-E Mortgage-Backed Certificates,
Series 2006-E

          Defendant(s).

)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION
NO.:   17-0763B

## MOTION FOR CONTINUANCE

Now come the Plaintiffs, William Howard Smith and Laureen Smith, and respectfully
request this Honorable Court for an order to continue the Injunction Hearing, currently scheduled
for May 16, 2017 at 2:00 P.M. until May 25, 2017 at 2 P.M.

In support their Motion, the Plaintiffs state:

1. This case was filed on May 10, 2017.

2. Immediately following the receipt of the Court's granting the Temporary Restraining
   Order a copy of the Summons and Temporary Restraining Order was sent via
   electronic mail to Korde and Associates, PC, and the foreclosure auction was stopped.

3. The Summons and Temporary Restraining Order and Complaint were delivered to the
   Middlesex County Sheriff's office on May 10, 2017 to be served on counsel for the

5-15-17  Allowed

Notices Mailed 5/15/17

Defendant, Korde and Associates, P.C., 900 Chelmsford Street, Suite 3102, Lowell, Massachusetts.

4.  Correspondence from Ocwen Loan Servicing, LLC as agent for Defendant had provided the name and address of Korde and Associates, PC for future communication with the Defendant.

5.  On May 11, 2017, Korde and Associates, PC refused service of the Complaint and Temporary Restraining Order and Complaint.

6.  On May 11, 2017, the Middlesex Sheriff's Office notified Plaintiffs' counsel that the delivery of the Summons and Temporary Restraining Order and Complaint was refused by Korde and Associates.

7.  Upon communication with Defendant's counsel, Korde and Associates, PC, Plaintiff's counsel was advised that the Summons and Temporary Restraining Order should be served to Korde and Associates, PC.  However, Korde and Associates had already refused the Summons.  Defendant's counsel also advised that Plaintiffs serve the Summons and Temporary Restraining Order and Complaint on Hinshaw & Culbertson, LLC of Boston, Massachusetts.  Pursuant to prior communication with Hinshaw & Culbertson, LLC, counsel for Plaintiffs was advised that their case respecting the property located at 3 Dresser Hill Road, Dudley, Massachusetts had been closed.

8.  Counsel for the Plaintiffs has not received the returned Summons and Temporary Stop Order and Complaint from the Middlesex Sheriff's Office as of May 15, 2017 at 9:00 AM.

9. Plaintiffs are searching for an agent for the Defendant to accept the Summons and Temporary Restraining Order.

10. Plaintiffs are requesting a continuance of the Injunction Hearing until Thursday, May 25, 2017 at 2:00 PM, to allow for the return of the Summons and Temporary Restraining Order and Complaint and to locate an authorized agent of the Defendant who will accept service of the Summons and Temporary Restraining Order and Complaint.

WHEREFORE, Plaintiffs request that the Court:

a. Grant their Motion for Continuance; and

b. Order any other relief that is fair and just.

Respectfully submitted,

William Howard Smith and Laureen Smith,
By their attorney,

Date: 05/15/2017

Michele Unger Callahan, Esq., (BBO #652202)
19 Pierce Avenue, Suite C
PMB #19
Fitchburg, MA  01420
mucallahanesq@gmail.com
(617) 417-7584

A true copy by photostatic process
Attest: _____
_____ Asst. Clerk

| **CLERK'S NOTICE** | DOCKET NUMBER<br><br>**1785CV00763** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>  William H Smith et al vs. HSBC Bank USA, National Association<br>  Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed<br>  Certificates, Series 2006-E | Dennis P. McManus, Clerk of Courts |
|---|---|
| TO:<br>  File Copy | COURT NAME & ADDRESS<br>  Worcester County Superior Court<br>  225 Main Street<br>  Worcester, MA 01608 |

You are hereby notified that on 05/15/2017 the following entry was made on the above referenced docket:

Endorsement on Motion for Continuance of May 16, 2017 Hearing (#5.0): ALLOWED
Notices mailed 5/15/17

| DATE ISSUED<br><br>05/15/2017 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br><br>**Hon. Richard T Tucker** | SESSION PHONE#<br><br>**(508)831-2364** |
|---|---|---|

Date/Time Printed: 05-15-2017 10:56:29                                           SCV016_X1\.08/2014

6/16

# COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                        SUPERIOR COURT

|  |  |
|---|---|
| WILLIAM HOWARD SMITH, *et al.* | ) |
| | ) |
| Plaintiffs | ) |
| | ) CIVIL ACTION |
| | ) NO.: 1785CV00763B |
| v. | ) |
| | ) |
| HSBC Bank USA, National Association, | ) |
| as Trustee for Fremont Home Loan Trust | ) |
| 2006-E Mortgage-Backed Certificates, | ) |
| Series 2006-E, | ) |
| | ) |
| Defendants | ) |

**FILED**

JUN 16 2017

ATTEST: _Del Nath_ CLERK

## PLAINTIFFS' MOTION TO FILE AN AMENDED COMPLAINT

COME NOW the Plaintiffs, William Howard Smith and Laureen Smith, by and through

their attorney, Michele Unger Callahan, Esq., and move this Court to for leave to file an

Amended Complaint, for the following reasons:

1. On or about May 10, 2017, William Howard Smith and Laureen Smith ("Plaintiffs")

    filed a Complaint against HSBC Bank USA, National Association, as Trustee for

    Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006.

    ("Defendant").

6-22-17 *Allowed as a matter of right prior to a responsive pleading being filed* Notices Mailed 6|23|17

*Tinker, J*

2.   Subsequent to two unsuccessful attempts for service of process of the Complaint on the Defendant, a summons was successfully served to the Defendant on or about June 9, 2017.

3.   As of June 16, 2017, Plaintiffs have not received a Response from the Defendant.

WHEREFORE, pursuant to Mass. R. Civ. P. 15, 365 Mass. 761 (1974) Plaintiffs request that the Court enter an Order allowing the Motion to File an Amended Complaint, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

William Howard Smith and Laureen Smith,
By their attorney,

Date:  06/16/2017

Michele Unger Callahan, Esq., (BBO #652202)
19 Pierce Avenue, Suite C
PMB #19
Fitchburg, MA  01420
mucallahanesq@gmail.com
(617) 417-7584

A true copy by photostatic process
Attest:
Asst. Clerk

| CLERK'S NOTICE | DOCKET NUMBER<br><br>1785CV00763 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>William H Smith et al vs. HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E | Dennis P. McManus, Clerk of Courts |
|---|---|

| TO:<br>File Copy<br>, | COURT NAME & ADDRESS<br><br>Worcester County Superior Court<br>225 Main Street<br>Worcester, MA 01608 |
|---|---|

You are hereby notified that on 06/22/2017 the following entry was made on the above referenced docket:

Endorsement on Motion to File an Amended Complaint (#6.0): ALLOWED
As a matter of right prior to a responsive pleading being filed. Notices mailed 6/23/17

| DATE ISSUED<br><br>06/23/2017 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br><br>Hon. Richard T Tucker | SESSION PHONE#<br><br>(508)831-2364 |
|---|---|---|

6/16

| SUMMONS AND TEMPORARY RESTRAINING ORDER | DOCKET NUMBER<br>**1785CV00763** | **Trial Court of Massachusetts**<br>**The Superior Court**  |
|---|---|---|

| CASE NAME:<br>William H Smith et al vs. HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E | Dennis P. McManus, Clerk of Courts |
|---|---|
| TO: **HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E** | COURT NAME & ADDRESS<br>Worcester County Superior Court<br>225 Main Street<br>Worcester, MA 01608 |

**FILED**

JUN 16 2017

ATTEST: _Dul Mah_ CLERK

To the above named defendant(s):

You are hereby summoned and required to serve upon, plaintiff's attorney:

**Michele Unger Callahan, Esq.**
**19 Pierce Ave**
**Ste. C PMB #19**
**Fitchburg, MA 01420**

an answer to the complaint/3rd party complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint/3rd party complaint. You are also required to file your answer to the complaint/3rd party complaint in the office of Clerk of this Court at Worcester either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action for a Temporary Restraining Order. A hearing will be held at the court house on:

Date: 05/16/2017

Time: **2:00 PM**

Session: **Civil B**

Session Location: **Worcester County Superior Court**

at which time you may appear and show cause why such application should not be granted. In the meantime, until such hearing, **WE COMMAND YOU**, HSBC Bank USA, National Association Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E and your agents, attorneys and counselors, and each and every one of them:

That the Defendant be enjoined from proceeding with the foreclosure auction scheduled for May 10, 2017 at 12:00 PM respecting the Plaintiffs' residence located at 3 Dresser Hill Road, Dudley, Worcester, Massachusetts until May 16, 2017 parties to appear on that date for a hearing.

A true copy by photostatic process

Attest: _V L Williams_

_Asst. Clerk_

| DATE ISSUED<br>05/10/2017 | ASSOCIATE JUSTICE<br>Hon. James G Reardon, Jr. | ASSISTANT CLERK<br>X | SESSION PHONE#<br>(508)831-2364 |
|---|---|---|---|

Date/Time Printed: 05-10-2017 09:50:20                                    SCV020, 11/2014

# Affidavit of Process Server

## TRIAL COURT OF MASSACHUSETTS THE SUPERIOR COURT

| WILLIAM H. SMITH | VS | HSCB BANK USA, NA | 1785cv00763 |
|---|---|---|---|
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

I KEVIN S. DUNN_____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service. RECEIVED 6/8/17

**Service:** I served HSCB BANK USA, NATIONAL ASSOCIATION Trustee for FREMONT HOME LOAN TRUST 2006-E MORTGAGE-BACKED CERTIFICATES SERIES 2006-E
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS AND TEMPORARY RESTRAINING ORDER AND COMPLAINT

by leaving with LYNANNE GARES (authorized person at registered agent)_____ At
NAME                                                    RELATIONSHIP

☐ Residence _____
ADDRESS                                    CITY / STATE

☒ Business   C/O OCWEN LOAN SERVING C/O CORPORATION SERVICE CO. 2711 CENTERVILLE RD. WILMINGTON, DE 19808
ADDRESS                                    CITY / STATE

On 6/8/17_____ AT 12:30 PM_____
DATE                                          TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on_____
DATE

from_____
CITY              STATE              ZIP

**Manner of Service:**
☒ CORPORATE
☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of 18____ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

☐ **Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address    ☐ Moved, Left no Forwarding    ☐ Service Cancelled by Litigant    ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist  ☐ Other

**Service Attempts:** Service was attempted on: (1)_____ (2)_____
DATE      TIME                    DATE      TIME

(3)_____ (4)_____ (5)_____
DATE      TIME        DATE      TIME           DATE      TIME

AGE  45  Sex F  Race W  Height 5'6  Weight 180  HAIR BROWN

SIGNATURE OF PROCESS SERVER
KEVIN S. DUNN

A true copy by photostatic process
Attest: _____ Williams
_____ Asst. Clerk

SUBSCRIBED AND SWORN In the State of Delaware, New Castle County before me this 8TH____ day of June____, 2017

_____
SIGNATURE OF NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

NOTARY PUBLIC for the state of  DELAWARE

NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                    SUPERIOR COURT

| | |
|---|---|
| WILLIAM HOWARD SMITH and )<br>LAUREEN SMITH,                    )<br>                                          )<br>            Plaintiffs,               )<br>                                          )<br>v.                                        )<br>                                          )<br>HSBC Bank USA, National Association, )<br>as Trustee for Fremont Home Loan Trust )<br>2006-E Mortgage-Backed Certificates, )<br>Series 2006-E,                       )<br>            and                       )<br>Fremont Investment & Loan,      )<br>            and                       )<br>HSBC Bank, USA, National Association, )<br>as Trustee under the Pooling and Servicing )<br>Agreement dated as of December 1, 2006, )<br>Fremont Investment & Loan Trust 2006-E, )<br>            and                       )<br>HSBC Bank, USA, National Association, )<br>as Trustee under the Pooling and Servicing )<br>Agreement dated as of December 1, 2006, )<br>Fremont Home Loan Trust 2006-E, )<br>            and                       )<br>Mortgage Electronic Registration Systems, Inc. )<br>            and                       )<br>David Gallant, Jr., a/k/a David W. Gallant, Jr. )<br>                                          )<br>            Defendants           )<br>                                          ) | CIVIL ACTION<br>NO.: 1785CV00763B<br><br>**FILED**<br>JUN 22 2017<br>ATTEST: _David Molla_ CLERK |

1

<u>AMENDED COMPLAINT</u>

**Background**

1.      Plaintiffs, William Howard Smith and Laureen Smith ("Plaintiffs") are residents and rightful owners of 3 Dresser Hill Road, Dudley, Worcester County, Massachusetts by deed from Elida Wood, as life tenant, and Charles K. Wood, a/k/a Charles Kenneth Wood to William Howard Smith dated September 26, 1980 and recorded on September 26, 1980 at the Worcester County Registry of Deeds, Book 7070, Page 73, and subsequently conveyed by deed from William Howard Smith to William Howard Smith and Laureen Smith dated June 1, 1981 and recorded on June 4, 1981 at the Worcester County Registry of Deeds, Book 7244, Page 293.

2.      Defendant, HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E, c/o Ocwen Loan Servicing, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, is the mortgage lender foreclosing on the mortgage from David Gallant, Jr. to MERS as nominee for Fremont Investment & Loan at Book 39759, Page 369 on 9/13/2006. The auction date was scheduled for May 10, 2017 at 12:00 PM.

3.      Defendant, Fremont Investment & Loan, c/o Litton Loan Servicing LP, a subsidiary of Ocwen Loan Servicing, 1703 Laurel Street, Columbia, SC  29201, is the mortgage lender who conveyed a foreclosure deed foreclosing on the mortgage from David Gallant, Jr. to MERS as nominee for Fremont Investment and Loan at Book 39759, Page 369 on 9/13/2006 to HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E and subsequently assigned the same mortgage to HSBC Bank USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Home Loan Trust

2

2006-E.  The foreclosure deed was recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 206.  The Assignment to HSBC Bank USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Home Loan Trust 2006-E was recorded on August 13, 2009 at Worcester County Registry of Deeds, Book 44719, Page 125.

4.      Defendant, HSBC Bank, USA National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E, c/o Ocwen Loan Servicing, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, is the grantee to the foreclosure deed from Fremont Investment & Loan, recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 206.

5.      Defendant, HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Home Loan Trust 2006-E, c/o Ocwen Loan Servicing, 2711 Centerville Road, Suite 400, Wilmington, DE  19808 was the assignee of the mortgage from David Gallant, Jr. to MERS as nominee for Fremont Investment & Loan recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369 by Fremont Investment a& Loan.  The Assignment was recorded on august 13, 2009 at Worcester County Registry of Deeds, Book 44719, Page 125.

6.      Defendant, Mortgage Electronic Registration Systems, Inc., Corporate Headquarters, 1818 Library Street, Suite 300, Reston, VA  20190 is the holder of the original mortgage from David Gallant, Jr. to MERS as nominee for Fremont Investment & Loan recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759.   MERS subsequently assigned the mortgage to Fremont Investment & Loan by Assignment recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 201 and further

assigned said mortgage to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E recorded on November 24, 2015 at the Worcester County Registry of Deeds, book 54615, Page 275.

7.    Defendant, David Gallant, Jr. of 20 Hyland Avenue, Leicester, MA  01524 is the grantee of the forged deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. was dated July 25, 2006 and recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 366.

8.    Jurisdiction arises under M.G.L. c. 212 §3.

9.    Venue is proper in this Court under M.G.L. c. 212 §4 and M.G.L. c. 214 §5.

10.    Plaintiffs entered into a mortgage from William Howard Smith and Laureen Smith to GMAC Mortgage Corporation in the original principal amount of $26,750.00, dated March 22, 2000 and recorded on March 24, 2000 at the Worcester County Registry of Deeds, at Book 22423, Page 313.

11.    Plaintiffs entered into a Home Equity Line of Credit Mortgage from William Howard Smith and Laureen Smith to GMAC Mortgage Corporation in the original principal amount of $94,800.00, dated March 22, 2000 and recorded on March 24, 2000 at the Worcester County Registry of Deeds, at Book 22423, Page 320.

12.    On or around June/July 2006, Plaintiffs, William Howard Smith and Laureen Smith were struggling to make their mortgage payments.  Due to the Plaintiffs' difficulties in making their mortgage payments, Plaintiffs were sought out by Allen Seymour, who offered the Plaintiffs a potential solution in the form of a reverse mortgage. The Plaintiffs signed preliminary documents, but after a few conversations with Seymour, the Plaintiffs did not hear from Seymour again.

4

13.     Allen Seymour, by means of a forged deed, misrepresentation, forged power-of-attorney, and, with the assistance of Judith Piette, fraudulent notarization, defrauded the Plaintiffs and conveyed a forged deed to from Plaintiffs to David W. Gallant, Jr. (See Exhibits A, B, C)

14.     Allen Seymour used the signatures obtained from the preliminary documentation he had obtained from Plaintiffs and created a forged power-of-attorney and forged deed.

15.     Allen Seymour also targeted hopeful investors.  The investors were told they would be helping homeowners who were in danger of losing their homes.  David W. Gallant, Jr. was the "investor" respecting the Smiths' property located at 3 Dresser Hill Road, Dudley, Massachusetts.  The Plaintiffs had no knowledge of a potential investor or purchaser of their property.

16.     Attorney Raymond Desautels, III conducted the real estate closings for Seymour.

17.     On July 25, 2006, a closing was held and Seymour and his associates recorded a forged deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. (See Exhibit A)

18.     Judith Piette was an associate of Allen Seymour and acted as Notary Public at the closing.

19.     The Plaintiffs never attended a closing, and were not aware a closing had occurred until approached by the Attorney General's office with respect to its cases against Allen Seymour, Raymond Desautels, III and Judith Piette, notary public.

20.     The Plaintiffs never intended to sell their property and never signed a deed to David W. Gallant, Jr.

21.     The forged deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. was dated July 25, 2006 and recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 366.  (See Exhibit A)

22.     A mortgage from David Gallant, Jr. to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan in the original principal amount of $285,000.00 was recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369.

23.     With respect to the mortgage from David Gallant, Jr. to MERS as nominee for Fremont Investment & Loan, the following documents have been recorded:

a.  Notice under the Servicemembers Civil Relief Act by Fremont Investment & Loan, recorded on July 9, 2007 at Worcester County Registry of Deeds, Book 41457, Page 82.

b.  Assignment of mortgage from MERS to Fremont Investment & Loan, recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 201.

c.  Complaint to Foreclose Mortgage by Fremont Investment & Loan, recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43428, Page 202.

d.  Certificate of Entry by Fremont Investment & Loan, recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 2008.

e.  Foreclosure Deed from Fremont Investment & Loan to HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E

6

recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 206.

f.   Assignment of mortgage by Fremont Investment & Loan to HSBC Bank USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Home Loan Trust 2006-E recorded on August 13, 2009 at Worcester County Registry of Deeds, Book 44719, Page 125.

g.   Assignment by MERS, as nominee for Fremont Investment & Loan, its successors and or assigns to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage Backed-Certificates, Series 2006-E at c/o Ocwen Loan Servicing, LLC recorded on October 23, 2015 at Worcester County Registry of Deeds, Book 54475, Page 395.

h.   Notice under the Servicemembers Civil relief Act by HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E recorded on November 24, 2015 at Worcester County Registry of Deeds, Book 54615, Page 275.

i.   Affidavit re. compliance with M.G.L. c. 244 § 35B by HSBC Bank USA, National Association as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E, recorded on January 20, 2017 at Worcester County Registry of Deeds, Book 56635, Page 391.

j.   Affidavit re. note secured by mortgage to be foreclosed in compliance with M.G.L. c. 244, §35C by HSBC Bank USA, National Association as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series

2006-E, recorded on January 20, 2017 at Worcester County Registry of Deeds, Book 56635, Page 394.

24.    On September 25, 2009 the Grand Jury brought the following criminal charges against Allen Seymour:  Uttering of False or Forged Power of Attorney, Forgery of Power of Attorney and Inducement to Part with Property by False Pretense. (See Exhibit C)

25.    On September 25, 2009, the Grand Jury brought the following criminal charge against Judith Piette:  False Written Report by a Public Officer. (See Exhibits D, E)

26.    On January 13, 2010 Judith Piette plead guilty to the charge against her.

27.    On November 15, 2010, Allen Seymour entered a guilty plea to the charges against him. (See Exhibit H)

28.    On or around August 12, 2016 Plaintiffs received a letter from Hinshaw & Culbertson, LLP informing them of their right to appear at a future auction and bid to repurchase their property. This was the only notice the Plaintiffs had of the foreclosure until the Plaintiffs read about the foreclosure auction in the newspaper on April 6, 2017.

29.    Upon learning of the foreclosure, contact was made with the Defendant to discuss the options available to the Plaintiffs.  Pursuant to the communication with the Defendant and at the Defendant's request, Plaintiffs provided Identity Theft Affidavits to the Defendant on April 26, 2017.  Plaintiffs were told it would take approximately thirty days to review the forms. (See Exhibits F, G)

30.    On Friday afternoon, May 5, 2017, the Plaintiffs were informed that the Defendant did not intend to continue the auction and that the auction would still take place on May 10, 2017 at 12:00 PM.

31.    The Defendant's unwillingness to resolve this matter has caused the Plaintiffs physical and emotional distress.  Laureen Smith suffers from anxiety and has had to increase her medication.  The stress has worsened her fibromyalgia, including limiting her ability to get around.  Both Plaintiffs have difficulty sleeping.

## COUNT I

### Invalid Chain of Title

32.    Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 31.

33.    Defendants' claims must be evidenced by proper succession in the chain of title.

34.    "The record of a deed . . . or other instrument, duly acknowledged or proved as provided in this chapter, and purporting to affect the title to land, shall be conclusive evidence of the delivery of such instrument, in favor of purchasers for value without notice claiming thereunder." M.G.L. c. 183, § 5.

35.    The mortgage from David Gallant, Jr. to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan in the original principal amount of $285,000.00 was recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369.

36.    Notice under the Servicemembers Civil Relief Act was given by Fremont Investment & Loan, recorded on July 9, 2007 at Worcester County Registry of Deeds, Book 41457, Page 82.

37.    Assignment of the mortgage from MERS to Fremont Investment & Loan, was not recorded until October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 201; therefore, the subsequent Foreclosure Deed from Fremont Investment & Loan to HSBC Bank,

USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 206 is not valid as Notice under the Servicemembers Civil Relief Act was not effective.

38.    A subsequent Assignment of mortgage was recorded by Fremont Investment & Loan to HSBC Bank USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Home Loan Trust 2006-E recorded on August 13, 2009 at Worcester County Registry of Deeds, Book 44719, Page 125.

39.    A further Assignment by MERS, as nominee for Fremont Investment & Loan, its successors and or assigns to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage Backed-Certificates, Series 2006-E at c/o Ocwen Loan Servicing, LLC (Defendant) was recorded on October 23, 2015 at Worcester County Registry of Deeds, Book 54475, Page 395.  MERS no longer held title pursuant to  the Assignment of the mortgage from MERS to Fremont Investment & Loan, recorded until October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 201; therefore, MERS was unable to assign the mortgage to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage Backed-Certificates, Series 2006-E at c/o Ocwen Loan Servicing, LLC, making invalid the Notice under the Servicemembers Civil Relief Act by HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E recorded on November 24, 2015 at Worcester County Registry of Deeds, Book 54615, page 275; the Affidavit re. compliance with M.G.L. c. 244 § 35B by HSBC Bank USA, National Association as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E, recorded on January 20, 2017 at Worcester County Registry

of Deeds, Book 56635, Page 391; and the Affidavit re. note secured by mortgage to be foreclosed in compliance with M.G.L. c. 244, §35C by HSBC Bank USA, National Association as Trustee for Fremont Home Loan Trust 2006-E, Mortgage-Backed Certificates, Series 2006-E, recorded on January 20, 2017 at Worcester County Registry of Deeds, Book 56635, Page 394.

40.     Pursuant to the chain of title, the Foreclosure Deed from Fremont Investment & Loan to HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 206 should be set aside and any further foreclosure auction should be stopped.

## COUNT II

### Forgery and Fraud

41.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 40.

42.     The deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. on July 25, 2006, recorded on September 13, 2006 in consideration of $300,000.00, recorded at Book 39769, Page 366 is null and void. A forged instrument is void and has no effect even when recorded in seemingly regular fashion in the registry of deeds. Countrywide Home Loans, Inc. v. Bruce, 19 LCR207 "[N]either acknowledgment nor recording could confer validity upon an invalid instrument." Strother v. Shain, 322 Mass. 435, 437, 78 N.E.2d 495 (1948)

43.     Judith Piette's notarization of the deed was a false written report. The notary's certificate is not fatal to a claim of fraud or forgery and may be overcome with an appropriate showing. Keville v.McKeever, 42 Mass. App. Ct. 140, 675 N.E.2d 417 (1997); Hale v. Hale, 332 Mass. 329, 125 N.E.2d 142 (1955).

44.     The mortgage from David Gallant, Jr. to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan in the original principal amount of $285,000.00, recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369 and any subsequent Assignments, Notices, Complaints or other documents of record thereto are invalid.  Any mortgage procured by presentation of a forged deed is null and void.  Whittenberger v. Commercial Credit Corporation, N.E.2d 737 (1994) Reliance of a void instrument by a third party does not confer vitality on the void instrument.  Breed v. Gardner, 187 Mass. At 304-305.  "[B]ona fide purchasers for value are not protected in the case of a forged deed.  Hobson v. Hobson, 16 LCR 104 (2008).


## COUNT III

### Negligent Infliction of Emotional Distress

45.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 44.

46.     The Plaintiffs are a third party beneficiary of the mortgage contract between the Defendant and David W. Gallant, Jr., as the Defendant holds a mortgage against the Plaintiffs property located at 3 Dresser Hill Road, Dudley, Worcester County, Massachusetts, and is proceeding with a foreclosure auction against the Plaintiffs' home.  As such the Defendant has a duty to the Plaintiff.

47.     **Negligence**. See Payton v. Abbott Labs, 386 Mass. 540.  Upon learning of the foreclosure auction by means of the notice in the newspaper, the Plaintiffs contacted the Defendant to discuss a solution and to restore the Plaintiffs title.  At the Defendant's request, the Plaintiffs provided the Defendants with Identity Theft Affidavits and attachments, including, but not limited to copies of the Commonwealth's Statements of the Case respecting the cases against

12

Allen Seymour and Judith Piette.   The Defendant was aware of the claim of forgery. The Defendant acted negligently as ordinary prudence would have required the Defendant to continue or stop the foreclosure auction and proceed with alternatives to restore the Plaintiffs to their rightful position.

48.   **Emotional Distress.  Causation.  Physical Harm**.   See <u>Payton</u> v. <u>Abbott Labs</u>, 386 Mass. 540.   Upon learning of the foreclosure auction, the Plaintiffs became seriously distressed.  Both William and Laureen have been unable to get adequate sleep since learning of the auction.  Laureen suffers from fibromyalgia and her symptoms have worsened.  Laureen now needs to use a walker to get around.  Her doctor has increased her medication for stress.

49.   **Reasonable Person Would Have Suffered Emotional Distress**. See <u>Payton</u> v. <u>Abbott Labs</u>, 386 Mass. 540.   The Plaintiffs have nowhere to go should their home be foreclosed upon and they are evicted.   They do not have the financial capability to start over some place new.   If evicted, the Plaintiffs will be dependent upon family at best and face homelessness at worst.  Any reasonable person would suffer emotional distress under these circumstances.

## COUNT IV

### Violation of the Massachusetts Consumer Protection Act and Applicable Regulations

50.   Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 49.

51.   Defendant owes a duty to the Plaintiffs as third party beneficiaries to the contract between Defendant and David Gallant, Jr., and has violated and continues to violate the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §2 and applicable regulations promulgated by the Massachusetts Attorney General pursuant to M.G.L. c. 93A, §2(c) including, without limitation:

a.      940 C.M.R. § 3.16, in that its conduct was unfair, deceptive,

13

oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business;

        b.      940 C.M.R. § 3.16, in that its conduct violated the requirement of good faith and fair dealing applicable to contracts under M.G.L. c. 106, §1-203;

        c.      940 C.M.R. § 3.16, in that its conduct violated existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare;

52.     The Plaintiffs have been injured by virtue of Defendant's violations. Said injuries include, but are not limited to:

        a.      significant emotional distress;

        b.      increased fees and other costs to avoid or attempt to avoid foreclosure of invalid mortgage; and,

        c.      physical harm.

53.     Defendant's conduct was and is willful or knowing within the meaning of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §9.

54.     Defendant's refusal to grant relief upon demand was and is in bad faith, with knowledge or reason to know that the act or practice complained of violated M.G.L. c. 93A, §2.

Wherefore the Plaintiffs respectfully request the following relief:

## Injunctive Relief

55.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 54.

56.     Plaintiffs have been seriously injured and will suffer irreparable harm of a

continuing nature that cannot be adequately calculated or compensated in money damages, unless the Defendants foreclosure and other activities complained of are preliminarily and permanently enjoined.

57.     Plaintiffs ask the Court to Grant a permanent or final injunction enjoining Defendant's agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiff, specifically enjoining Defendant from proceeding with the foreclosure auction.

## Set Aside Deeds and Subsequent Recordings

58.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 57.

59.     Plaintiffs move this Court to set aside the forged deed from William Howard Smith and Laureen Smith to David W. Gallant, Jr. was dated July 25, 2006 and recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 366, and any recorded documents pursuant thereto.

60.     Plaintiffs move this Court to set aside the invalid Foreclosure Deed from Fremont Investment & Loan to HSBC Bank, USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Investment & Loan Trust 2006-E recorded on October 20, 2008 at Worcester County Registry of Deeds, Book 43426, Page 206, and any recorded documents pursuant thereto.

61.     Plaintiffs move this Court to set aside or invalidate the mortgage from David Gallant, Jr. to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan in the original principal amount of $285,000.00 was recorded on September 13, 2006 at Worcester County Registry of Deeds, Book 39759, Page 369, and any recorded documents pursuant thereto.

## Additional Relief Requested

62.     Plaintiffs repeat and incorporate by reference herein paragraphs 1 through 61.

a.     Award actual and/or statutory minimum damages pursuant to M.G.L. c. 93A § 9(3) to the Plaintiffs;

b.     Award multiple damages pursuant to M.G.L. c. 93A § 9(3) to the Plaintiffs;

c.     Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees pursuant to M.G.L. c. 93A § 9(3);

d.     Award Plaintiffs damages based on Defendant's Negligent Infliction of Emotional Distress; and

e.     Grant Plaintiffs such other and further relief, in law or in equity, as this Court deems just and proper.


Respectfully submitted,

William Howard Smith and Laureen Smith,
By their attorney,


Date:  06/16/2017

Michele Unger Callahan, Esq., (BBO #652202)
19 Pierce Avenue, Suite C
PMB #19
Fitchburg, MA  01420
mucallahanesq@gmail.com
(617) 417-7584

A true copy by photostatic process
Attest: O.R. Williams
Dep/Asst. Clerk

16

# EXHIBIT A

# Forged Deed

Bk: 39759 Pg: 366

2008 00137452

Bk: 39759 Pg: 366   Doc: DEED
Page: 1 of 3   09/13/2008 08:42 AM

MASSACHUSETTS EXCISE TAX
Worcester District ROD #20 001
Date: 09/13/2008 08:42 AM
Ctrl# 056388 09090 Doc# 00137452
Fee: $1,368.00 Cons: $300,000.00

## QUITCLAIM DEED

We, William Howard Smith and Laureen Smith, of Dudley, Worcester County, Massachusetts

For Consideration Paid in the amount of  $ 300,000.00

Grants with Quitclaim Covenants to:

David W Gallant Jr, of P.O. Box 432, Rochdale, Worcester County, Massachusetts

The property known as 3 Dresser Hill Road, Dudley, Worcester County, Massachusetts, being more particularly described as follows:

The land with all buildings and improvements thereon, known as 3 Dresser Hill Road, Dudley, Worcester County, Massachusetts, situated on the eastern side of Dresser Hill Road in the northern part of Dudley near Chariton line and bound and described as follows:

BEGINNING at a drill hole in a stone wall on the easterly side of the 1933 Worcester County highway layout of Dresser Hill Road, at the northerly corner of tract, said point being 149.35 feet northerly of a Worcester County Highway bound opposite station 137.15;

THENCE N. 72 degrees 50' 13" E. along said stone wall and land, now or formerly of Richard Lavigne, a distance of one hundred sixty-seven and two hundredths (167.02) feet to an iron pipe;

THENCE N. 72 degrees 31' 50" E. along said stone wall and land of Lavigne, a distance of one hundred eighty-six and eighty-seven hundredths (186.87) feet to an iron pipe in a corner of walls;

THENCE S. 26 degrees 00' 22" E. along a stone wall and land of Theresa Giroux, a distance of three hundred forty-two and ten hundredths (342.10) feet to an iron pipe;

THENCE S. 80 degrees 48' 19" W. along land of Charles K. Wood, now or formerly, a distance of two hundred eight and eight hundredths (208.08) feet to an

Return to: Raymond A Desautels III
466 Main St
Oxford, MA   01540

3 Dresser Hill Road, Dudley, Worcester County, Massachusetts

iron pipe;

THENCE S. 83 degrees 01' 45" W. along land of Charles K. Wood, now or formerly, a distance of two hundred three and forty-one hundredths (203.41) feet to a stake;

THENCE S. 8l degrees 59' 43" W. along land of Charles K. Wood, now or formerly, a distance of ninety-two and thirty-one hundredths (92.31) feet to an iron pipe on the easterly side of Dresser Hill Road;

THENCE running northerly along the easterly side of Dresser Hill Road , on a curve to the right, having a radius of nine hundred seventy and zero hundredths (970.00) feet and a length of one hundred twenty-three and ninety-three hundredths (123.93) feet to a Worcester County Highway Bound;

THENCE N. 3 degrees 56' 45" E. along the easterly side of Dresser Hill Road, a distance of one hundred forty-nine and thirty-five hundredths (149.35) feet to the drill hole at the point of beginning

BEING the same premises as shown on the plan of land in Dudley, Massachusetts, Surveyed for William Smith, Robert F. Para, Land Surveyor, dated June 23, 1981 and recorded in the Worcester South District Registry of Deeds in book 479, page 82.

SAID premises being about 2.962 acres of so much of the northerly portion of the farm of Charles K. Wood and is on the easterly side of Dresser Hill Road, otherwise known as Route 31.

There is mentioned a supposed right of cutting and drying peat, insofar as it is in force and effect, but the statement and recital, shall not be a renewal, thereof, in a deed from Charles S. Wood to Martin A. Obenawr dated March 10, 1891 and recorded in the Worcester District Registry of Deeds, Book 1345, Page 424. However, there is on record an affidavit which indicates a non-user and/or abandonment for at least 46 years with respect to such alleged right of cutting and drying peat executed by Elida Wood on September 7, 1978 and recorded in the Worcester District Registry of Deeds, which indicates no trace on the entire one hundred ten (110) acres where peat might have been cut and dried, and recorded in Book 6561, page 90.

Being the same premises as conveyed to the grantor by deed dated June 1st, 1981 and recorded with the Worcester District Registry of Deeds Book 7244 Page 293.

Executed as a sealed instrument this 25th day of July, 2006.

_William Howard Smith_
William Howard Smith

_Laureen Smith_
Laureen Smith

### THE COMMONWEALTH OF MASSACHUSETTS

Worcester  ss.                                        July 25, 2006

On this 25th day of July, 2006, before me, the undersigned Notary Public, personally appeared William Howard Smith & Laureen Smith, proved to me through satisfactory evidence of identification, which was photographic identification with signature issued by a federal or state governmental agency,  oath or affirmation of a credible witness,  personal knowledge of the undersigned, to be the person(s) whose name(s) is/are signed on the preceding or attached documents, and acknowledged to me that he signed it voluntarily for its stated purpose.

(*official seal*)

_Judith A. Piette_
Notary Public:

My Commission Expires:  March 5, 2010

JUDITH A. PIETTE
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 5, 2010

**ATTEST: WORC. Anthony J. Vigliotti, Register**

# EXHIBIT B

# Commonwealth's Statements of the Case- Allen Seymour

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
DOCKET 2009-1190

COMMONWEALTH

v.

ALLEN SEYMOUR

## COMMONWEALTH'S STATEMENT OF THE CASE

Now comes the Commonwealth, and respectfully submits this Statement of the Case. This document is not a full and complete recitation of the facts that support the indictments in the above-numbered case, and is not meant to be a Bill of Particulars. The purpose of this document is to aid the Court, defense counsel, and the probation department in assessing the general nature and circumstances of the crimes alleged.

Between April of 2006 and December of 2007, Allen Seymour orchestrated a collection of misrepresentations to homeowners, borrowers and lenders and utilized false deeds and powers of attorney in a scheme calculated to defraud lenders out of millions of dollars in loan proceeds. Seymour achieved this without any regard for the impact this fraud would have on the many victims of his crimes and the community at large.

Seymour targeted properties in danger of foreclosure. He personally approached the owners of these properties and presented a variety of rescue options. For those homeowners who merely wished to sell their properties to avoid foreclosure, Seymour offered to purchase the property for the amount owed to the foreclosing lenders. For the several homeowners who wanted to remain in their homes, Seymour presented rescue plans which ranged from "lifetime leases" and "reverse mortgages" to a simple refinance. Some of these homeowners were told they would need to transfer title to the property to an "investor", and some were not. Seymour had some of these homeowners sign innocuous documents to begin the process. The innocuous pages of the signed document were then discarded and substituted with pages purporting to grant Power of Attorney from the homeowner to associates of Seymour's.

1

Simultaneously, Seymour found individuals with good credit and in interest in investing in real estate. Many of these "investors" were told they would be helping homeowners in danger of losing their homes to foreclosure. Seymour told several of these investors that the purchase would only be temporary, and the homeowners would purchase the property back from them after Seymour repaired the homeowner's credit. Others were told that Seymour's company would repair and rehabilitate the properties, and then sell them at a profit, to be shared by Seymour and the investors. Seymour promised several investors that he would assist in making the mortgage payments for the loans used to purchase the properties.

None of the proposals made to these "investors" matched the transactions presented to the homeowners. The investors were not told of the "lifetime leases" and "reverse mortgages" Seymour had promised to the homeowners.

Nearly three million dollars in loans were obtained for these purchases. Loan documents indicate the lender believed the purchase price was far greater than the amount the homeowner was selling the property for, if in fact the homeowner knew they were selling the property at all.

Closing attorney and co-defendant Raymond Desautels III conducted each of the real estate closings for Seymour. The homeowners never attended these closings, as their documents were signed using a false Power of Attorney. After receiving the lender's money funding the transaction, Desautels issued a proceeds check payable to the homeowners and based on the fictitious purchase price. Seymour and his associate, with both the proceeds check and false Power of Attorney in hand, the cashed the check at a check cashing business in Worcester. Seymour cashed well over one million dollars in homeowner's proceeds check.

Several investors state that Seymour abandoned them to the mortgage payments after the closing. Without Seymour's promised assistance, the investors were unable to pay the loans, and these mortgages fell into foreclosure. Some homeowners, promised lifetime leases, have been evicted from the properties they had tried to save.

On one occasion Seymour, through misrepresentation, convinced homeowner David Chubka, who had just sold his home, to "invest" the entirety of his proceeds with Seymour,

2

roughly sixty thousand dollars. Seymour promised an extremely high rate of return on this "investment". Chubka received nothing in return for his trust.

In connection with these facts, Seymour is charged with twelve counts of inducing a lender to part with property G.L. c. 266 § 34; eight counts of uttering G.L. c. 267 § 5; four counts of forgery G.L. c. 267 § 1; and one count of larceny 266 § 30.

Respectfully Submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

_____
Andrew Doherty BBO# 654842
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 x 2564

Date: _____

3

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                          SUPERIOR COURT DEPARTMENT
                                        DOCKET 2009-1190

20 _10_ Filed in Court _8/12_

Attest _____

Assistant Clerk Magistrate COMMONWEALTH

v.

ALLEN SEYMOUR

COMMONWEALTH'S STATEMENT OF THE CASE

Now comes the Commonwealth, and respectfully submits this Statement of the Case. This document is not a full and complete recitation of the facts that support the indictments in the above-numbered case, and is not meant to be a Bill of Particulars. The purpose of this document is to aid the Court, defense counsel, and the probation department in assessing the general nature and circumstances of the crimes alleged.

**I. Summary**

Between September, 2006 and December, 2007, Allen Seymour engaged in a widespread mortgage fraud scheme designed to obtain mortgage lender's funds from fraudulent purchase transactions in the Worcester County area. In connection with that scheme, Seymour is charged with twelve counts of inducing a lender to part with property, four counts of forging a power of attorney, eight counts of uttering a false power of attorney, and one count of larceny by false pretense.

**II. The Mortgage Fraud Scheme**

**A. Control of the Property**

The mortgage fraud scheme may be described as follows: Allen Seymour paid co-defendant Jason Passell to identify properties in danger of foreclosure. Seymour personally approached the owners of these properties and presented a variety of rescue scenarios designed

1

to save the homeowners from foreclosure. For those homeowners who merely wished to sell their properties to avoid foreclosure, Seymour offered to purchase the property for the amount owed to the foreclosing lenders. For the several homeowners who wanted to remain in their homes, Seymour presented rescue plans which ranged from "lifetime leases" and "reverse mortgages" to a simple refinance. Some of these homeowners were told they would need to transfer title to the property to an "investor", and some were not told of the transfer. Seymour had many of these homeowners sign innocuous documents to begin the process. The innocuous pages of the signed document were then discarded and substituted with pages purporting to grant Power of Attorney from the homeowner to associates of Seymour's, including co-defendant Jason Passell. With the false power of attorney in hand, Seymour had acquired control of the property.

### B. Control of the "Investor"

Simultaneously, Seymour found individuals with good credit and an interest in investing in real estate. Many of these "investors" were told they would be helping homeowners in danger of losing their homes to foreclosure. Seymour told several of these investors that the purchase would only be temporary, and the homeowners would purchase the property back after Seymour repaired the homeowner's credit. Others were told that Seymour's company would repair and rehabilitate the properties, and then sell them at a profit, to be shared by Seymour and the investors. Seymour promised several investors that he would assist in making the mortgage payments for the loans used to purchase the properties.

None of the proposals made to these "investors" matched the transactions presented to the homeowners. The investors were not told of the "lifetime leases" and "reverse mortgages" Seymour had promised to the homeowners.

### C. The Closing

With the assistance of mortgage broker Erik Tancun[1] and closing attorney Raymond Desautels, III[2], Seymour then orchestrated a real estate closing where the "investor" purchased the property from the homeowner at an inflated purchase price. Loan documents received from the investor's lenders indicate the lender believed the purchase price was far greater than the

---

[1] Erik Tancun is currently under indictment in Worcester and Middlesex County for his role in the creation of false documents related to proof of a potential borrower's assets.
[2] Raymond Desautels, III, for his role in this scheme, was indicted in Worcester County for five counts of Inducing Another to Part with Property by False Pretense, in violation of 266 § 34. He has pled guilty to these charges.

amount the homeowner was selling the property for, if in fact the homeowner knew they were selling the property at all.

Closing attorney and co-defendant Raymond Desautels III conducted each of the real estate closings for Seymour. The homeowners never attended these closings, as their documents were signed using a false Power of Attorney. After receiving the lender's money funding the transaction, Desautels issued a proceeds check payable to the homeowners and based on the fictitious purchase price. This check as given to Seymour. A chart illustrating the difference between what the homeowner understood regarding the transaction and what the investor's lender believed is attached hereto as Attachment "A"[3]. In sum, these twelve lenders lent nearly three million dollars based on the false statements created by Allen Seymour.

**D. Cashing the "seller's" proceeds check**

Seymour, accompanied by co-defendant Jason Passell and, in one instance, Dennis Lucier, then took the "seller's" proceeds check to the Check Depot, a check cashing operation in Worcester. There, they cashed the following checks, each time offering as genuine a Power of Attorney known by Seymour to be false:

1. A check payable to William H. Smith and Laureen Smith for their purported sale of 3 Dresser Hill Road, Dudley, Massachusetts, in the amount of $152,603.05. The Smiths' were unaware they had sold their home. They did not knowingly grant the Power of Attorney used to cash this check to Jason Passell or any other person.

2. A check payable to Dennis and Susan Fountain for their purported sale of 20 Park Street, Oxford, Massachusetts in the amount of $72,572.36. Although the Fountains believed they were selling their property they specifically told Allen Seymour and Raymond Desautels they did not want to give Power of Attorney to anyone for the transaction. Seymour forged the Power of Attorney used to cash this check by replacing the functional pages of a document truly signed by the Fountains with a page purportedly granting Power of Attorney from the Fountains' to Jason Passell.

3. A check payable to Paul O'Connor for his purported sale of 1111 Millbury Street, Worcester, Massachusetts in the amount of $155,317.56. O'Connor was unaware that he had sold his home. He had not knowingly granted a Power of Attorney to Dennis Lucier or any other

---

[3] The chart further describes the amount of funds sent by the lender to Desautels and the amount of the Seller's proceeds check issued by Desautels.

person. Seymour had earlier forged this Power of Attorney by replacing the functional pages of a document truly signed by O'Connor with a page purportedly granting Power of Attorney from O'Connor to Lucier.

4. A check payable to Dennis Martinez for his purported sale of 34 Birchwood Drive, Marlboro, Massachusetts in the amount of $94,237.57. Mr. Martinez did not knowingly give this Power of Attorney to Passell or any other person.

5. A check payable to Edward and Donna Ramstrom for their purported sale of 47 Campground Road, West Boylston, Massachusetts in the amount of $72,604.27. Mr. & Mrs. Ramstrom did not knowingly give this Power of Attorney to Passell or any other person.

6. A check payable to Penny L. Berry for her purported sale of 35 Field Street, Auburn, Massachusetts in the amount of $121,375.47. Ms. Berry believed that Allen Seymour was assisting her with a refinance of her existing mortgage and did not believe she was selling the property. Ms. Berry did not knowingly give this Power of Attorney to Passell or any other person. Seymour had earlier forged this Power of Attorney by replacing the functional pages of a document truly signed by Ms. Berry with a page purportedly granting Power of Attorney from Ms. Berry to Passell.

7. A check payable to Lynn A. Keefe for her purported sale of 262-264 Lovell Street, Worcester, Massachusetts in the amount of $219,787.55. Ms. Keefe did not knowingly give this Power of Attorney to Passell or any other person; and

8. A check payable to Thomas F. Carroll for his purported sale of 149 Main Street, Oxford, Massachusetts in the amount of $94,801.84. Mr. Carroll did not knowingly give this Power of Attorney to Passell or any other person.

The total dollar amount of the checks cashed using false powers of attorney by Seymour is $910,727.31.

**E. Larceny**

One homeowner, David Chubka, was aware that Seymour had arranged for the sale of Chubka's home and was aware of the purchase price. Seymour convinced this homeowner to invest thousands of dollars in proceeds from the sale of the property with Seymour's "real estate investment company". Rather than invest this money, Seymour simply cashed the check as he had the others. Despite the fact that Seymour had cashed Chubka's sixty-one thousand dollar proceeds check, Chubka only received a few hundred dollars in return for his "investment".

4

Although Seymour arranged for a few monthly payments towards some of the investor's new mortgages on these properties, Seymour eventually abandoned the investors[4]. Of the twelve lenders Seymour is charged with defrauding, nine have foreclosed on the properties, and the remaining three have filed complaints to foreclose. Most of the homeowners who trusted Allen Seymour are no longer in the homes they had tried to save. In connection with the facts described above, Seymour is charged with twelve counts of Inducing Another to Part with Property by False Pretense G.L. c. 266 § 34, eight counts of Uttering of a False Power of Attorney G.L. c. 267 § 5, four counts of Forgery of a Power of Attorney G.L. c. 267 § 1, and one count of Larceny over $250, G.L.c. 266 § 30.

Respectfully Submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

Andrew Doherty BBO# 654842
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 x 2564

Date: August 12, 2010

---

[4] It should be noted that Seymour abandoned several investors well before he was arrested attempting to flee the country with over one million dollars in embezzled funds unrelated to this scheme; a crime for which he has been in federal custody since February, 2008.

5

ATTACHMENT "A"

| Property Address | What Homeowner believed | What The Lender Believed | Amount wired to Lender | "Seller's" proceeds check | Foreclosed? |
|---|---|---|---|---|---|
| 26 Field Street, Auburn | Transferring Title and receiving a "Reverse Mortgage" with a "Lifetime Lease". Not selling the property, not aware of purchase price | Homeowner selling property for $275,000.00 | $221,914.17 | $103,057.52 | Yes |
| 3 Dresser Hill Road, Dudley | Receiving $40,000.00 and a Reverse Mortgage with fixed monthly payments of $700-$800. Not selling property, not aware of a purchase price | Homeowner selling property for $300,000.00 | $279,299.95 | $152,603.05* | Yes |
| 27 Temple Drive, Southbridge | Transferring Title and receiving right to a ten year lease | Homeowner selling property for $189,900.00 | $182,322.34 | $36,535.61 | Yes |
| 1111 Millbury Street, Worcester | Seymour refinancing his property, not transferring title, not selling property | Homeowner selling property for $230,000.00 | $229,357.90 | $155,317.56* | No, Complaint Filed |
| 34 Birchwood Drive, Marlborough | Selling property for approximate value of the mortgages thereon, roughly $350,000.00. | Homeowner selling property for $370,000.00 | $354,719.83 | $94,237.57* | Yes |
| 47 Campground Road, West Boylston | Selling property for approximate value of the mortgages thereon, roughly $240,000.00. | Homeowner selling property for $310,000.00 | $286,634.61 | $72,604.27* | Yes |
| 10 Glenview Avenue, Southbridge | Transferring title to property for approximate value of existing mortgage, approximately $101,000.00 in exchange for "lifetime lease with rent fixed at $729.00 per month | Homeowner selling property for $220,000.00 | $176,363.54 | $85,152.06 | Yes |
| 191 Main Street, Oxford | Selling property for $130,000.00 | Homeowner selling property for $205,000.00 | $184,833.02 | $151,485.33 | Yes |
| 622 Main Street, Oxford | Nothing, homeowner no longer owned property, it had been foreclosed on. Seymour was winning bidder at foreclosure auction for $191,300.00, although he assigned his bid to co-defendant Jason Passell. | Original Homeowner selling property for $310,000.00 | $273,944.07 | $73,226.67 | Yes |
| 35 Field Street, Auburn | Seymour refinancing property. No transfer of title, no sale of property. | Homeowner selling property for $285,000.00 | $274,367.83 | $121,375.47* | No, Complaint Filed |
| 262-264 Lowell Street, Worcester | Lifetime lease with no transfer of title. Not selling the property and unaware of purchase price. | Homeowner selling property for $290,000.00 | $259,183.40 | $219,787.55* | No, Complaint Filed |
| 149 Main Street, Oxford | Selling property for $180,000.00 | Homeowner selling property for $300,000.00 | $235,302.22 | $94,801.84* | Yes |

*-Indicates Seymour charged with Uttering false Power of Attorney to cash this check

# EXHIBIT C

# Grand Jury Charges –

# Allen Seymour

09-1190 · 3

Uttering Of False Or Forged
Power Of Attorney
G.L. c. 267, § 5

# Commonwealth of Massachusetts

Worcester, To Wit:

At the **SUPERIOR COURT**, begun and holden at the **CITY OF WORCESTER**, within and for the County of Worcester, on the First Monday of July in the year two thousand and nine,

**THE JURORS** for the **COMMONWEALTH OF MASSACHUSETTS** on their oath present,

That    Allen Seymour

on or about September 13, 2006, within the county of Worcester aforesaid, **with intent to injure or defraud, did utter and publish as true a certain instrument purporting to be a power of attorney from William H. Smith and Laureen Smith, well knowing the same to be false, forged, or altered, in violation of G.L. c. 267, § 5.**

Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided.

A true bill.

*Foreperson of the Grand Jury.*

*District Attorney General.*

*Superior Court*

*25th day - Returned by the Grand Jury and filed in Court.*

*Sept . Sitting. 2009*

*Mary Sanford*

*Assistant Clerk*

09-1190

Forgery Of Power Of Attorney
G.L. c. 267, § 1

## Commonwealth of Massachusetts

Worcester, To Wit:

At the **SUPERIOR COURT**, begun and holden at the **CITY OF WORCESTER**, within and for the County of Worcester, on the First Monday of July in the year two thousand and nine,

**THE JURORS** for the **COMMONWEALTH OF MASSACHUSETTS** on their oath present,

That    **Allen Seymour**

between on or about **June 28, 2006** and on or about **September 13, 2006**, within the county of Worcester aforesaid, **with intent to injure or defraud, did falsely make, alter, forge or counterfeit a certain instrument purporting to be a power of attorney from William H. Smith and Laureen Smith, in violation of G.L. c. 267, § 1.**

Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided.

A true bill.

_Foreperson of the Grand Jury._

_Assistant Attorney General._

_Superior Court_

_day - Returned by the Grand Jury and filed in Court._

_Sept. Sitting. 2009_

_Assistant Clerk_

09-1190

**Inducement To Part With Property**
**By False Pretence**
**G.L. c. 266, § 34**

## Commonwealth of Massachusetts

Worcester, To Wit:

At the **SUPERIOR COURT**, begun and holden at the **CITY OF**

**WORCESTER**, within and for the County of Worcester, on the First Monday of July in the year

two thousand and nine,

**THE JURORS** for the **COMMONWEALTH OF MASSACHUSETTS** on their oath present,

That    Allen Seymour

between on or about **June 28, 2006** and on or about **September 13, 2006**, within the county of
Worcester aforesaid, with intent to defraud and by a false pretence, **to wit: that William
Howard Smith and Laureen Smith were selling the property at 3 Dresser Hill Road,
Dudley, Massachusetts for the consideration of $300,000.00, did induce a mortgage lender
to part with property valued in excess of two hundred fifty dollars, in violation of G.L. c.
266, § 34.**

Against the peace of said Commonwealth, and contrary to the form of the statute in such
case made and provided.

A true bill.

_Foreperson of the Grand Jury._

_Assistant Attorney General._

Superior Court

25th
day  Returned by the Grand Jury and filed in Court.

Sept. Sitting. 2009

_Assistant Clerk_

# EXHIBIT D

# Commonwealth's Statement of the Case –
# Judith Piette

COMMONWEALTH OF MASSACHUSETTS

5

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
DOCKET 2009-1192

COMMONWEALTH 20_09_ Filed in Court _10/29_

v.                      _Lemire_

JUDITH PIETTE      Attest _Kevin M Gilliam_
                        Assistant Clerk-Magistrate

## COMMONWEALTH'S STATEMENT OF THE CASE

Now comes the Commonwealth, and respectfully submits this Statement of the Case. This document is not a full and complete recitation of the facts that support the indictments in the above-numbered case, and is not meant to be a Bill of Particulars. The purpose of this document is to aid the Court, defense counsel, and the probation department in assessing the general nature and circumstances of the crimes alleged.

### I. Summary

On four occasions between June, 2006 and September, 2007 Judith Piette, a notary public, signed a statement indicating that an individual had personally appeared before her and acknowledged an instrument to be signed by them voluntarily for the document's intended purpose. In fact, the persons signing the document had not appeared before her, and Piette falsely notarized the documents. These falsely notarized documents were later used to cash homeowner's proceeds check in a large mortgage fraud scheme.

### II. The Mortgage Fraud Scheme.

#### A. Control of the Property

The mortgage fraud scheme may be described as follows: Co-defendant Allen Seymour targeted properties in danger of foreclosure. He personally approached the owners of these properties and presented a variety of rescue options. For those homeowners who merely wished to sell their properties to avoid foreclosure, Seymour offered to purchase the property for the amount owed to the foreclosing lenders. For the several homeowners who wanted to remain in their homes, Seymour presented rescue plans which ranged from "lifetime leases" and "reverse mortgages" to a simple refinance. Some of these homeowners were told they would need to transfer title to the property to an "investor", and some were not. Seymour had some of these homeowners sign innocuous documents to begin the process. The innocuous pages of the signed

1

document were then discarded and substituted with pages purporting to grant Power of Attorney from the homeowner to associates of Seymour's.

### B. Control of the "Investor"

Simultaneously, Seymour found individuals with good credit and in interest in investing in real estate. Many of these "investors" were told they would be helping homeowners in danger of losing their homes to foreclosure. Seymour told several of these investors that the purchase would only be temporary, and the homeowners would purchase the property back from them after Seymour repaired the homeowner's credit. Others were told that Seymour's company would repair and rehabilitate the properties, and then sell them at a profit, to be shared by Seymour and the investors. Seymour promised several investors that he would assist in making the mortgage payments for the loans used to purchase the properties.

None of the proposals made to these "investors" matched the transactions presented to the homeowners. The investors were not told of the "lifetime leases" and "reverse mortgages" Seymour had promised to the homeowners.

### C. The Closing

Nearly three million dollars in loans were obtained for these purchases. Loan documents indicate the lender believed the purchase price was far greater than the amount the homeowner was selling the property for, if in fact the homeowner knew they were selling the property at all.

Closing attorney and co-defendant Raymond Desautels III conducted each of the real estate closings for Seymour. The homeowners never attended these closings, as their documents were signed using a false Power of Attorney. After receiving the lender's money funding the transaction, Desautels issued a proceeds check payable to the homeowners and based on the fictitious purchase price. These checks were then cashed.

## III. Piette notarized documents without the presence of the signor

Seymour and, on one occasion, co-defendant Jason Passell, brought documents signed by the distressed homeowners to notary public Judith Piette. The homeowners were not present at this time, nor were they known to Piette. Nevertheless Piette signed the notary clause on these documents (also known as a "jurat"), stating that person who signed the document had personally appeared before her and acknowledge they had signed the document voluntarily and for its intended purpose. This statement was false. Documents falsely notarized by Piette were used as follows:

1. A Power of Attorney falsely notarized by Piette was used to cash a check payable to William & Laureen Smith in the amount of $152,603.05. This check was the proceeds of a "sale" of their home of 30 years. The Smiths were unaware they had sold their property and unaware of the Power of Attorney used in their names.

2. A Power of Attorney falsely notarized by Piette was used to cash a check payable to Dennis and Susan Fountain in the amount of $72,572.36. The Fountains were unaware of the Power of Attorney used in their names.

3. A Power of Attorney falsely notarized by Piette was used to cash a check payable to Thomas Carroll in the amount of $94,801.84. Mr. Carroll was unaware of the Power of Attorney used in his name.

4. A Power of Attorney falsely notarized by Piette was used to cash a check payable to Lynn Keefe in the amount of $219,787.55. Ms. Keefe was unaware of the Power of Attorney used in her name.

### IV. The Notary Public is an Officer of the Commonwealth

A notary pubic is an officer of the Commonwealth empowered by G. L. c. 222 § 1 to take attestations and acknowledge deeds and other instruments. Central to the official duties of a notary public is the honest attestation to the identity, intent, and willingness of individuals signing deeds and other instruments. Piette, by notarizing documents without the presence of the signor, was acting in her official capacity regarding a material matter.

In an interview Piette admitted she had notarized documents without the presence of the person who signed the documents. Piette is charged with four counts of executing false written reports by a public officer, G.L. c. 268 § 6A.

Respectfully Submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

Andrew Doherty BBO# 654842
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 x 2564

Date: October 29, 2009

3

**Certificate of Service**

I, Andrew Doherty hereby certify that I have, on October 29, 2009, caused a copy of the Commonwealth's Statement of the Case to be served on defendant by hand delivery to defense counsel of record.

Andrew Doherty

# EXHIBIT E

# Grand Jury Charges –

# Judith Piette

09-1192

False Written Report By A
Public Officer
G.L. c. 268, § 6A

# Commonwealth of Massachusetts

Worcester, To Wit:

At the **SUPERIOR COURT**, begun and holden at the **CITY OF WORCESTER**, within and for the County of Worcester, on the First Monday of July in the year two thousand and nine,

**THE JURORS** for the **COMMONWEALTH OF MASSACHUSETTS** on their oath present,

That    **Judith Piette**

between on or about **June 28, 2006** and on or about **September 13, 2006**, within the county of Worcester aforesaid, being an officer of the commonwealth, to wit: a notary public, did in the course of her official duties execute, file, or publish a false written statement, to wit: that William H. Smith and Laureen Smith did personally appear before her and acknowledge an instrument, knowing that written statement to be false in a material matter, in violation of G.L. c. 268, § 6A.

Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided.

A true bill.

_Foreperson of the Grand Jury._

_Assistant Attorney General._

_Superior Court_

Sept. Sitting. 2009

25th day    _Returned by the Grand Jury and filed in Court._

_Assistant Clerk_

# EXHIBIT F

# Identity Theft Victim's Complaint and Affidavit – William Howard Smith

# Identity Theft Victim's Complaint and Affidavit

*A voluntary form for filing a report with law enforcement, and disputes with credit reporting agencies and creditors about identity theft-related problems. Visit ftc.gov/idtheft to use a secure online version that you can print for your records.*

**Before completing this form:**
1. Place a fraud alert on your credit reports, and review the reports for signs of fraud.
2. Close the accounts that you know, or believe, have been tampered with or opened fraudulently.

## About You *(the victim)*

### Now

(1)  My full legal name: William        Howard        Smith
                         First          Middle          Last          Suffix

(2)  My date of birth: 02/05/1953
                       mm/dd/yyyy

(3)  My Social Security number: ███-██-████

(4)  My driver's license: MA_____        ████████████
                          State                    Number

(5)  My current street address:

     3 Dresser Hill Road
     Number & Street Name                    Apartment, Suite, etc.

     Dudley          MA          01571          USA
     City            State       Zip Code       Country

(6)  I have lived at this address since January, 1982
                                         mm/yyyy

(7)  My daytime phone: ( 774) 312-5558

     My evening phone: ( 774) 312-5558

     My email: N/A

> Leave (3) blank until you provide this form to someone with a legitimate business need, like when you are filing your report at the police station or sending the form to a credit reporting agency to correct your credit report.

### At the Time of the Fraud

(8)  My full legal name was: William        Howard        Smith
                             First          Middle          Last          Suffix

(9)  My address was: 3 Dresser Hill Road
                     Number & Street Name                    Apartment, Suite, etc.
     Dudley          MA          01571          USA

     City            State       Zip Code       Country

(10) My daytime phone: ( 774) 312-5558        My evening phone: ( 774)312-5558

     My email:     N/A

> Skip (8) - (10) if your information has not changed since the fraud.

The Paperwork Reduction Act requires the FTC to display a valid control number (in this case, OMB control #3084-0047) before we can collect – or sponsor the collection of – your information, or require you to provide it.

*Victim's Name*_____  *Phone number* (____)_____  *Page 2*

## About You *(the victim) (Continued)*

### Declarations

(11)  I  ☐ did  OR  ☒ did not   authorize anyone to use my name or personal information to obtain money, credit, loans, goods, or services — or for any other purpose — as described in this report.

(12)  I  ☒ did  OR  ☐ did not   receive any money, goods, services, or other benefits as a result of the events described in this report.*
*We were completely unaware of the "closing" that took place. We did not sign a deed or any other closing documents. However, the perpetrator apparently paid off a mortgage loan in the approximate amount of $30,000.00 in order to proceed with his transaction.

(13)  I  ☒ am  OR  ☐ am not   willing to work with law enforcement if charges are brought against the person(s) who committed the fraud.**
**Charges have already been brought against several parties involved in the transaction and the perpetrators were convicted.

## About the Fraud

(14)  I believe the following person used my information or identification documents to open new accounts, use my existing accounts, or commit other fraud.

> (14):
> Enter what you know about anyone you believe was involved (even if you don't have complete information).

Name: _Allen_____ _Seymour_____
        First            Middle        Last        Suffix
        _Judith_____ _Piette_
Address: _____
        Number & Street Name         Apartment, Suite, etc.

_____
    City         State       Zip Code    Country

Phone Numbers: (____)_____ (____)_____

Additional information about this person: __Please see attached documents___
respecting the prosecution of Allen Seymour, Commonwealth v. Allen Seymour,
Worcester Superior Court, Docket No. 2009-1190.  Also, see attached
documents respecting the prosecution of Judith Piette, Commonwealth v.
Judith Piette, Worcester Superior Court, Docket No. 2009-1192.

*Victim's Name*_____   *Phone number (___)_____* *Page 3*

(15)   Additional information about the crime (for example, how the identity thief
gained access to your information or which documents or information were
used):   <u>For further information, please see attached documents respecting the</u>
<u>prosecution of Allen Seymour, Commonwealth v. Allen Seymour, Worcester</u>
Superior Court, Docket No. 2009-1190.  Also, see attached documents respecting

the prosecution of Judith Piette, Commonwealth v. Judith Piette, Worcester

Superior Court, Docket No. 2009-1192.

_____

_____

_____

_____

## Documentation

(16)   I can verify my identity with these documents:

**X**   A valid government-issued photo identification card (for example, my
driver's   license, state-issued ID card, or my passport).
*If you are under 16 and don't have a photo-ID, a copy of your birth certificate or
a copy of your official school record showing your enrollment and legal address is
acceptable.\**
*\*Driver's license attached.*

> (16): Reminder:
> Attach copies
> of your identity
> documents
> when sending
> this form to
> creditors
> and credit
> reporting
> agencies.

**X**   Proof of residency during the time the disputed charges occurred, the loan
was made, or the other event took place (for example, a copy of a rental/lease
agreement in my name, a utility bill, or an insurance bill).\*\*

\*\*Deed attached.

## About the Information or Accounts

(17)   The following personal information (like my name, address, Social Security number, or date of
birth) in my credit report is inaccurate as a result of this identity theft:

(A) <u>N/A</u>

(B) _____

(C) _____

(18)   Credit inquiries from these companies appear on my credit report as a result of this identity
theft:

Company Name: <u>N/A</u>

Company Name: _____

Company Name: _____

Victim's Name ☐   ☐   ☐   Phone number (___)_____   *Page 4*

**(19)** ☐ Below are details about the different frauds committed using my personal information.

| Fremont Investment and Loan, its successors and assigns | Theft Department | 1-866-771-5152 (fax) | |
|---|---|---|---|
| Name of Institution | Contact Person | Phone | Extension |

Account Number 7090725552   Routing Number ____   Affected Check Number(s) ____

Account Type: ☐ Credit  ☐ Bank  ☐ Phone/Utilities  ☒ Loan
☐ Government Benefits  ☐ Internet or Email  ☐ Other

Select ONE:
X   This account was opened fraudulently.
____   This was an existing account that someone tampered with.

| 09/13/2006 | 04/ 2010 | $300,000.00 |
|---|---|---|
| Date Opened or Misused (mm/yyyy) | Date Discovered (mm/yyyy) | Total Amount Obtained ($) |

| Name of Institution | Contact Person | Phone | Extension |
|---|---|---|---|
| Account Number | Routing Number | Affected Check Number(s) | |

Account Type:   Credit   Bank   Phone/Utilities   Loan
Government Benefits Internet or Email   Other

Select ONE:
____   This account was opened fraudulently.
____   This was an existing account that someone tampered with.

| Date Opened or Misused (mm/yyyy) | Date Discovered (mm/yyyy) | Total Amount Obtained ($) |
|---|---|---|

| Name of Institution | Contact Person | Phone | Extension |
|---|---|---|---|
| Account Number | Routing Number | Affected Check Number(s) | |

Account Type:   Credit   Bank   Phone/Utilities   Loan
Government Benefits Internet or Email   Other

Select ONE:
____   This account was opened fraudulently.
____   This was an existing account that someone tampered with.

| Date Opened or Misused (mm/yyyy) | Date Discovered (mm/yyyy) | Total Amount Obtained ($) |
|---|---|---|

---

**(19):**
If there were more than three frauds, copy this page blank, and attach as many additional copies as necessary.

Enter any applicable information that you have, even if it is incomplete or an estimate.

If the thief committed two types of fraud at one company, list the company twice, giving the information about the two frauds separately.

*Contact Person*: Someone you dealt with, whom an investigator can call about this fraud.

*Account Number*: The number of the credit or debit card, bank account, loan, or other account that was misused.

*Dates*: Indicate when the thief began to misuse your information and when you discovered the problem.

*Amount Obtained*: For instance, the total amount purchased with the card or withdrawn from the account.

*Victim's Name*_____  *Phone number (___)_____* *Page 5*

## Your Law Enforcement Report

(20)  One way to get a credit reporting agency to quickly block identity theft-related information from appearing on your credit report is to submit a detailed law enforcement report ("Identity Theft Report"). You can obtain an Identity Theft Report by taking this form to your local law enforcement office, along with your supporting documentation. Ask an officer to witness your signature and complete the rest of the information in this section. It's important to get your report number, whether or not you are able to file in person or get a copy of the official law enforcement report. Attach a copy of any confirmation letter or official law enforcement report you receive when sending this form to credit reporting agencies.

Select ONE:

    X  I have not filed a law enforcement report.
       *This case has already gone to trial and the perpetrators have been convicted. See attached documents.*
    ☐ I was unable to file any law enforcement report.
    ☐ I filed an automated report with the law enforcement agency listed below.
    ☐ I filed my report in person with the law enforcement officer and agency listed below.

_____   _____
Law Enforcement Department                                                    State

**(20):**
Check "I have not..." if you have not yet filed a report with law enforcement or you have chosen not to. Check "I was unable..." if you tried to file a report but law enforcement refused to take it.

*Automated report:* A law enforcement report filed through an automated system, for example, by telephone, mail, or the Internet, instead of a face-to-face interview with a law enforcement officer.

_____   _____
Report Number                         Filing Date (mm/dd/yyyy)

_____   _____
Officer's Name (please print)        Officer's Signature

_____   (___)_____
Badge Number                          Phone  Number

Did the victim receive a copy of the report from the law enforcement officer?    ☐ Yes   OR   ☐ No

Victim's FTC complaint number (if available): _____

*Victim's Name*_____ *Phone number (____)*_____*Page 6*

## Signature

**As applicable, sign and date** *IN THE PRESENCE OF* **a law enforcement officer, a notary, or a witness.**

(21)   I certify that, to the best of my knowledge and belief, all of the information on and attached to this complaint is true, correct, and complete and made in good faith. I understand that this complaint or the information it contains may be made available to federal, state, and/or local law enforcement agencies for such action within their jurisdiction as they deem appropriate. I understand that knowingly making any false or fraudulent statement or representation to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.

_William H Smith_____   _04/26/2017_____
Signature                                                          Date Signed (mm/dd/yyyy)

## Your Affidavit

(22)   If you do not choose to file a report with law enforcement, you may use this form as an Identity Theft Affidavit to prove to each of the companies where the thief misused your information that you are not responsible for the fraud. While many companies accept this affidavit, others require that you submit different forms. Check with each company to see if it accepts this form. You should also check to see if it requires notarization. If so, sign in the presence of a notary. If it does not, please have one witness (non-relative) sign that you completed and signed this Affidavit.

_____
Notary

**Witness:**

RODOLFO FIGUEROA
Notary Public
Commonwealth of Massachusetts
My Commission Expires
August 5, 2022

_Rodulfo Figueroa_
4/26/2017

_____          _____
Signature                                                          Printed Name

_____          _____
Date                                                               Telephone Number

# EXHIBIT G

# Identity Theft Victim's Complaint and Affidavit –

# Laureen Smith

# Identity Theft Victim's Complaint and Affidavit

*A voluntary form for filing a report with law enforcement, and disputes with credit reporting agencies and creditors about identity theft-related problems. Visit ftc.gov/idtheft to use a secure online version that you can print for your records.*

**Before completing this form:**
1. Place a fraud alert on your credit reports, and review the reports for signs of fraud.
2. Close the accounts that you know, or believe, have been tampered with or opened fraudulently.

## About You *(the victim)*

### Now

(1) My full legal name: <u>Laureen</u>          <u>Smith</u>
First          Middle          Last          Suffix

(2) My date of birth: <u>04/14/1958</u>
mm/dd/yyyy

(3) My Social Security number: ███ ██ ████

(4) My driver's license: <u>MA</u>          ██████████
State          Number

(5) My current street address:

<u>3 Dresser Hill Road</u>
Number & Street Name          Apartment, Suite, etc.

<u>Dudley</u>          <u>MA</u>          <u>01571</u>          <u>USA</u>
City          State          Zip Code          Country

(6) I have lived at this address since <u>January, 1982</u>
mm/yyyy

(7) My daytime phone: (<u>774</u>)<u>312-5557</u>

My evening phone: (<u>774</u>) <u>312-5557</u>

My email: <u>fibrogirl55@live.com</u>

> Leave (3) blank until you provide this form to someone with a legitimate business need, like when you are filing your report at the police station or sending the form to a credit reporting agency to correct your credit report.

### At the Time of the Fraud

(8) My full legal name was: <u>Laureen</u>          <u>Smith</u>
First          Middle          Last          Suffix

(9) My address was: <u>3 Dresser Hill Road</u>
Number & Street Name          Apartment, Suite, etc.

Dudley          MA          01571          USA
City          State          Zip Code          Country

> Skip (8) - (10) if your information has not changed since the fraud.

(10) My daytime phone: (<u>774</u>)<u>312-5557</u>          My evening phone: (<u>774</u>)<u>312-5557</u>

My email: <u>fibrogirl55@live.com</u>

The Paperwork Reduction Act requires the FTC to display a valid control number (in this case, OMB control #3084-0047) before we can collect – or sponsor the collection of – your information, or require you to provide it.

*Victim's Name*_____ *Phone number* (___)_____*Page 2*

## About You *(the victim) (Continued)*

### Declarations

(11)   I   ☐ did  OR  ☒ did not   authorize anyone to use my name or personal information to obtain money, credit, loans, goods, or services — or for any other purpose — as described in this report.

(12)   I   ☒ did  OR  ☐ did not   receive any money, goods, services, or other benefit as a result of the events described in this report.*
*We were completely unaware of the "closing" that took place. We did not sign a deed or any other closing documents. However, the perpetrator apparently paid off a mortgage loan in the approximate amount of $30,000.00 in order to proceed with his transaction.

(13)   I   ☒ am  OR  ☐ am not   willing to work with law enforcement if charges are brought against the person(s) who committed the fraud.**
**Charges have already been brought against several parties involved in the transaction and the perpetrators were convicted.

## About the Fraud

(14)   I believe the following person used my information or identification documents to open new accounts, use my existing accounts, or commit other fraud.

> (14):
> Enter what you know about anyone you believe was involved (even if you don't have complete information).

Name: Allen                           Seymour
      First         Middle         Last        Suffix
      Judith                   Piette
Address: _____
      Number & Street Name        Apartment, Suite, etc.

_____
  City        State       Zip Code    Country

Phone Numbers: (___)_____(___)_____

Additional information about this person: Please see attached documents respecting the prosecution of Allen Seymour, Commonwealth v. Allen Seymour, Worcester Superior Court, Docket No. 2009-1190. Also, see attached documents respecting the prosecution of Judith Piette, Commonwealth v. Judith Piette, Worcester Superior Court, Docket No. 2009-1192.

_____
_____
_____

Victim's Name_____Phone number (____)_____Page 3

(15)    Additional information about the crime (for example, how the identity thief
        gained access to your information or which documents or information were
        used):        For further information, please see attached documents respecting the
        prosecution of Allen Seymour, Commonwealth v. Allen Seymour, Worcester
        Superior Court, Docket No. 2009-1190.  Also, see attached documents respecting

        the prosecution of Judith Piette, Commonwealth v. Judith Piette, Worcester
        Superior Court, Docket No. 2009-1192.

        _____
        _____
        _____
        _____

## Documentation

(16)    I can verify my identity with these documents:

   X    A valid government-issued photo identification card (for example, my
        driver's    license, state-issued ID card, or my passport).
        *If you are under 16 and don't have a photo-ID, a copy of your birth certificate or
        a copy of your official school record showing your enrollment and legal address is
        acceptable.*
        *Driver's license attached.

> (16): Reminder:
> Attach copies
> of your identity
> documents
> when sending
> this form to
> creditors
> and credit
> reporting
> agencies.

   X    Proof of residency during the time the disputed charges occurred, the loan
        was made, or the other event took place (for example, a copy of a rental/lease
        agreement in my name, a utility bill, or an insurance bill).**

        **Deed attached.

## About the Information or Accounts

(17)    The following personal information (like my name, address, Social Security number, or date of
        birth) in my credit report is inaccurate as a result of this identity theft:

        (A)  N/A _____
        (B) _____
        (C) _____

(18)    Credit inquiries from these companies appear on my credit report as a result of this identity
        theft:

        Company Name:  N/A _____
        Company Name: _____
        Company Name: _____

Victim's Name ☐    ☐    ☐    ☐    *Phone number* (___) _____    *Page 4*

(19) ☐ Below are details about the different frauds committed using my personal information.

| | | | | | (19): |
| --- | --- | --- | --- | --- | --- |

Fremont Investment and Loan,
its successors and assigns        Theft Department        1-866-771-5152 (fax)

Name of Institution        Contact Person        Phone        Extension

Account Number  7090725552        Routing Number        Affected Check Number(s)

Account Type  ☐ Credit  ☐ Bank  ☐ Phone/Utilities  ☒ Loan
                        ☐ Government Benefits  ☐ Internet or Email  ☐ Other

Select ONE:
☒ This account was opened fraudulently.
    This was an existing account that someone tampered with.

    09/13/2006                04/ 2010                $300,000.00

Date Opened or Misused (mm/yyyy)    Date Discovered (mm/yyyy)    Total Amount Obtained ($)

---

Name of Institution        Contact Person        Phone        Extension

Account Number        Routing Number        Affected  Check Number(s)

Account Type:  Credit    Bank    Phone/Utilities    Loan
                    Government Benefits  Internet or Email    Other

Select ONE:
    This account was opened fraudulently.
    This was an existing account that someone tampered with.

Date Opened or Misused (mm/yyyy)    Date Discovered (mm/yyyy)    Total Amount Obtained ($)

---

Name of Institution        Contact Person        Phone        Extension

Account Number        Routing Number        Affected  Check Number(s)

Account Type:  Credit    Bank    Phone/Utilities    Loan
                    Government Benefits  Internet or Email    Other

Select ONE:
    This account was opened fraudulently.
    This was an existing account that someone tampered with.

Date Opened or Misused (mm/yyyy)    Date Discovered (mm/yyyy)    Total Amount Obtained ($)

**(19):**
If there were more than three frauds, copy this page blank, and attach as many additional copies as necessary.

Enter any applicable information that you have, even if it is incomplete or an estimate.

If the thief committed two types of fraud at one company, list the company twice, giving the information about the two frauds separately.

*Contact Person:* Someone you dealt with, whom an investigator can call about this fraud.

*Account Number:* The number of the credit or debit card, bank account, loan, or other account that was misused.

*Dates:* Indicate when the thief began to misuse your information and when you discovered the problem.

*Amount Obtained:* For instance, the total amount purchased with the card or withdrawn from the account.

*Victim's Name*_____*Phone number* (___)_____*Page 5*

## Your Law Enforcement Report

(20)    One way to get a credit reporting agency to quickly block identity theft-related information from appearing on your credit report is to submit a detailed law enforcement report ("Identity Theft Report"). You can obtain an Identity Theft Report by taking this form to your local law enforcement office, along with your supporting documentation. Ask an officer to witness your signature and complete the rest of the information in this section. It's important to get your report number, whether or not you are able to file in person or get a copy of the official law enforcement report. Attach a copy of any confirmation letter or official law enforcement report you receive when sending this form to credit reporting agencies.

Select ONE:

    X  I have not filed a law enforcement report.

       *This case has already gone to trial and the perpetrators have been convicted.  See attached documents.*

    ☐ I was unable to file any law enforcement report.

    ☐ I filed an automated report with the law enforcement agency listed below.

    ☐ I filed my report in person with the law enforcement officer and agency listed below.

| (20): Check "I have not..." if you have not yet filed a report with law enforcement or you have chosen not to. Check "I was unable..." if you tried to file a report but law enforcement refused to take it. |
| --- |
| *Automated report:* A law enforcement report filed through an automated system, for example, by telephone, mail, or the Internet, instead of a face-to-face interview with a law enforcement officer. |

_____

Law Enforcement Department                                State

_____     _____

Report Number                      Filing Date (mm/dd/yyyy)

_____

Officer's Name (please print)             Officer's Signature

_____     (___)_____

Badge Number                         Phone Number

Did the victim receive a copy of the report from the law enforcement officer?     ☐ Yes  OR  ☐ No

Victim's FTC complaint number (if available): _____

*Victim's Name*_____ *Phone number (_____)_____* *Page 6*

## Signature

**As applicable, sign and date *IN THE PRESENCE OF* a law enforcement officer, a notary, or a witness.**

(21)   I certify that, to the best of my knowledge and belief, all of the information on and attached to this complaint is true, correct, and complete and made in good faith. I understand that this complaint or the information it contains may be made available to federal, state, and/or local law enforcement agencies for such action within their jurisdiction as they deem appropriate. I understand that knowingly making any false or fraudulent statement or representation to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.

_Saureen Smith_____         _04/26/2017_____
Signature                                                        Date Signed (mm/dd/yyyy)

## Your Affidavit

(22)   If you do not choose to file a report with law enforcement, you may use this form as an Identity Theft Affidavit to prove to each of the companies where the thief misused your information that you are not responsible for the fraud. While many companies accept this affidavit, others require that you submit different forms. Check with each company to see if it accepts this form. You should also check to see if it requires notarization. If so, sign in the presence of a notary. If it does not, please have one witness (non-relative) sign that you completed and signed this Affidavit.

_____
Notary

**Witness:**

RODOLFO FIGUEROA
Notary Public
Commonwealth of Massachusetts
My Commission Expires
**August 5, 2022**

_Rodolfo F_____
4/26/2017

_____          _____
Signature                                                        Printed Name

_____          _____
Date                                                                Telephone Number

# EXHIBIT H

# Transcript, Change of Guilty Plea,

# Laureen Smith

PAGES:   40

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                    SUPERIOR COURT DEPARTMENT
                                 OF THE TRIAL COURT


* * * * * * * * * * * * * * * *
                               *
COMMONWEALTH OF MASSACHUSETTS  *
                               *
v.                             *  Docket No. 0985CR1190
                               *
ALLEN SEYMOUR                  *
                               *
* * * * * * * * * * * * * * * *


          Change of Plea:
          Before the Honorable James R. Lemire




APPEARANCES:

For the Commonwealth:
Massachusetts Attorney General's Office
1 Ashburton Place
17th Floor
Boston, MA  02108
By: Andrew Doherty, AAG


For the Defendant:
Law Office of Kevin C. Larson
19 Salisbury Street
Holden, MA 01520
By: Kevin C. Larson, Esq.


                         Worcester, Massachusetts
                         Room 18
                         November 15, 2010

Claire T. Pender, CVR
Official Court Reporter
Worcester Superior Court
225 Main Street Room 4108
Worcester, MA 01608
claire.pender@jud.state.ma.us

1   (Court in session.)

2   (12:35 a.m.)

3   (Defendant in custody, seated in dock.)

4        THE CLERK:  This is Alan Seymour.

5        MR. SEYMOUR:  Yes.

6        THE CLERK:  Mr. Seymour, raise your right hand,

7   please?

8   (Whereupon the defendant complies and is sworn.)

9        MR. SEYMOUR:  I do.

10       THE COURT:  What number is this?

11       THE COURT REPORTER:  24.

12       THE COURT:  24.  All right.  Mr. Doherty, there are 25

13  counts on my list.  Is it the Commonwealth's expectation

14  that Mr. Seymour is pleading guilty to all 25 counts?

15       MR. DOHERTY:  Your Honor, my apologies.  I have 21

16  counts.  Is that right?

17       THE COURT:  I don't know.  I have 25 listed on my

18  list.

19       MR. DOHERTY:  Sorry, your Honor.  You're right.  Yes,

20  your Honor, 25 counts.

21       THE COURT:  Kevin, do you have the indictments there?

22  Is it 1 through 25?

23       THE CLERK:  Yes.

24       THE COURT:  Yes?  Okay.  That's fine.

3

1    The counts break down between -- well, let me go over

2    them.  There are multiple offenses of larceny over 250,

3    larceny and larceny by false pretense.  It looks like

4    they're all larceny by false pretense.

5    Do you have available to the Court the maximum penalty

6    for that offense?

7    MR. DOHERTY:  I do, your Honor.  It's a five-year

8    State Prison sentence, or two years in the House of

9    Correction.

10    THE COURT:  And is there any minimum-mandatory?

11    MR. DOHERTY:  No, there isn't, your Honor.

12    THE COURT:  And there's also uttering a false document

13    and forgery of a document.  The maximum penalty for those

14    offenses?

15    MR. DOHERTY: For each of those it's up to a ten-year

16    State Prison sentence, your Honor.

17    THE COURT:  All right.  And I'm also aware that three

18    convictions of larceny in one sitting can result in a

19    declaration of a person being a common and notorious thief,

20    Mr. Larson, which carries up to a 20-year maximum penalty,

21    and all the larceny counts would merge into that one

22    combined count of a common and notorious thief.

23    So that would carry up to 20 years without a

24    minimum-mandatory, all right?

25    MR. LARSON:  Yes.  That's understood, Judge.

4

1    (The Court speaks with the Clerk.)

2         THE COURT:  All right.  The question that arose, just

3    so you'll understand, is Ms. Dempsey picked up the fact

4    that the indictment is headed with words: Inducement to

5    part with property by false pretense, under General Laws

6    Chapter 266, Section 34.

7         I questioned whether the common and notorious thief

8    aspect under Chapter 266, Section 40 would apply.

9         I just read Chapter 26, 40, and it uses the word

10   "larceny" as the triggering factor.

11        But then I read 266, 34, which says, "Whoever, with

12   intent to defraud and by a false pretense, induces another

13   to part with property of any kind or with any of the

14   benefits described in the preceding sections shall be

15   guilty of larceny."

16        So because they plead to 266, 34, it results in a

17   guilty of larceny, it would be -- and it's entitled

18   "larceny" -- I would say that common and notorious thief

19   section does apply.

20        So I hope I didn't confuse you.

21        MR. LARSON:  No.  I understand exactly what you're

22   saying, Judge.

23        THE COURT:  All right.  Has he been sworn?

24        THE CLERK:  Yes, Judge.

25        THE COURT:  MR. Seymour, my name is James Lemire.  I'm

5

1    a judge in the Superior Court.  I understand you intend to

2    plead guilty to the multiple indictments that we've just

3    discussed here now.

4         Is that your understanding, sir?

5         MR. SEYMOUR:  Yes.

6         THE COURT:  And before I accept your plea I want you

7    to understand that prior to my being a judge I was an

8    assistant district attorney in Worcester County.

9         I was involved in financial crime investigation

10   involving other aspects in which your name appear.

11        I never formally investigated you or conducted any

12   investigation in my role as an assistant district attorney,

13   but I was aware of your name, along with other names, some

14   of which have already come before me, including

15   Mr. Desautels.

16        There was another individual who pled in federal

17   court, Alan Mason, and just some names that have come up

18   over the years when I was conducting investigations with

19   the district attorney's office.

20        With that in mind, do you have any objection with me

21   hearing the plea.

22        MR. SEYMOUR:  No, none at all.

23        THE COURT:  All right.  I just want to make sure

24   you're fully aware of that, sir, all right?

25        MR. SEYMOUR:  Yes.

6

1    THE COURT:  Before I accept your plea I want to go

2    over a series of questions with you.  The questions are

3    designed to assure me that your plea is being made of your

4    own free will with knowledge of its consequences, so if at

5    any time I ask you a question that you do not understand,

6    please tell me you do not understand the question and I'll

7    either rephrase it or give you an opportunity to speak to

8    Mr.  Larson.

9        Do you understand that, sir?

10       MR. SEYMOUR:  Yes.  Yes, your Honor.

11       THE COURT:  Would you state your full name, age, and

12   place of birth to the Court, please?

13       MR. SEYMOUR:  Allen John Seymour; place of birth,

14   Worcester, Massachusetts; age 42.

15       THE COURT:  How far did you go in school, sir?

16       MR. SEYMOUR:  Tenth grade.

17       THE COURT:  Do you have any difficulty speaking or

18   understanding English?

19       MR. SEYMOUR:  No.

20       THE COURT:  Have you taken or are you under the

21   influence of any drugs or medication or alcohol today?

22       MR. SEYMOUR:  None at all.

23       THE COURT:  Have you ever been treated for or are you

24   aware of any mental, psychological or emotional conditions

25   from which you suffer?

7

1    MR. SEYMOUR:  Yes.

2    THE COURT:  And do any of those conditions affect your

3  ability to understand what's going on around you?

4    MR. SEYMOUR:  No.

5    THE COURT:  Are you confused in any way at this point

6  in this proceeding?

7    MR. SEYMOUR:  No, your Honor.

8    THE COURT:  The charges to which you're pleading

9  guilty, do you understand those charges and the

10  indictments; in other words, have you gone over the nature

11  and the elements of those indictments with your attorney?

12    MR. SEYMOUR:  Yes, I have, your Honor.

13    THE COURT:  And do you understand the maximum

14  penalties that we outlined, including the common and

15  notorious thief aspect of it?

16    MR. SEYMOUR:  Yes, your Honor.

17    THE COURT:  Now, I understand that the recommendations

18  here are unagreed, meaning your attorney is asking me to

19  impose a sentence that's different than what the government

20  is asking for me to impose.

21    Do you understand that?

22    MR. SEYMOUR:  I do.

23    THE COURT:  And in that type of situation I would be

24  allowed to give up to what the government is asking for

25  without allowing you to withdraw your plea.

8

1      If for any reason I were to exceed the government's

2 recommendation, I would then allow you to withdraw your

3 plea.

4      Do you understand that?

5      MR. SEYMOUR:  I do, your Honor.

6      THE COURT:  By pleading guilty you give up certain

7 rights that I'd like to go over with you.

8      Do you understand you have a right to a fair and

9 impartial trial with or without a jury to determine whether

10 you're guilty or not guilty, sir?

11      MR. SEYMOUR:  Yes, your Honor.

12      THE COURT:  And do you understand that if you had

13 elected to have a jury trial, the jury would be comprised

14 of citizens from the community and that you could assist

15 your attorney in the selection of those jurors?

16      MR. SEYMOUR:  Yes, your Honor.

17      THE COURT:  Do you understand that at a jury trial the

18 jury hears all the evidence, they decide whether you're

19 guilty or not guilty, and the judge instructs the jury on

20 the law?

21      Do you understand that?

22      MR. SEYMOUR:  I do.

23      THE COURT:  At a jury trial you cannot be found guilty

24 unless all 12 jurors unanimously find that you're guilty

25 beyond a reasonable doubt.

1    Do you understand that, sir?

2    MR. SEYMOUR:  Yes, your Honor.

3    THE COURT:  You'd also have a right to a trial before

4 a judge, alone, where the judge hears the evidence and

5 decides whether you're guilty or not guilty.

6    Do you understand that?

7    MR. SEYMOUR:  Yes, your Honor.

8    THE COURT:  And do you understand that whether you're

9 tried before a judge or a jury, you're presumed innocent

10 unless you're proven guilty beyond a reasonable doubt?

11    MR. SEYMOUR:  Yes, your Honor.

12    THE COURT:  At a trial you'd have a right to confront

13 witnesses that testify against you; in other words, to see

14 them testify, to hear them testify, and with the assistance

15 of your attorney to ask them questions.

16    You would also have a right to call your own witnesses

17 and you'd have a right to present evidence in your own

18 defense.

19    Do you understand that?

20    MR. SEYMOUR:  Yes, your Honor.

21    THE COURT:  By pleading guilty you are giving up your

22 right to confront witnesses that testify against you,

23 you're giving up your right to call your own witnesses, and

24 you're giving up your right to present evidence in your own

25 defense.

10

1    Do you understand that, sir?

2    MR. SEYMOUR:  Yes, your Honor.

3    THE COURT:  And is that what you wish to do by

4    pleading guilty here today?

5    MR. SEYMOUR:  Yes, your Honor.

6    THE COURT:  You presently enjoy a privilege against

7    self-incrimination; that is the right to remain silent

8    regarding these offenses.

9    By pleading guilty, you're waiving that right.

10   Do you understand that?

11   MR. SEYMOUR:  Yes, your Honor.

12   THE COURT:  The law presumes that you're innocent of

13   each of these offenses unless the government can prove you

14   guilty of each element of each offense beyond a reasonable

15   doubt.

16   By pleading guilty, you're waiving your right to the

17   presumption of innocence and you're waiving your right to

18   force the government to prove you guilty.

19   Do you understand that?

20   MR. SEYMOUR:  Yes, your Honor.

21   THE COURT:  And is that what you wish to do, sir?

22   MR. SEYMOUR:  Yes.

23   THE COURT:  If I accept your guilty plea here today,

24   this case essentially comes to an end.  Any motions that

25   have been filed and heard by this court, you would be

11

1    waiving any appellate rights to.

2        Any motions that have been filed and not heard, or any

3    motions that you have simply discussed with your attorney

4    you would be waiving your rights to.

5        Do you understand that?

6        MR. SEYMOUR:  Yes, your Honor.

7        THE COURT:  I have to advise you that if you're not a

8    citizen of the United States, my acceptance of your guilty

9    plea will have the consequences of deportation, exclusion

10   from admission to the United States, or denial of

11   naturalization pursuant to the laws of the United States.

12       Do you, Mr. Seymour, understand that if you are not a

13   citizen your guilty plea will result in your deportation or

14   your exclusion from admission to this country or will

15   prevent you from becoming a United States citizen?

16       Do you understand that?

17       MR. SEYMOUR:  Yes, your Honor.

18       THE COURT:  And do you still wish to plead guilty?

19       MR. SEYMOUR:  Yes.

20       THE COURT:  If I accept your guilty plea here, you

21   will be required within one year to submit a DNA sample to

22   the State Police for inclusion in the State DNA Database.

23       Do you understand that?

24       MR. SEYMOUR:  Yes, your Honor.

25       THE COURT:  I'm going to ask you to listen to

12

1   Mr. Doherty, who will outline the facts that he believes he

2   could prove had this case gone to trial.

3       Once he's completed his summary, I'm going to ask you

4   whether you agree with those facts, so please listen

5   carefully.

6       You may be seated while he does that.

7       Mr. Doherty?

8       MR. DOHERTY:  Thank you, your Honor.

9       Between September of 2006 and December of 2007, the

10  defendant engaged in a widespread mortgage fraud scheme

11  designed to obtain mortgage lenders' funds for fraudulent

12  purchase transactions in the Worcester County area.

13      The scheme can be described as follows:

14      The defendant paid codefendant Jason Passell, who

15  identified properties in danger of foreclosure, and then

16  personally approached the owners of these properties and

17  presented a variety of rescue scenarios designed to save

18  the homeowners from that foreclosure.

19      I'm speaking generally in these instances, your Honor,

20  because each property that was affected by this was

21  different.

22      But for the homeowners who wanted merely to sell the

23  properties to get away from foreclosure, the defendant

24  offered to purchase the properties in the amount owed to

25  the foreclosing lender.

13

1    For the several homeowners who wanted to remain in

2    their homes, the defendant presented rescue plans which

3    ranged from lifetime leases and reverse mortgages to a

4    simple refinance.

5    Some of these homeowners were told they would need to

6    transfer title to the property to an investor, and some

7    were not told of the transfer.

8    The defendant had many of these homeowners sign

9    innocuous documents to begin what he described is the

10   process.

11   The innocuous pages of the documents were then

12   discarded and substituted with pages purporting to grant

13   Power of Attorney from the homeowner to associates of

14   Seymour's, including codefendant Jason Passell.

15   With the false Power of Attorney in hand, and the

16   trust of the homeowner, Seymour had acquired the control of

17   the property that he needed.

18   Simultaneously, the defendant found individuals with

19   good credit and an interest in investing in real estate.

20   Many of these so-called investors were told they would

21   be helping homeowners in danger of losing their homes to

22   foreclosure, and he told several of these investors that

23   the purchase would only be temporary and that the

24   homeowners would purchase the property back after the

25   defendant had repaired the homeowners' credit.

14

1    Others were told that Seymour's company would repair

2    and rehab the properties and then sell them at a profit

3    which was to be shared by the defendant and the investors.

4    The defendant promised several investors that he would

5    assist in making the mortgage payments for the loans they

6    would be using to purchase the properties.

7    It should be noted that none of the proposals made to

8    the investors matched the transactions that had been

9    presented to the foreclosed homeowners, or homeowners in

10   danger of foreclosure.

11   The investors were not told of any lifetime leases or

12   reverse mortgages that Seymour had promised to the

13   homeowners.

14   With the assistant of mortgage broker Erik Tancun, who

15   is currently facing sentencing in this court in December,

16   and closing attorney Raymond Desautels who was sentenced in

17   this court last November, the defendant then orchestrated a

18   real estate closing where the so-called investor purchased

19   the property from the homeowner at an inflated purchase

20   price.

21   Loan documents received from the investors' lenders

22   indicate that lender believed the purchase price was far

23   greater than the amount the homeowner was selling the

24   property for if, in fact, the homeowner knew they were

25   selling the property at all.

15

Closing attorney and codefendant Raymond Desautels conducted each of the real estate closings for Allen Seymour.

The homeowners never attended these closings, as their documents were signed using the same false Power of Attorney Seymour had created earlier.

After receiving the lenders' money funding these transactions, Desautels issued a proceeds check payable to the homeowners and based on the fictitious purchase price. This check was given to the defendant and later cashed.

Your Honor, I'm now going to go into a bit of detail on each of the properties which led to the inducement to part with property larceny charges.

The lender for 26 Field Street in Auburn believed the homeowner was selling the property for 275,000, and lent over $220,000.

The homeowner in that case wasn't selling for 275,000, but believed they were receiving a reverse mortgage or lifetime lease and were not selling the property.

The lender for the purchase of 3 Dresser Hill Road believed the homeowner was selling the property for $300,000, and wired over $270,000 to Mr. Desautels.

The homeowner in that case believed that they were going to be receiving a reverse mortgage with a fixed monthly payment of seven to $800, and would receive

16

$40,000.  They did not believe they were selling the property for 300,000.

The property at 27 Temple Drive, the lender believed the homeowner was selling for $189,900.  The homeowner believed they were only transferring title and receiving a 10-year lease.  They did not believe they were selling the property.

The homeowner for 1111 Millbury Street believed only that Allen was refinancing his property and not transferring title and that he was not selling the property, where the lender lent money believing that the homeowner was selling the property for 230,000.

The lender for 34 Birchwood Drive in Marlborough believed that the homeowner was selling the property for 370,000, when, in fact, the homeowner believed he was only selling it for 350,000, which was the value of the mortgages he had on the property.

The homeowner for 47 Campground Road believed that they were selling the property for roughly the value of the mortgages on the property, which was about $240,000.

The lender, which lent $176,000 for the transaction, believed that the homeowner was selling for 220,000.

The property at 191 Main Street, the lender believed the property was being sold for 205,000.

The homeowners there believed they were selling the

17

property for 130,000, and the lender in that case lent over $180,000.

The property for 622 Main Street in Oxford, the lender believed that the original homeowner was selling the property for $310,000, and lent 273,000.

In fact, the defendant had purchased the property and won the property at an auction and transferred the property to Jason Passell, and the winning bid at that auction was $191,000.

There was no sale between the investor for this property because the original homeowner had already lost the home due to foreclosure.

35 Field Street, the lender believed that the homeowner was selling the property for 285,000.  In fact, the homeowner thought she was merely refinancing the property with the defendant and did not think she was selling the property.

The property for 262-264 Lovell Street, the lender believed that the homeowner was selling the property for $290,000, when, in fact, the homeowner believed she was receiving a lifetime lease and that there was no transfer of title.  She was not selling the property.

Finally, the property at 149 Main Street in Oxford, the lender believed that the homeowner was selling the property for 300,000, when, in fact, the homeowner was only

18

1    selling the property for $180,000.

2        In each of those cases for the properties, the lender

3    lent over $250, leading to the larceny charges.

4        THE COURT:  Just so it's clear to the Court, the

5    larceny is from the lenders and not from the property

6    owners, the additional property owners, correct?

7        MR. DOHERTY:  That's correct, your Honor.  The 12

8    inducement to property is a larceny from the lenders

9    relying on their belief that the property was being sold

10   for that inflated purchase price.

11       THE COURT:  And again, I don't mean to be redundant,

12   there is no direct larceny charge from any of the

13   homeowners who originally owned the homes prior to

14   Mr. Seymour getting involved?

15       MR. DOHERTY:  Not for those properties.  You're

16   correct, your Honor.  There is one larceny charge for a man

17   who believed he was investing his proceeds with

18   Mr. Seymour, which I'll get to.

19       THE COURT:  Go right ahead.

20       MR. DOHERTY:  Thank you, your Honor.

21       With respect to the forgery and uttering charges,

22   Mr. Seymour, accompanied again by the codefendant, Jason

23   Passell, and in one instance a man named Dennis Lucier,

24   took the sellers proceeds check, which is at issue, by

25   Raymond Desautels to a check-cashing operation in

19

1   Worcester.

2       There they cashed the following checks, each time

3   offering as genuine a Power of Attorney, which was known by

4   Mr. Seymour to be false, and in doing so with an intent to

5   commit fraud:

6       First, a check payable to the owners of 3 Dresser Hill

7   Road in Dudley, in the amount of over $150,000.  This check

8   was cashed.

9       Again, those owners were unaware that they had sold

10  their home.  The did not knowingly grant this Power of

11  Attorney to Jason Passell who was named.

12      The defendant then forged his Power of Attorney by

13  replacing the functional pages of the document which had

14  been truly signed by the owners which was purportedly

15  granted Power of Attorney to Jason Passell;

16      two, a check payable to the owners of 20 Park Street

17  in Oxford in the amount of over $72,000.  Although these

18  people who owned 20 Park Street believed they were selling

19  the property, they had specifically told the defendant and

20  Ray Desautels they didn't want to give Power of Attorney to

21  anyone for the transaction.

22      Nevertheless, the defendant forged the Power of

23  Attorney and used that to cash the $72,000 check, again

24  replacing the functional pages of the document which had

25  been truly signed by the victims with pages purporting to

20

1 grant Power of Attorney to Jason Passell;

2     three, a check payable to the owner of 1111 Millbury

3 Street was cashed in the amount of over $150,000.  Although

4 the owner was aware -- I'm sorry.

5     The owner wasn't aware that he had just sold his home.

6 He had not knowingly given Power of Attorney and, again,

7 his Power of Attorney was forged by replacing the

8 functional pages of a document which had truly been signed

9 by the owner with pages purporting to grant Power of

10 Attorney;

11     fourth, a check payable to the owner of 34 Birchwood

12 Drive was cashed using a false Power of Attorney.  That

13 amount was over $94,000;

14     fifth, a check payable to the owners of 47 Campground

15 Road in West Boylston in the amount of over $72,000.  That

16 Power of Attorney was not knowingly granted or given and

17 was false;

18     sixth, a check payable to the owner of 35 Field Street

19 in Auburn in the amount of over $121,000.

20     This was one where the owner believed that the

21 defendant was assisting her with the refinance of her

22 existing mortgage and did not believe that she was selling

23 the property.

24     She didn't give the Power of Attorney knowingly to

25 Jason Passell or any other person.

1    The defendant had earlier forged his Power of Attorney

2    by replacing the functional pages of the document truly

3    signed by the homeowner with a page purporting to grant

4    Power of Attorney from the homeowner to Jason Passell;

5         seventh, a check payable to the owner of 262-264

6    Lovell Street in Worcester in the amount of over $219,000.

7    This Power of Attorney was not knowingly given by the

8    owner.  It was false, and was used as the others were by

9    Mr. Seymour to cash those checks;

10        finally, a check payable to the owner of 149 Main

11   Street was cashed using a false Power of Attorney in the

12   amount of over $94,000.

13   Finally, your Honor --

14        THE COURT:  Well, let me just interrupt you again,

15   Mr. Doherty.

16        MR. DOHERTY:  Yes.

17        THE COURT:  All the checks that were cashed, those

18   relate to the indictments for uttering and forgery?

19        MR. DOHERTY:  That's correct, your Honor.

20        THE COURT:  And the amounts that you're talking about,

21   there's again -- and not to be redundant -- those aren't

22   suggested that those amounts were stolen from the property

23   owners --

24        MR. DOHERTY:  Well, your Honor --

25        THE COURT:  -- or you have not indicted on it?

22

1        MR. DOHERTY:  We have not indicted them as a larceny;

2    however, they were a loss to the homeowners who were denied

3    the opportunity to know what was going on with the

4    transaction or decide what they wanted to do with the

5    check.

6        THE COURT:  And once those checks were cashed, were

7    you able to determine where the funds went?

8        MR. DOHERTY:  Unfortunately, we heard nothing but

9    rumor, your Honor, and don't know where the roughly one and

10   a half million dollars in total checks cashed is.

11       THE COURT:  All right.  Go right ahead.

12       MR. DOHERTY:  Finally, your Honor, with respect to the

13   larceny charge, one homeowner of 13 Grove Street was aware

14   that the defendant had arranged for the sale of his home

15   and was aware of the purchase price.

16       The defendant convinced this homeowner, rather than to

17   just receive the $60,000 that he was supposed to receive

18   from the sale, rather to invest the proceeds with the

19   defendant's real estate investment company.

20       However, rather than invest this money, the defendant

21   simply cashed the check as he had the others, and the

22   victim in that case, that homeowner, received only a few

23   hundred dollars in return for his investment.

24       Although the defendant had arranged for a few monthly

25   payments towards some of the investors new mortgages on

23

1    these properties, the defendant eventually abandoned these

2    properties.

3        And it should be noted that the defendant abandoned

4    these investors well before he was arrested attempting to

5    flee the country with over one million dollars in embezzled

6    funds which are unrelated to this scheme.

7        Of the 12 lenders the defendant is charged with

8    defrauding, all but three have foreclosed on the

9    properties, and the remaining three have complaints filed

10   against him with the Registry of Deeds and the Land Court

11   to foreclose.

12       In connection with these facts, your Honor, the

13   defendant is charged with the 12 counts of inducing another

14   of their private property by false pretense, which is, as

15   you said, a larceny; eight counts of uttering a false Power

16   of Attorney; four counts of forgery of Power of Attorney;

17   and one count of larceny over $250.

18       THE COURT:  All right.  Thank you, Mr. Doherty.

19       Mr. Seymour, please stand up.

20   (Whereupon the defendant complies.)

21       THE COURT:  Did you hear the facts as stated by the

22   assistant district attorney, sir?

23       MR. SEYMOUR:  Yes, I did.

24       THE COURT:  I'm sorry.  By the assistant attorney

25   general.

24

1      MR. SEYMOUR:  Yes, I did, your Honor.

2      THE COURT:  Do those facts fairly and accurately

3  describe your conduct in these matters?

4      MR. SEYMOUR:  Yes, your Honor.

5      THE COURT:  Is there anything described that you do

6  not believe to be fair or accurate?

7      MR. SEYMOUR:  No, your Honor.

8      THE COURT:  Do you understand that by pleading guilty

9  you're admitting to the truth of the facts that were stated

10  here just now?

11      MR. SEYMOUR:  I do, your Honor.

12      THE COURT:  And is that what you wish to do by

13  pleading guilty today?

14      MR. SEYMOUR:  Yes, your Honor.

15      THE COURT:  Are you pleading guilty, sir, because you

16  are guilty and for no other reason?

17      MR. SEYMOUR:  Yes.

18      THE COURT:  Have you had sufficient time to go over

19  your case with your attorney and discuss your rights, your

20  defenses, and the consequences of your guilty plea?

21      MR. SEYMOUR:  Yes, I have, your Honor.

22      THE COURT:  Are you satisfied with Mr. Larson's advice

23  and representation and do you feel as though he has acted

24  in your best interest and fairly represented you?

25      MR. SEYMOUR:  Yes, your Honor.

25

1    THE COURT:  Has anyone forced you in any way, or

2    threatened you in order to make you plead guilty here

3    today?

4        MR. SEYMOUR:  No, your Honor.

5        THE COURT:  Has anyone promised you anything in order

6    to make you plead guilty here today?

7        MR. SEYMOUR:  No, your Honor.

8        THE COURT:  Are you confused in any way by these

9    proceedings?

10       MR. SEYMOUR:  No, your Honor.

11       THE COURT:  I have a document in front of me entitled

12   *Waiver of Defendant's Rights,* with your name on it and a

13   signature (indicating).

14       Is that your signature on that document?

15       MR. SEYMOUR:  It's mine.

16       THE COURT:  And did you have the occasion to either

17   read this document or have it read to you in its entirety

18   today?

19       MR. SEYMOUR:  Yes.

20       THE COURT:  Do you understand that by signing this

21   document you're acknowledging you're aware of the rights

22   that are within the document and you're, in fact, waiving

23   those rights?

24       MR. SEYMOUR:  Yes, your Honor.

25       THE COURT:  Are you confused in any way by any of the

26

1    rights that you're waiving by pleading guilty here today?

2         MR. SEYMOUR:  No, your Honor.

3         THE COURT:  The defendant may tender his pleas.

4         THE CLERK:  Mr. Seymour, Indictment 09-1190-1, larceny

5    over $250 by false pretense, guilty or not guilty?

6         MR. SEYMOUR:  Guilty.

7         THE CLERK:  Indictment No. 2, larceny over 250, guilty

8    or not guilty?

9         MR. SEYMOUR:  Guilty.

10        THE CLERK:  Indictment No. 3, uttering, guilty or not

11   guilty?

12        MR. SEYMOUR:  Guilty.

13        THE CLERK:  Indictment No. 4, forgery, guilty or not

14   guilty?

15        MR. SEYMOUR:  Guilty.

16        THE CLERK:  Indictment No. 5, larceny over 250, guilty

17   or not guilty?

18        MR. SEYMOUR:  Guilty.

19        THE CLERK:  Indictment No. 6, larceny over 250, guilty

20   or not guilty?

21        MR. SEYMOUR:  Guilty.

22        THE CLERK:  Indictment No. 7, uttering, guilty or not

23   guilty?

24        MR. SEYMOUR:  Guilty.

25        THE CLERK:  Indictment No. 8, forgery, guilty or not

27

1    guilty?

2          MR. SEYMOUR:  Guilty.

3          THE CLERK:  Indictment No. 9, uttering, guilty or not

4    guilty?

5          MR. SEYMOUR:  Guilty.

6          THE CLERK:  Indictment No. 10, forgery, guilty or not

7    guilty?

8          MR. SEYMOUR:  Guilty.

9          THE CLERK:  Indictments 11 and 12, larceny over 250,

10   guilty or not guilty?

11         MR. SEYMOUR:  Guilty.

12         THE CLERK:  Indictment No. 13, uttering, guilty or not

13   guilty?

14         MR. SEYMOUR:  Guilty.

15         THE CLERK:  Indictment No. 14, larceny, guilty or not

16   guilty?

17         MR. SEYMOUR:  Guilty.

18         THE CLERK:  Indictment No. 15, uttering, guilty or not

19   guilty?

20         MR. SEYMOUR:  Guilty.

21         THE CLERK:  Indictment 16, 17, 18 and 19, larceny over

22   250, guilty or not guilty?

23         MR. SEYMOUR:  Guilty.

24         THE CLERK:  Indictment No. 20, forgery, guilty or not

25   guilty?

28

1        MR. SEYMOUR:  Guilty.

2        THE CLERK:  Indictments 21 and 22, uttering false

3    documents, guilty or not guilty?

4        MR. SEYMOUR:  Guilty.

5        THE CLERK:  23, larceny over, guilty or not guilty?

6        MR. SEYMOUR:  Guilty.

7        THE CLERK:  Indictment No. 24, uttering false

8    document, guilty or not guilty?

9        MR. SEYMOUR:  Guilty.

10        THE CLERK:  Indictment No. 25, larceny over 250,

11    guilty or not guilty?

12        MR. SEYMOUR:  Guilty.

13        THE COURT:  All right.  I accept the change of pleas.

14        I find that there is a factual basis for the guilty

15    pleas;

16        I find that the defendant is not presently under the

17    influence of drugs or alcohol and is not presently

18    suffering from a mental illness or condition that would

19    affect his ability to understand these proceedings;

20        I find that the defendant understands the rights that

21    he is waiving, and is knowingly, willingly, voluntarily and

22    intelligently waiving those rights;

23        I find that the defendant understands the charges to

24    which he's pleading guilty and the consequences of pleading

25    guilty;

1     I find that his pleas of guilty were offered

2  knowingly, willingly, voluntarily and intelligently, and

3  his pleas of guilty are accepted by this Court.

4     Does the Commonwealth move for sentencing?

5     MR. DOHERTY:  Yes, your Honor.

6     THE COURT:  I'll hear you.

7     MR. DOHERTY:  Your Honor, the Commonwealth is

8  recommending that the defendant serve a five-to-seven-year

9  State Prison sentence to be served after the completion of

10  his federal sentence, followed by a five-year probationary

11  period where he be barred from any kind of work in the real

12  estate industry.

13     The defendant -- there's two things, although there's

14  many reasons why the defendant doesn't deserve concurrent

15  time.  I'll focus on two.

16     The first is the orchestration of this scheme.  Allen

17  Seymour was the center of this scheme which involved,

18  besides the lies to the homeowners, the investors in these

19  properties, and the lenders to these properties, involved

20  the orchestration of a corrupt Notary Public, Judith

21  Piette; a corrupt mortgage broker, Erik Tancun; a corrupt

22  bank employee, Steve Stapleton and Thomas Itemere; corrupt

23  closing attorney Raymond Desautels; and a corrupt, I'm not

24  sure what to call him, a paralegal or a title examiner,

25  Jason Passell.

30

1          All of those people, in either small ways or large

2     ways, it all comes back to Allen Seymour.  And time and

3     time again, with 12 to 14 properties that led to these

4     charges here, you see Allen not just doing the groundwork,

5     but managing the groundwork.

6          The kind of organization to create this enterprise,

7     the whole goal to suck equity out of distressed properties,

8     is troubling, and I think calls for punishment.

9          The second thing I want to focus on is the defendant's

10    targeting of the victims in this case.  These were people

11    -- not all of them.  Some of them just wanted to sell their

12    homes, and they did.

13         But I'd ask you to look at the homeowner who owns the

14    property at 3 Dresser Hill Road, a person who had owned

15    that home for I believe 20 years.  Had built it.  It's a

16    log cabin.  Lived there for over 20 years.  Raised her

17    family there.  Had a small mortgage on the property, and at

18    the end of the day didn't think she was selling the

19    property; she was getting foreclosed on, but she wanted to

20    stay.

21         What happens, your Honor, is Mr. Seymour shows up

22    there and tells her exactly what she wants to hear.  It

23    wasn't a difficult thing for him, as long as he was willing

24    to give up that boundary that keeps people from lying to

25    people who are in that kind of distress.

31

1        The homeowner there, for 3 Dresser Hill Road, thought

2    she was getting a reverse mortgage.  I don't know what that

3    means.  And there's no possible way, having met with some

4    of these homeowners, that they were in any position to be

5    able to understand the truth of what was happening in their

6    lives and the lies that Allen Seymour was telling them.

7        So time and time again, your Honor, you see

8    Mr. Seymour focusing on people absolutely at their most

9    vulnerable, and taking advantage of people who the

10   Commonwealth really has a responsibility to protect and

11   punish those who take advantage of those kinds of people.

12       So, your Honor, I understand five to seven years is a

13   tough sentence, but having met these homeowners and seen

14   what their lives have been like after meeting Allen

15   Seymour, I think that it's a conservative one.

16       Finally, I would just point out Mr. Seymour's

17   sentence, I believe federally, he's going to wrap up

18   towards the end of next year.

19       Your Honor, what Mr. Seymour's done has affected these

20   people, be they the homeowners, investors, the homeowners,

21   the ownership of their property will always forever remain

22   in debt.  That's going to last far longer than any sentence

23   he may serve, so I ask that you impose the sentence that we

24   recommend.

25       THE COURT:  And again, we use the word "victim."  The

32

1   homeowners here have been victims of none of the crimes

2   other than the forgery or the uttering aspects that you've

3   indicted on, correct?

4        MR. DOHERTY:  That's correct, your Honor.

5        THE COURT:  And I'm not trying to be difficult.

6        MR. DOHERTY: No.

7        THE COURT:  It's just the larcenies, just so I

8   understand, are alleged to be from the lenders who in some

9   instances had people on the inside that were corrupt as

10  well.

11       MR. DOHERTY:  That's correct, your Honor.  The

12  larceny, as you know, the element there is that you obtain

13  the property of another.

14       Allen Seymour, the way he was able to create these

15  false documents, didn't need to obtain a property.  He

16  shuffled it off to an investor.  It's not something that --

17  and again, I think this is the Commonwealth being

18  conservative -- it's not something that we chose to go

19  forward on knowing that he had forged documents.

20       THE COURT:  No, I understand.  But the alleged victims

21  in the larcenies are the lending institutions.

22       MR. DOHERTY:  That's correct, your Honor.

23       THE COURT:  And were you able to calculate -- I mean,

24  because there's foreclosures that are either pending or

25  ongoing, have you been able to determine the true loss at

33

1   this point?

2       MR. DOHERTY:  That's a tough question, your Honor.  Of

3   the nine foreclosures out of the 12 for the inducement to

4   part with property, several of those have been foreclosed

5   on and then sold to third-party purchasers, so people who

6   are really paying a purchase price there.

7       The different between the purchase price from the

8   closing and the purchase prices have been foreclosed

9   third-party buyer is about 45 percent.  So not a 45 percent

10  discount.  If they're selling for 100,000, the average is

11  they're now selling for $45,000.

12      Unfortunately, your Honor, I don't have a way of

13  correlating that to the downturn in the market.  And that's

14  the nature of the beast.  There were three million dollars

15  in loans that were issued --

16      THE COURT:  How many?

17      MR. DOHERTY:  Three million dollars in loans.  There's

18  one and a half million dollars in cashed checks that were

19  cashed using false Powers of Attorney.

20      There was roughly $750,000 of checks cashed that were

21  cashed from closings where the homeowner didn't believe

22  they were selling.

23      I didn't mention this before, but I believe

24  restitution should be ordered in those cases especially.

25      THE COURT:  For the 750,000?

34

1      MR. DOHERTY:  Correct, your Honor.  To be disbursed to

2   the homeowners who didn't know that they were selling the

3   property, as well as to David Chubka and anyone who

4   believed they were investing with their proceeds with Allen

5   Seymour.

6      THE COURT:  All right.  For the record, I do have

7   impact statements from two people that you've submitted.

8      MR. DOHERTY:  Thank you.  Yes, your Honor.  The owners

9   of 35 Mill Street and 3 Dresser Hill both submitted victim

10  impact statements.

11     THE COURT:  And I've reviewed those.

12     MR. DOHERTY:  Thank you.

13     THE COURT:  Is there any further impact statements or

14  does anyone wish to be heard?

15     MR. DOHERTY:  There isn't, your Honor.  I'd just ask

16  that those be filed with the case.

17     THE COURT:  They will be with the probation papers.

18     MR. DOHERTY:  Thank you, your Honor.

19     THE COURT:  All right.  Mr. Larson, I'll hear you.

20     MR. LARSON:  Thank you, Judge.

21     Judge, Mr. Seymour's asking that you consider giving

22  him a concurrent sentence with the sentence that he's

23  presently serving in federal court, with a period of

24  probation to run from and after.

25     Mr. Seymour's 42 years old.  He was born and raised

35

1   here in Worcester.  He went to North High School.

2        He was a chef for approximately 14 years.  He's

3   married to his wife, Tina, who is present in court, your

4   Honor.

5        Together, they have five children, ages 20, 18, 16, 14

6   and 12, and they are also in court, along with his in-laws.

7        He actually was a chef for 14 years before he was out

8   of work on disability for a time due to his mental health

9   issues.  He does suffer from anxiety and bipolar disorder.

10  He's been receiving treatment, medication and treatment

11  since he was 20 years old for those conditions.

12       Eventually he went back to work and he got into real

13  estate and he began flipping houses.  And he was doing so

14  legitimately, I'll say, for a number of years before he

15  tells me he was approached by Attorney Desautels and this

16  whole scheme, so to speak, began.

17       Factually, Judge, he agrees with all the facts as they

18  were read, but some additional points that I'd like the

19  Court to consider.

20       Mr. Seymour disagrees that he was the mastermind of

21  this operation.  There's no question he was an integral

22  part of it and there's no question he knew what was going

23  on and he knew what he was doing was wrong.  I think it was

24  a situation where it happened once, it worked, and then

25  sort of greed took over at that point.

36

But there were, as Mr. Doherty said, there was a number of other players, and each one of them I would suggest is at least equally integral.

He needed to have a crooked appraiser.  He needed to have crooked bank employees.  He needed to have a crooked mortgage officer.  And, most importantly, he needed to have a crooked attorney to pull this scheme off.  And I would suggest that they were all equally integral to the operation and ask that you consider that in crafting your punishment for Mr. Seymour.

The guidelines, Judge, do call for a one-to-three-year prison sentence.  He's asking that you impose a sentence within the guidelines, and, as I said, concurrent, and in light of the other sentences individuals have received in this case.

THE COURT:  All right.  And for the record, I did receive a number of letters on his behalf.  Four of his children, I think two sisters-in-law, his mother-in-law and his wife, and I did read those.

MR. LARSON:  That's correct, Judge.  Yes.

THE COURT:  Anything further?

MR. LARSON:  Nothing further.

THE COURT:  Can I see probation and the Clerk at sidebar?

Any sentence I impose would be subject to Mr. Seymour

37

1   signing a voluntary waiver to return and not to contest

2   extradition.

3        MR. LARSON:  Understood, Judge, and he's already

4   signed that.

5        THE COURT:  All right.  Mr. Seymour, would you just

6   stand up for one second, sir?

7   (The defendant complies.)

8        THE COURT:  The document that your attorney just

9   handed in is a voluntary waiver to contest extradition,

10  sir.  And you've had the opportunity to go over that with

11  your attorney, and you're signing this on your own free

12  will?

13       MR. SEYMOUR:  Yes, your Honor.

14       THE COURT:  Mr. Larson, what's his expected -- how

15  much time does he have left on the federal sentence?

16       MR. LARSON:  He's anticipating being released in

17  October of 2011.  He doesn't know the exact date, but

18  that's his anticipated release date.

19  (Sidebar with the Clerk and Probation Officer Del Negro,

20  not recorded.)

21       THE CLERK:  Mr. Seymour, on Indictments 1, 2 and 5,

22  these are the first three indictments presenting inducement

23  of private property by false pretense, the Court

24  adjudicates you a common and notorious thief and orders

25  that you be punished by confinement to the

38

1   Mass. Correctional Institution at Cedar Junction for not

2   less than two, nor more than two and one half years.

3        This sentence is to be served on and after any

4   sentence you are now serving.

5        You will be given credit in the amount of 95 days.

6        On Indictments 6, 11, 12, 14, 16, 17, 18, 19, 23 and

7   25, all presenting larceny, they'll be merged as a common

8   and notorious thief.

9        On Indictments 3, 4, 7, 8, 9, 10, 13, 15, 20, 21, 22

10  and 24, the Court having considered the offenses of which

11  you stand convicted orders that you be placed on probation

12  for a period of five years.

13       That period of probation is to commence from and after

14  09-1190-1.

15       There will be a $65-a-month probation supervision fee;

16  restitution in the amount of $750,000.

17       You will be eligible for a restitution hearing upon

18  your release from incarceration upon filing of the motion.

19       You are banned from the real estate industry.

20       There will be a $90-victim/witness fee.

21       During the five-year period you're on probation, do

22  you recognize with the probation department, and you with

23  the defendant?

24       Allen Seymour, you are notified of your right within

25  10 days to appeal to the appellate division of this court

39

1    for review of sentence imposed upon you.

2        Mr. Sheriff, Mr. Seymour is in your custody under

3    sentence.

4        THE COURT:  All fees are to be paid during probation.

5        MR. DOHERTY: Thank you, your Honor.

6        MR. LARSON:  Thank you, Judge.

7        THE COURT:  Thank you.

8    (Hearing concluded 1:20 p.m.)

C E R T I F I C A T I O N

I, CLAIRE T. PENDER, AN OFFICIAL COURT REPORTER IN AND FOR THE COMMONWEALTH OF MASSACHUSETTS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT FROM THE RECORD OF THE COURT PROCEEDINGS IN THE ABOVE ENTITLED MATTER.

I, CLAIRE T. PENDER, FURTHER CERTIFY THAT THE FOREGOING IS IN COMPLIANCE WITH THE ADMINISTRATIVE OFFICE OF THE TRIAL COURT DIRECTIVE ON TRANSCRIPT FORMAT.

I, CLAIRE T. PENDER, FURTHER CERTIFY THAT I NEITHER AM COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*Claire T. Pender*

CLAIRE T. PENDER, CVR
OFFICIAL COURT REPORTER
PROCEEDINGS RECORDED BY STENOMASK.
TRANSCRIPTS PRODUCED FROM COMPUTER.

WORCESTER SUPERIOR COURT
225 MAIN STREET/ROOM 4108
WORCESTER, MA  01608
508.831.2318
claire.pender@jud.state.ma.us

| **CLERK'S NOTICE** | DOCKET NUMBER<br>1385CV00763 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>Michael Earielo vs. Com of Mass et al | Dennis P. McManus, Clerk of Courts |
|---|---|
| TO:<br>File Copy | COURT NAME & ADDRESS<br>Worcester County Superior Court<br>225 Main Street<br>Worcester, MA 01608 |

You are hereby notified that on 07/06/2017 the following entry was made on the above referenced docket:

Endorsement on Motion to amend his complaint to name additional parties (unopposed as to existing parties) (#41.0): ALLOWED
Plaintiff is to serve amended complaint on 2 additional parties in accordance with the rules.

| DATE ISSUED<br>07/10/2017 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br>**Hon. Janet Kenton-Walker** | SESSION PHONE#<br>**(508)831-2357** |
|---|---|---|

Date/Time Printed: 07-10-2017 09:43:09

SCV018_X11 08/2014

COMMONWEALTH OF MASSACHUSETTS

WORCESTER COUNTY, SS:

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 1785CV00763B

WILLIAM HOWARD SMITH and
LAUREEN SMITH,

      Plaintiffs,

v.

HSBC BANK USA, NATIONAL ASSOCIATION,
AS TRUSTEE FOR FREMONT HOME LOAN
TRUST 2006-E MORTGAGE-BACKED
CERTIFICATES, SERIES 2006-E,

      Defendant.

**FILED**

JUL 1 0 2017

ATTEST: _____ CLERK

## NOTICE OF FILING NOTICE OF REMOVAL

TO:   Civil Clerk's Office
      Worcester Superior Court
      225 Main Street
      Worcester, MA 01608

      Michele Unger Callahan, Esq.
      19 Pierce Avenue, Suite C
      PMB #19
      Fitchburg, MA  01420

Pursuant to 28 U.S.C. § 1446(d), Defendant HSBC Bank USA, National Association, as

Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E

("HSBC Bank") hereby gives written notice that on June 28, 2017, HSBC Bank filed a Notice of

Removal in the subject action from the Trial Court of Commonwealth of Massachusetts,

Worcester Superior Court Department, to the United States District Court for the District of

Massachusetts.  A copy of the Notice of Removal is attached hereto as Exhibit A.  Pursuant to 28

U.S.C. § 1446(d), the state court shall proceed no further.

300067890v1 0998420

Respectfully submitted,

HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE FOR
FREMONT HOME LOAN TRUST 2006-E
MORTGAGE-BACKED CERTIFICATES,
SERIES 2006-E,

By Its Attorneys

Samuel C. Bodurtha, BBO #
Matthew R. Shechtman, BBO #678523
HINSHAW & CULBERTSON LLP
28 State Street, 24th Floor
Boston, MA 02109
Tel: 617-213-7000/Fax: 617-213-7001
Email: sbodurtha@hinshawlaw.com
         mshechtman@hinshawlaw.com

Dated:      July 6, 2017

## CERTIFICATE OF SERVICE

I, Matthew R. Shechtman, hereby certify that on this 7th day of July 2017, I served a true and accurate copy of the foregoing document to counsel of record by first class mail as follows:

Michele Unger Callahan, Esq.
19 Pierce Avenue, Suite C
PMB #19
Fitchburg, MA  01420

Matthew R. Shechtman

A true copy by photostatic process
Attest:
Asst. Clerk

2

300067890v1 0998420

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM HOWARD SMITH and LAUREEN SMITH,<br><br>          Plaintiffs,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2006-E MORTGAGE-BACKED CERTIFICATES, SERIES 2006-E,<br><br>          Defendant. | CIVIL ACTION NO. 4:17-cv-40100 |



**FILED**

JUL 1 0 2017

ATTEST: _[signature]_ CLERK

## NOTICE OF REMOVAL

To:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-E Mortgage-Backed Certificates, Series 2006-E ("HSBC Bank") hereby files this Notice of Removal in the above-captioned action and sets forth below the grounds for removal:

1.      On or about May 10, 2017, the Plaintiffs, William Howard Smith and Laureen Smith (the "Plaintiffs"), filed a Complaint in the Worcester County Superior Court against HSBC Bank.

2.      The Complaint alleges claims against HSBC Bank for (i) Invalid Chain of Title; (ii) Forgery and Fraud; (iii) Negligent Infliction of Emotional Distress; and (iii) Violation of the Massachusetts Consumer Protection Act.

I hereby certify on _6-29-17_ that the foregoing document is true and correct copy of the
☐ electronic docket in the captioned case
☒ electronically filed original filed on _6-28-17_
☐ original filed in my office on _____
Robert M. Farrell
Clerk, U.S. District Court
District of Massachusetts

By: _____
Deputy Clerk

300067877v1 0998420

3.      The United States District Court for the District of Massachusetts has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the matter-in-controversy exceeds the sum or value of $75,000.00.

4.      The Plaintiffs are citizens of Massachusetts as they reside in Dudley, Massachusetts. (Complaint ¶ 1.)

5.      HSBC Bank is a national banking association organized and existing under the laws of the United States of America with its main office as designated in its Articles of Association in McLean, Virginia. For purposes of removal, HSBC Bank is a citizen of Virginia. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located").

6.      Accordingly, the Plaintiffs and HSBC Bank are citizens of different states for diversity purposes. The complete diversity requirement of 28 U.S.C. § 1332(a)(1) is satisfied in this case.

7.      Plaintiff's Complaint seeks, among other things, a declaration of rights based upon a loan in the original principal amount of $285,000.00, secured by aa mortgage on real estate located at 3 Dresser Hill Road, Dudley, Massachusetts. (Complaint, p 13.)

8.      Where the right to enforce a mortgage loan is at issue, the original principal amount of the mortgage constitutes the amount in controversy for diversity jurisdiction purposes. *See McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 211-12 (1st Cir. 2012) (considering, among other potential tests, the loan amount as amount in controversy in cases where complaint seeks to invalidate a loan secured by a mortgage).

2

300067877v1 0998420

9.    The amount-in-controversy, therefore, exceeds $75,000.00, exclusive of interest and costs.

10.    This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(1). The Plaintiffs served process on the registered agent for HSBC Bank on June 8, 2017. HSBC Bank's 30 day deadline to remove is therefore June 28, 2017.

11.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on HSBC Bank are attached hereto as Exhibit A.

12.    HSBC Bank will provide written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d), including filing a certified copy of this Notice of Removal with the clerk of Worcester Superior Court.

WHEREFORE, this action should be removed to the United States District Court for the District of Massachusetts.

Respectfully submitted,

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2006-E MORTGAGE-BACKED CERTIFICATES, SERIES 2006-E

By Its Attorneys

/s/ Samuel C. Bodurtha
Samuel C. Bodurtha, BBO # 665755
Matthew R. Shechtman, BBO #678523
HINSHAW & CULBERTSON LLP
28 State Street, 24th Floor
Boston, MA 02109
Tel: 617-213-7000/Fax: 617-213-7001
Email:  sbodurtha@hinshawlaw.com
        mshechtman@hinshawlaw.com

Dated:    June 28, 2017

3

300067877v1 0998420

## CERTIFICATE OF SERVICE

I, Samuel C. Bodurtha, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on June 28, 2017.

/s/ Samuel C. Bodurtha
Samuel C. Bodurtha

A true copy by photostatic process
Attest:
Asst. Clerk

4